**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

| | |
|---|---|
| ABRAHAM BARKHORDAR, STUDENT A, and ELLA WECHSLER-MATTHAEI, individually and on behalf of all others similarly situated,<br><br>        Plaintiffs,<br><br>  v.<br><br>PRESIDENT AND FELLOWS OF HARVARD COLLEGE,<br><br>        Defendant. | No. 1:20-cv-10968-IT<br><br><u>JURY TRIAL DEMANDED</u> |

**<u>CONSOLIDATED CLASS ACTION COMPLAINT</u>**

# TABLE OF CONTENTS

**Page**

I.     NATURE OF ACTION ...............................................................................................1

II.    JURISDICTION AND VENUE ...............................................................................3

III.   PARTIES .....................................................................................................................4

IV.    FACTS ........................................................................................................................6

      A.     Harvard sets its tuition and fees based on providing students in-person classes
            and in-person access to professors, students, and the full array of campus
            resources. ..............................................................................................................6

      B.     Plaintiffs and Class Members paid tuition and fees for the Spring 2020 Term
            with the expectation of in-person learning...........................................................9

      C.     Harvard ends in-person classes and moves to online instruction without issuing a
            tuition refund......................................................................................................11

      D.     Harvard maintains virtual instruction for the Fall 2020 Term without any
            reduction in tuition or fees. ...............................................................................14

      E.     Harvard's refusal to reduce its tuition harms Plaintiffs and Class Members.........16

      F.     Economic Damages ...........................................................................................18

V.     CLASS ACTION ALLEGATIONS ........................................................................19

VI.    CAUSES OF ACTION   COUNT I   BREACH OF CONTRACT ..................................22

      COUNT II  BREACH OF IMPLIED CONTRACT ..........................................25

      COUNT III   UNJUST ENRICHMENT...............................................................26

      COUNT IV   CONVERSION .............................................................................27

PRAYER FOR RELIEF ...................................................................................................28

JURY DEMAND ..............................................................................................................29

Plaintiffs, ABRAHAM BARKHORDAR, STUDENT A, and ELLA WECHSLER-MATTHAEI, individually and on behalf of all others similarly situated, for this Consolidated Class Action Complaint against Defendant President and Fellows of Harvard College ("Harvard"), based upon personal knowledge as to their own actions and based upon the investigation of counsel regarding all other matters, complain as follows:

## I.  NATURE OF ACTION

1.      This Consolidated Class Action Complaint comes during a time of hardship for so many Americans, with each day bringing different news regarding the novel coronavirus COVID-19. Social distancing, shelter-in-place orders, and efforts to 'flatten the curve' prompted colleges and universities across the country to shut down their campuses, evict students from campus residence halls, and switch to online "distance" learning.

2.      On March 10, 2020, Harvard announced that beginning March 23, 2020 (the first day back from Spring Recess), it would transition all classes (undergraduate, graduate, and professional) to virtual instruction until further notice. In accordance with this policy, Harvard did not hold any in-person classes since March 13, 2020. Instead, all classes for the remainder of the Spring Term were offered in an online format with no in-person instruction.

3.      Despite sending students home, transitioning to online instruction, and closing its campuses, Harvard continued to charge full tuition and fees for the Spring 2020 semester as if nothing changed, continuing to reap the financial benefit of millions of dollars from students. Harvard did so despite students' complete inability to continue school as normal, occupy campus buildings and dormitories, or avail themselves of school programs, services, and events. So while students enrolled and paid Defendant for an on-campus academic experience, Defendant instead offered Plaintiffs and Class Members an online experience presented by Google or Zoom, void of face-to-face faculty and peer interaction, separated from program resources, and barred from

1

facilities vital to an on-campus educational experience. This is not what Plaintiffs and Class Members bargained for.

4.     While some colleges and universities have promised appropriate and/or proportional refunds, Harvard excludes itself from such other institutions treating students fairly, equitably, and as required by the law. Harvard has refused to provide any tuition refund for the Spring 2020 semester.

5.     In late May and early June of 2020, Harvard Medical School, Harvard Law School, Harvard Kennedy School, and the Harvard Graduate School of Education announced that the Fall 2020 Term will occur solely in an online format. In July 2020, Harvard's undergraduate College also announced all Fall 2020 Term courses will take place fully online. Harvard Business School announced a mix of fully online and hybrid in-person and online courses for the Fall 2020 Term.

6.     While some schools (*e.g.*, Law) offered current and incoming students a deferral option, others (*e.g.*, Education) did not. Furthermore, the tuition for each Harvard school for the Academic Year 2020–2021 will remain flat at the 2019–2020 level. Thus, Harvard declined to offer any sort of tuition reduction in light of the fact that a full one-half (and perhaps more) of the 2020 Academic Year will occur solely in an online format. The Harvard Law School administration has even gone so far as to tell concerned students to take out an additional loan and "rent office space" if they have trouble studying off-campus.[1]

7.     Essentially, students have paid Harvard tuition and fees for the promised on-campus instruction that is no longer available to them, access to buildings they can no longer enter, technology, programs and services that Harvard is no longer providing, and activities that are no longer available. Harvard is thus profiting from COVID-19 while further burdening students and

---

[1] https://abovethelaw.com/2020/06/harvard-law-tells-concerned-students-to-rent-office-space-to-study-during-online-only-semester./.

their families—many of whom have been laid off, become ill, lost loved ones, or are otherwise already bearing the brunt of the COVID-19 pandemic. The result is an enormous windfall to Harvard. Both contract and equity demand that Harvard disgorge its ill-gotten funds.

8.      Defendant's actions have financially damaged Plaintiffs and Class Members. Plaintiffs bring this action because Plaintiffs and the Class defined below have lost—and will continue to lose—the benefit of the education and services they were promised without a corresponding reduction in tuition and fees.

9.      Plaintiffs therefore seek, individually and on behalf of the Class, a proportionate reimbursement of tuition and fees for the Spring 2020 Term and a similar reimbursement for any subsequent academic term conducted in an online format and for which Harvard charges tuition and fees at the same level or higher as prior years.

## II.      JURISDICTION AND VENUE

10.      This Court has jurisdiction over the subject matter presented by this consolidated complaint because it is a class action arising under the Class Action Fairness Act of 2005 ("CAFA"), Pub. L. No. 109-2, 119 Stat. 4 (2005), which explicitly provides for the original jurisdiction of the Federal Courts of any class action in which any member of the Class is a citizen of a State different from any Defendant, and in which the matter in controversy exceeds in the aggregate sum of $5,000,000.00, exclusive of interest and costs. Plaintiffs allege that the total claims of individual Class Members in this action are in excess of $5,000,000.00 in the aggregate, exclusive of interest and costs, as required by 28 U.S.C. §§ 1332(d)(2) and (6). Diversity of citizenship exists under CAFA as required by 28 U.S.C. § 1332(d)(2)(A). Plaintiffs allege that more than two-thirds of all of the members of the proposed Class in the aggregate are citizens of a state other than Massachusetts,

where this action is originally being filed, and that the total number of members of the proposed Class is greater than 100, pursuant to 28 U.S.C. § 1332(d)(5)(B).[2]

11.     This Court has personal jurisdiction over Defendant because it is headquartered in this District and many of the acts and transactions giving rise to this action occurred in this District.

12.     Venue is appropriate in this District because Defendant is located within the District of Massachusetts. And on information and belief, events and transactions causing the claims herein, including Defendant's decision-making regarding its refund policy challenged in this lawsuit, have occurred within this judicial district.

### III.     PARTIES

13.     Plaintiff Abraham Barkhordar ("Plaintiff Barkhordar") is a citizen and resident of the State of California. Plaintiff is enrolled as a full-time graduate student at Harvard Law School.

14.     Plaintiff Student A ("Plaintiff A") is a citizen and resident of the State of North Carolina. Plaintiff graduated from Harvard in the Spring of 2020 with a Master's Degree in Science.

15.     Plaintiff Ella Wechsler-Matthaei ("Plaintiff Wechsler-Matthaei") is a citizen and resident of the Commonwealth of Massachusetts. Plaintiff graduated from Harvard in the Spring of 2020 with a Master's Degree in Education.

16.     Plaintiffs are in good financial standing at Defendant, having paid in whole or in combination tuition, fees, costs, and/or room and board charges assessed and demanded by Defendant for the Spring 2020 Term. Plaintiffs paid Defendant for opportunities and services that they did not receive, including on-campus education, facilities, services, and activities.

17.     Plaintiffs enrolled at Harvard to obtain the full experience of live, in-person courses and direct interactions with instructors and students. Plaintiffs chose Harvard due to the accessibility

---

[2] About 17.1% of the students attending Harvard University come from within Massachusetts. https://www.collegefactual.com/colleges/harvard-university/student-life/diversity/#chart-geographic-diversity.

of professors and camaraderie with their classmates in and out of the classroom. While Harvard offers some online programs, Plaintiffs purposefully did not apply to those programs.

18.     Plaintiffs instead specifically selected an on-campus experience for the variety of educational and extracurricular opportunities and benefits that only an in-person program can provide.

19.     Plaintiffs thus contracted for and paid Defendant for on-campus instruction, opportunities, facilities, and services for the Spring 2020 semester.

20.     On March 10, 2020, Harvard announced that beginning March 23, 2020 (the first day back from Spring Recess), it would transition all classes to virtual instruction until further notice.[3] In accordance with this policy, Harvard has not held any in-person classes since March 13, 2020. Furthermore, in late May and early June of 2020, Harvard Medical School, Harvard Law School, Harvard Kennedy School, and the Harvard Graduate School of Education announced that the Fall 2020 Term will occur solely in an online format. In July 2020, Harvard's undergraduate College also announced all Fall 2020 Term courses will take place fully online.

21.     With Harvard's campus closure, cancellation of campus events, suspension of many campus services and programs, and transition to exclusively online instruction during the Spring 2020 semester, Plaintiffs lost access to the on-campus instruction, opportunities, facilities, and services for which Plaintiffs had bargained for by selecting—and paying tuition and fees for—in-person courses and experiences.

22.     For example, Plaintiffs lost vital access to campus libraries, as well as the ability to attend or participate in student organizations, associated student activities, distinguished guest lectures, and events paid for by the student activity fee.

---

[3] https://www.harvard.edu/covid-19-moving-classes-online-other-updates.

23.     Plaintiffs paid Harvard for on-campus courses and the unique opportunities that come with them, including the ability to communicate directly with professors, utilize campus facilities and laboratories, attend office hours, and work through issues in-person. However, following the campus closure and transition to online courses, these benefits disappeared.

24.     Such a transition made it difficult for students to connect with professors, classmates, and staff, a critical component to the bargained-for on-campus experience.

25.     As a result, while Plaintiffs and Class Members paid for students' in-person access to renowned faculty as essential to the Harvard experience, Defendant excluded students from such access for the full Spring 2020 semester. Defendant plans to continue to exclude students from in-person courses for the Fall 2020 semester.

26.     Defendant President and Fellows of Harvard College is the legal name of Harvard University, a private university with its principal place of business at 1350 Massachusetts Avenue, Suite 450, Cambridge, Massachusetts, 02138. Defendant provides Class Members with campus facilities, in-person classes, as well as a variety of other facilities for which Defendant charged Plaintiffs and Class Members.

## IV.     FACTS

### A.  Harvard sets its tuition and fees based on providing students in-person classes and in-person access to professors, students, and the full array of campus resources.

27.     Founded in 1636, Harvard is one of the most prestigious schools in the world and is widely considered the pinnacle of higher education in the United States.

28.     Harvard's enormous endowment, the largest in the world, is reflective of the institution's prestige. At nearly $40 billion, the Harvard endowment is larger than the GDPs of half of the world's countries.[4]

29.     Rather than use its sizeable endowment to offset rising student tuition costs, Harvard charges tuition in the upper echelon of schools in the United States and globally. Tuition for Harvard College is currently $46,340 per year.[5]

30.     Like most universities in the United States, Harvard's undergraduate tuition has increased dramatically over the last 20 years.[6] For the 2000–2001 school year, Harvard's tuition was just $22,694.[7]

31.     Annual tuition at the graduate and professional schools is even higher than at the undergraduate College. For example, Harvard Law School tuition is $65,875 and Harvard Business School tuition is $73,440.

32.     Furthermore, while many schools nationwide offer and highlight remote learning capabilities as a primary component of their efforts to deliver educational value (*see, e.g.*, Western Governors University, Southern New Hampshire University, University of Phoenix-Arizona), and schools offering full-time online programs are much less expensive, Harvard is not such a school.

33.     Rather, a significant focus of Harvard's efforts to obtain and recruit students pertains to the campus experience it offers along with face-to-face, personal interaction with skilled and world-renowned faculty and staff.

---

[4] https://www.usnews.com/education/best-colleges/the-short-list-college/articles/10-universities-with-the-biggest-endowments; https://www.boston.com/news/business/2014/09/25/harvards-endowment-is-bigger-than-half-the-worlds-economies.

[5] https://www.harvard.edu/about-harvard/harvard-glance.

[6] https://www.usnews.com/education/best-colleges/the-short-list-college/articles/10-most-least-expensive-private-colleges.

[7] https://news.harvard.edu/gazette/story/2000/03/2000-01-undergraduate-tuition-and-fees-are-set/.

34.     Harvard markets its on-campus experience as a benefit of enrollment on Harvard's website[8]:

> Harvard's campus creates a stunning backdrop for all that happens within the University.
>
> Harvard offers unparalleled resources to the University community, including libraries, laboratories, museums, and research centers to support scholarly work in nearly any field or discipline.
>
> The Harvard student experience is characterized by unlimited possibilities. Opportunities abound inside the classroom and out, with over 8,000 courses from over 100 departments and countless research programs. Here, undergraduate students have access to almost every extracurricular program imaginable and the largest Division 1 Athletics Program in the country. And after graduation, students join the Harvard Alumni Association, which includes nearly 360,000 alumni worldwide.

35.     Students, in turn, agree to pay Harvard's costly tuition based on Harvard's promise to provide exactly what online classes cannot: an in-person learning experience.

36.     Among other things, that experience includes the interactions that occur with professors before, during, and after class. It also includes the spontaneous interactions that occur with fellow students before, during, and after class.

37.     And it includes access to Harvard's libraries, which has books, archives, and other resources that are only accessible in person. The in-person learning experience also includes access to study spaces.

38.     Other key facets of the experience include (but are not limited to):

- Face to face interaction with professors, mentors, and peers;

- Access to facilities such as libraries, laboratories, computer labs, and study rooms;

- Student governance and student unions;

- Extra-curricular activities, groups, intramural sports, etc.;

---

[8] https://www.harvard.edu/on-campus.

- Student art, cultures, and other activities;

- Social development and independence;

- Hands-on learning and experimentation, including labs and clinical education opportunities;

- Networking and mentorship opportunities; and

- In-person interactions with potential employers.

**B. Plaintiffs and Class Members paid tuition and fees for the Spring 2020 Term with the expectation of in-person learning.**

39. For the Spring 2020 semester, Plaintiffs and Class Members contracted with Harvard—and paid a premium—specifically for on-campus courses and programs.

40. Defendant's usual and customary practices when students register for on-campus courses and pay tuition for such courses is to provide on-campus instruction. Plaintiffs' and Class Members' reasonable expectation when registering for classes for the Spring 2020 semester was that those classes would be provided on-campus, consistent with Defendant's usual and customary practice.

41. Plaintiffs and Class Members had the reasonable expectation that Defendant would provide the in-person educational experience and use of its facilities represented in Defendant's publications, including but not limited to the catalogs, manuals, handbooks, bulletins, brochures, advertisements, and other promotional materials.

42. The combination of the express terms of Defendant's publications and Defendant's usual and customary practice constituted an offer to any students attending Harvard to register for on-campus classes. If accepted by Plaintiffs and Class Members who did in fact register for such on-campus classes, in accordance with Harvard's policies and procedures and usual custom and practice, and who timely paid tuition for those on-campus classes, Defendant became contractually obligated to provide on-campus classes to Plaintiffs and Class Members.

43.     Undergraduate tuition for the Spring 2020 Term at Harvard is approximately $23,865. Other fees include, but are not limited to, a Student Health Fee, Student Services Fee, and a Student Activity Fee.

44.     Spring 2020 Term graduate tuition at Harvard varies on area of study and year of study, but most PhD and master's programs charge $24,004 per Term for the first two years of study. Harvard Business School costs approximately $36,720 for the Spring 2020 Term and Harvard Law School costs approximately $32,937 for the Spring 2020 Term. Graduate students are also charged fees similar to the undergraduate fees listed above.

45.     Spring Term classes at Harvard began on January 27, 2020. Classes for the Term ended on April 29, 2020 and the final examination period ended on May 16, 2020.

46.     Plaintiffs selected Harvard because of the networking and collaboration with professors and professionals offered through Harvard's on-campus program. Plaintiffs contracted with Defendant and agreed to pay the high cost of Harvard's on-campus tuition because the program offered access to opportunities that were based on in-person classes and study.

47.     Plaintiffs and Class Members paid Harvard tuition and fees for on-campus courses— and the benefits, services, opportunities, and facilities that came with them—for the Spring 2020 semester. In registering and paying Harvard tuition and fees for the Spring 2020 semester, Plaintiffs and Class Members understood and had the reasonable expectation, per Harvard's publications and Harvard's usual and customary practice, that the classes they bargained and paid for would be administered on-campus for the duration of the semester and that they would get a full semester's worth of access to on-campus facilities, services, and resources.

48.     However, as set forth further below, since March 13, 2020, Plaintiffs have not been permitted to attend classes on-campus or had access to campus benefits.

**C. Harvard ends in-person classes and moves to online instruction without issuing a tuition refund.**

49.     On December 31, 2019, governmental entities in Wuhan, China confirmed that health authorities were treating dozens of cases of a mysterious, pneumonia-like illness. Days later, researchers in China identified a new virus that had infected dozens of people in Asia, subsequently identified and referred to as the novel coronavirus, or COVID-19.

50.     By January 21, 2020, officials in the United States were confirming the first known domestic infections of COVID-19.

51.     Due to an influx of thousands of new cases in China, on January 30, 2020, the World Health Organization officially declared COVID-19 as a "public health emergency of international concern."

52.     By March 11, 2020, the World Health Organization declared COVID-19 a pandemic.

53.     Travel and assembly restrictions began domestically in the United States on March 16, 2020, with seven counties in the San Francisco, California area announcing shelter-in-place orders. Other states, counties, and municipalities have followed the shelter-in-place orders and as of April 6, 2020, 297 million people in at least 38 states, 48 counties, 14 cities, the District of Columbia, and Puerto Rico are being urged or directed to stay home.

54.     As it relates to this suit, on March 10, 2020, Massachusetts Governor Charlie Baker declared a state of emergency, giving local officials more flexibility to respond to the Coronavirus outbreak.

55.     On the same day, March 10, 2020, Harvard announced on its website and in an email to students and faculty from President Lawrence S. Bacow that beginning March 23, 2020 (the first day back from Spring Recess), it would transition all classes to virtual instruction until further notice:

Dear Members of the Harvard Community,

Like all of you, I have been intently following reports of Coronavirus Disease 2019 (COVID-19) and considering the many ways in which its future course might alter my life and the lives of those closest to me. These past few weeks have been a powerful reminder of just how connected we are to one another—and how our choices today determine our options tomorrow.

Fortunately, a group of extremely dedicated people has been working literally around the clock to respond to the challenges posed by COVID-19. Our teams are considering every contingency as they undertake their important work, and I write today to update you on major near-term changes that will limit exposure to the disease among members of our community:

- We will begin transitioning to virtual instruction for graduate and undergraduate classes. Our goal is to have this transition complete by Monday, March 23, which is the first day of scheduled classes following Spring Recess.

- Students are asked not to return to campus after Spring Recess and to meet academic requirements remotely until further notice. Students who need to remain on campus will also receive instruction remotely and must prepare for severely limited on-campus activities and interactions. All graduate students will transition to remote work wherever possible. Schools will communicate more specific guidance and information, and we encourage everyone to review prior guidance about both international and domestic travel.

- We are transitioning over the course of the next few days to non-essential gatherings of no more than 25 people. Please note this is a change from prior guidance.

The decision to move to virtual instruction was not made lightly. The goal of these changes is to minimize the need to gather in large groups and spend prolonged time in close proximity with each other in spaces such as classrooms, dining halls, and residential buildings. Our actions are consistent with the recommendations of leading health officials on how to limit the spread of COVID-19 and are also consistent with similar decisions made by a number of our peer institutions. The campus will remain open, and operations will continue with appropriate measures to protect the health of the community.

For regular updates and additional information, please visit this dedicated webpage. Provost Alan Garber, Executive Vice President Katie Lapp, and HUHS Executive Director Giang Nguyen will continue to send you updates by email as needed. You will also continue to receive School- or Unit-specific information from local leadership. If you are a student or faculty member and have specific questions or concerns, I encourage you to be in touch with the contacts identified by your dean. If you are an employee, I encourage you to be in touch with your manager.

Despite our best efforts to bring the University's resources to bear on this virus, we are still faced with uncertainty—and the considerable unease brought on by uncertainty. It will take time for researchers, a good many of them who are our colleagues, to understand enough about this disease to mount a reliable defense against it. Now more than ever, we must do

our utmost to protect those among us who are most vulnerable, whether physically or emotionally, and to treat one another with generosity and respect. Please remember that Harvard Counseling and Mental Health Services and the Harvard Employee Assistance Program are available to help you manage anxiety and stress. Your mental health is just as important as your physical health.

To our students, I know it will be difficult to leave your friends and your classrooms. We are doing this not just to protect you but also to protect other members of our community who may be more vulnerable to this disease than you are.

To our faculty, I recognize that we are asking you midway through the semester to completely rethink how you teach. We do this because we know that you want to avoid putting your students at risk.

To our staff, I understand that we are expecting you to go above and beyond in your efforts to support our important mission of teaching and scholarship. We do this because we know we can rely on your creativity, flexibility, and judgment through these challenging times.

I am proud to be a member of a community where people put the greater good above their own self-interest. Thank you for your patience and your resilience as we all learn to temper increased distance with deeper care for one another.

With appreciation,
Larry

56.     In doing so, President Bacow stressed the importance of in-person educational experiences and the difficulty of online learning: "To our students, I know it will be difficult to leave your friends and your classrooms . . . to our faculty, I recognize that we are asking you midway through the semester to completely rethink how you teach."

57.     Shortly after President Bacow's announcement, Harvard closed almost all of its campus facilities, and Harvard has not held any undergraduate or graduate in-person classes since March 13, 2020.

58.     Following the closure of its facilities in March 2020, Defendant did not deliver the educational services, facilities, access, and opportunities that Plaintiffs and Class Members contracted and paid for during the Spring 2020 Term. Defendant did not issue any sort of compensatory tuition reimbursement.

**D. Harvard maintains virtual instruction for the Fall 2020 Term without any reduction in tuition or fees.**

59.    In May 2020, Harvard announced the continued closure of Defendant's facilities during the upcoming Fall 2020 Term.

60.    For example, on June 3, 2020, Harvard Law School Dean John Manning sent the following announcement to current and incoming law students and faculty:

Dear HLS Students,

I write to update you on our plans for Fall Term 2020. We have all hoped these past few months that the upcoming academic year could begin, at least in part, on campus. However, in light of the daily news about the continuing health risks of the pandemic, advice from public health experts, and the very real concern that testing will not yet be available on the scale or frequency needed to adequately monitor COVID-19-related illness in the Harvard community, we have found it necessary to conclude that Fall Term 2020 will be online.

This is not the announcement we'd hoped to make. But our first priority is, and must continue to be, the health and safety of our community, and we cannot reliably conclude at this time that we can safely provide an effective on-campus program this fall. We recognize that the public health situation may evolve between now and the end of August, and we dearly hope, as everyone does, that scientific developments with respect to COVID-19 will allow greater in-person activity, here and elsewhere, very soon. We also recognize, however, that you must be able to make appropriate plans for the coming semester and year, and that we owe it to you to communicate a decision sufficiently far in advance to enable you to do so. So, while we will keep you apprised as we learn more, we must now turn our focus fully to developing the best, most robust, highest-quality online academic, clinical, and extracurricular programming we can for the coming term.

We look forward to teaching—and learning from—you and to forming with you, as we do each year, an active and engaged community of learning and service. The Harvard Law School faculty is already hard at work adapting their teaching plans in order to offer the best online courses and clinics possible. In order to be prepared in the event it proved necessary again to teach and learn online, we have been busy, in recent weeks, studying and absorbing the latest research about how students best learn online and identifying the range of tools, techniques, and approaches that create excellent, engaging online courses. And we have extensively surveyed our faculty and (as you know) our students to gain insights from last spring's online teaching experience, with an eye toward tailoring best practices in online learning to the distinctive pedagogy of the law school classroom. We have also learned from last spring's experience that our clinics can successfully design and offer compelling, meaningful online opportunities for learning and for service to communities in need. It is an exciting process, with much to be learned and much new to try in our virtual classrooms and clinics. I'm inspired by the creativity and dedication with which faculty are planning for the fall as we work to nurture a vibrant, connected online community.

We also have been working to identify and develop channels for creating meaningful interactions and connections outside the classroom and for supporting the extracurriculars that are an integral part of your law school experience. As part of this programming, we are creating additional opportunities for advising and career planning, as well as a robust set of online events. We look forward to engaging student organization leadership in the coming weeks to learn more about—and to find ways we can support—their plans for fostering student engagement in the coming year. For incoming students, we are planning comprehensive orientation programs, with a particular focus on small group meetings so that you can get to know your classmates and our staff and faculty better before the term begins. Incoming JD students will have the opportunity to meet your section leaders and classmates not only during orientation, but in small groups beforehand, and LL.M students will be able to connect with classmates, Graduate Program leadership, and faculty members prior to the start of the term.

With the news that Fall Term 2020 will be online, you will have many specific questions about what to expect. Given rapidly changing circumstances, we will not be able to answer all of these questions here, but hope that these FAQs will begin to answer many of the most important ones. We very much want to learn more about the concerns you may have, and the circumstances you may face, as you prepare for the months ahead—including where you are, or are likely to be, physically located in the fall and which of your specific questions we have not yet addressed. **To that end, we will soon circulate a brief survey that will help us as we plan an engaging and enriching fall program and as we advise you about how to navigate the educational challenges created by this pandemic. We will ask that you please respond by 5:00 p.m. Friday, June 5, so that we can take your specific questions into account in our planning.** We will continue to update the FAQs as we learn more in the days and weeks ahead.

In the meantime, we are working hard to address the fact that the shift to a full semester of online learning will pose particular challenges for some – for example, those who face difficult learning environments at home, those who have technological challenges, or those in time zones remote from that of Cambridge who may find it difficult to participate in classes in real-time, as is required by the active-learning approach to law school pedagogy. We are seeking ways to mitigate those challenges, for example, by supplementing existing grant aid with the development of a new Technology Assistance Fund that will provide up to $1 million to help our students address technological obstacles to participating fully in online learning; by giving priority in the allocation of limited HLS dormitory housing to those facing technological or other circumstances that make it difficult to engage in online learning at home; and by working to identify, if possible, ways to increase the courses available in time slots that are easier for students in remote time zones.

We realize that, for a variety of reasons, an online learning experience may not be optimal for all of you and that international students, in particular, may face some unexpected challenges relating to travel and to visa status this coming year. Accordingly, we will offer an additional deferral period for our newly admitted JD and LL.M students. The new period will run from June 15 through June 19. We will also extend from June 15 to June 19 the deadline for returning students to opt for a fall-semester or full-year leave during Academic Year 2020–2021. To help you make your decision, our faculty and student services

staff will be available to advise you. We will also continue to update our FAQs as we learn
more. We very much hope that you choose to remain in what we expect to be an exciting
and enriching online academic and social program. But we want to be sure that you have a
fair opportunity to make a decision that is right for you based on the best information we
can provide you at this time.

Last spring, we had to adapt quickly to new formats and unexpected locations for
learning and teaching. The fact that this unprecedented transformation was achieved with so
little time to plan was a testament to our community. I am grateful to everyone—our
students, faculty, and staff—for all they did to create an effective and enriching learning
experience in challenging circumstances. This coming semester, though, asks something
different of us—to use technology to design even more creative, exciting, and excellent
experiences in support of learning, building community, and engaging in the service that
helps those most in need and that is fundamental to the work lawyers do. This is our work
now, as we take this next important step together. I look forward to working with all in this
extraordinary community as we embrace new opportunities and challenges.

Best,

John Manning

61.     Upon information and belief, Harvard intends to conduct virtual classes at many of
its degree-granting schools.

62.     Despite the fact that the Fall 2020 Term will occur solely in an online format,
Defendant also announced its intention to maintain the tuition for each Harvard school for the
Academic Year 2020–2021 at the 2019–2020 level.

**E.  Harvard's refusal to reduce its tuition harms Plaintiffs and Class Members.**

63.     As students who will no longer receive the educational services, facilities, access, and
opportunities that they were promised, Plaintiffs and all other Class Members have suffered
significant economic damages as a direct result of Harvard's refusal to lower tuition and fees for the
Spring 2020 and Fall 2020 Terms.

64.     Though the reasons for Harvard's continued closure may be justified, the fact
remains that such a closure presents significant losses to Plaintiffs and Class Members as even
Defendant's own communications recognize.

65.     Students across the country have offered apt descriptions of the loss they have

experienced as a result of the pandemic, highlighting the disparity between students' bargained for

educational experience and the experience that colleges and universities, including Defendant, now

provide.

66.     For example, as reported in The Washington Post, one student "wonders why he

and others . . . are not getting at least a partial tuition refund. Their education, as this school year

ends in the shadow of a deadly pandemic, is nothing like the immersive academic and social

experience students imagined when they enrolled. But tuition remains the same: $27,675 per

semester . . . 'Our faculty are doing a good job of working with us,' said Patel, 22, who is from New

Jersey. 'But at the end of the day, it's not the same as in-person learning. . . . It shouldn't just be a

part of the business model where, no matter what happens, you have to pay the same amount. The

cost needs to reflect some of the realities.'"[9]

67.     As another example, as reflected in a Change.org petition, with nearly 5,000

supporters, students at another major university highlight the loss experienced by students: "As a

result of the COVID-19 global pandemic crisis, Governor Pritzker has declared a state of emergency

in Illinois. In response, Northwestern University made the sensible decision to offer all Spring 2020

courses online for the start of the quarter and will likely extend this to the rest of the quarter as the

situation worsens. While this is certainly the right call to ensure the health and safety of all students,

Northwestern's tuition and fees do not accurately reflect the value lost by switching to online

education for potentially an entire term. For the following reasons, we are seeking a partial refund of

tuition and full refund of room and board for the Spring 2020 quarter. Since Northwestern is a top

private university, the estimated annual cost of attendance of $78,654 goes towards a comprehensive

---

[9] https://www.washingtonpost.com/education/2020/04/16/college-students-are-rebelling-against-full-tuition-after-classes-move-online/.

academic experience that cannot be fully replicated online. Due to the COVID-19 crisis, students paying for the Northwestern experience will no longer have access to invaluable face-to-face interaction with faculty, resources necessary for specific programs, and access to facilities that enable learning."[10]

68.     Another university's student newspaper reflects another example: "At this time, most of the campus and dorms need not be rigorously maintained. No events will be held, nor speakers hosted. The world-class education that consists in having opportunities to work and interact with academics and peers (not to mention the vast numbers of innovators, creators, doctors, organizers, and more that congregate on our campus) will no longer be provided."[11]

69.     Harvard students similarly called for tuition refunds. In the Harvard Crimson, School of Public Health student Bryan O. Buckley noted "changes in quality of education, future economic insecurity in light of the pandemic, and inability to cultivate a professional network on campus as reasons why students are pushing for reimbursements." He continued, " . . . I also think one of the rich parts about being at Harvard [...] is also the social capital that you're able to make while here at Harvard. The connections that you're able to make, the people that you're able to see, a lot of the programming that you're able to attend."[12]

**F.  Economic Damages**

70.     Plaintiffs and Class Members are entitled to compensation for services not received in the Spring 2020 Term and similar compensation for any subsequent term in which Harvard chooses to charge full tuition for online learning. Even if Defendant did not have a choice in cancelling in-person classes, it nevertheless improperly attempts to retain and continue to charge funds for services it did not and will not provide.

---

[10] https://www.change.org/p/northwestern-university-tuition-fees-reduction-for-spring-2020.
[11] https://www.chicagomaroon.com/article/2020/3/19/uchicago-lower-tuition-spring-2020/.
[12] https://www.thecrimson.com/article/2020/4/6/grad-students-tuition-reimbursements/.

71.     Plaintiffs and Class Members did not intend to attend an online educational institution, but instead enrolled in Defendant's institution on an in-person basis. The remote learning option is not the equivalent of the in-person education putative Class Members were promised when they committed to attend Harvard.

72.     Moreover, a remote education is not worth what Defendant charged Plaintiffs and Class Members for the Spring 2020 Term and intends to charge Plaintiffs and Class Members for the Fall 2020 Term. The tuition and fees for in-person instruction at Harvard are higher than tuition and fees for Harvard's other online courses and programs because such costs cover not just the academic instruction, but encompass an entirely different learning and living experience, as described above.

73.     Furthermore, by offering some students—but not all—the opportunity to request a one-year deferral, Defendant offers Plaintiffs and some Class Members a coercive choice.[13] Students may either pay the outrageous tuition and fees Defendant demands or interrupt their planned education. For current students, a deferral would not only amount to an interruption in education but would also result in the waste of tuition and fees previously paid to Defendant.

74.     Plaintiffs and Class Members are thus entitled to a proportionate reimbursement of tuition and fees for the Spring 2020 Term and a similar reimbursement for any subsequent academic term conducted in an online format and for which Harvard charges tuition and fees at the same level or higher as prior years. Such a reimbursement must be proportionate to the significantly lesser experience an online education provides as compared to a traditional in-person experience.

V.     CLASS ACTION ALLEGATIONS

75.     Plaintiffs incorporate by reference all the foregoing allegations.

---

[13] For instance, while the Law School offered students the opportunity to defer (albeit on short notice), the Graduate School of Education did not offer students the opportunity to defer at all.

76.     Plaintiffs bring this action on behalf of themselves and all others similarly situated pursuant to Rule 23(b)(2) and 23(b)(3) of the Federal Rules of Civil Procedure.

77.     Plaintiffs seek to represent the following Class:

> All people paying tuition to one of Harvard's 12 degree-granting schools in whole or in part, personally and/or on behalf of others, for on-campus instruction during the Spring 2020 Term.

78.     Specifically excluded from the Class are Defendant, Defendant's officers, directors, agents, trustees, parents, children, corporations, trusts, representatives, employees, principals, servants, partners, joint ventures, or entities controlled by Defendant, and their heirs, successors, assigns, or other persons or entities related to or affiliated with Defendant and/or Defendant's officers and/or directors, the judge assigned to this action, and any member of the judge's immediate family.

79.     Subject to additional information obtained through further investigation and discovery, the foregoing definition of the Class may be expanded or narrowed by amendment or amended complaint.

80.     The Class, and their counsel, satisfy the prerequisites of Federal Rule of Civil Procedure 23(a) and 23(g) and the requirements of Rule 23(b)(3).

81.     **Numerosity and Ascertainability.** The members of the Class are geographically dispersed throughout the United States and the world and are so numerous that individual joinder is impracticable. Upon information and belief, Plaintiffs reasonably estimate that there are thousands of members in the Class. As noted above, Harvard has at least 20,000 students across its degree-granting schools. Although the precise number of Class Members is unknown to Plaintiffs, the true number of Class Members is known by Defendant and may be determined through discovery. Class Members may be notified of the pendency of this action by mail and/or publication through the distribution records of Defendant and third-party retailers and vendors.

82.     **Commonality and Predominance.** Common questions of law and fact exist as to

all members of the Class and predominate over any questions affecting only individual Class

Members. These common legal and factual questions include, but are not limited to, the following:

   a)   whether Defendant charged the same amount of money to Class Members in
        exchange for a significantly reduced service compared to what Class Members
        originally accepted when they paid for the Spring 2020 Term;

   b)   whether Defendant plans to charge the same amount of money to Class Members in
        exchange for a significantly reduced service compared to what Class Members
        originally expected for the upcoming Fall 2020 Term;

   c)   whether Defendant will provide the services the Class Members originally accepted
        in exchange for commitment to the school and payment of tuition and fees;

   d)   whether Class Members are entitled to a reimbursement of tuition and fees for the
        prior Spring 2020 Term and a reduction of tuition and fees for the upcoming Fall
        2020 Term;

   e)   whether Defendant plans to unlawfully convert money from Plaintiffs and the Class;
        and

   f)   whether Defendant is liable to Plaintiffs and the Class for unjust enrichment.

83.     **Typicality.** Plaintiffs' claims are typical of the other Class Members' claims because

all Class Members were comparably injured through Harvard's substantially uniform misconduct as

described above. The Plaintiffs representing the Class are advancing the same claims and legal

theories on behalf of themselves and all other members of the Class that they represent. Further,

there are no defenses available to Defendant that are unique to Plaintiffs.

84.     **Adequacy of Representation.** Plaintiffs will fairly and adequately protect the

interests of the Class. Plaintiffs have retained counsel that is highly experienced in complex

consumer class action litigation, and Plaintiffs intend to vigorously prosecute this action on behalf of

the Class. Furthermore, Plaintiffs have no interests that are antagonistic to those of the Class.

85.     **Superiority.** A class action is superior to all other available means for the fair and

efficient adjudication of this controversy. The damages or other financial detriment suffered by

individual Class Members are relatively small compared to the burden and expense of individual litigation of their claims against Defendant. It would thus be impossible for the Class to obtain effective redress for the wrongs committed against them on an individual basis. Furthermore, even if Class Members could afford such individualized litigation, the court system could not. Individualized litigation would create the danger of inconsistent or contradictory judgments arising from the same set of facts. Individualized litigation would also increase delay and expense to all parties and the court system. By contrast, the class action device provides the benefits of adjudication of these issues in a single proceeding, economies of scale, and comprehensive supervision by a single court, and presents no unusual management difficulties under the circumstances.

86.     In the alternative, the Class may also be certified because:

a)   the prosecution of separate actions by individual Class Members would create a risk of inconsistent or varying adjudications with respect to individual Class Members that would establish incompatible standards of conduct for the Defendant;

b)   the prosecution of separate actions by individual Class Members would create a risk of adjudications with respect to them that would, as a practical matter, be dispositive of the interests of other Class Members not party to the adjudications, or substantially impair or impede their ability to protect their interests; and/or

c)   Defendant has acted or refused to act on grounds generally applicable to the Class as a whole, thereby making appropriate final declaratory and/or injunctive relief with respect to the members of the Class as a whole.

## VI.     CAUSES OF ACTION

### COUNT I

### BREACH OF CONTRACT

87.     Plaintiffs hereby incorporate by reference the allegations contained in all preceding paragraphs of this complaint. Plaintiffs bring this claim on behalf of themselves and on behalf of the members of the Class against Defendant.

88.     Plaintiffs and Class Members entered into identical, binding contracts with Defendant by accepting Defendant's offer to register for on-campus classes in accordance with the

terms of Defendant's publications and Defendant's usual and customary practice of providing on-campus courses. Furthermore, through the payment of tuition and fees for the prior year(s) at Defendant's institution, Plaintiffs and Class Members who are current students at Harvard (distinguished from incoming students) entered into an additional implied agreement with Defendant to complete their education at Harvard in the traditional in-person format.

89.      It was the reasonable expectation of Plaintiffs and Class Members and Defendant that Defendant would provide on-campus—as opposed to online—classes and instruction, and use of Defendant's facilities as mutually agreed in accordance with Defendant's usual and customary practice of providing on-campus courses, and as provided in Defendant's publications, including but not limited to the policies, procedures, brochures, advertisements, and other promotional materials.

90.      Under their contracts with Defendant, and Defendant's usual and customary practice of providing on-campus courses, Plaintiffs and Class Members registered for on-campus courses and paid Defendant tuition and fees for Defendant to provide in-person instruction and access to Defendant's facilities.

91.      As part of these contracts, and in exchange for the aforementioned consideration, Defendant promised to provide certain services, all as set forth above. Plaintiffs and Class Members fulfilled their end of the bargain when they registered and payed tuition and fees for on-campus courses and access to on-campus facilities and services.

92.      The reported tuition for the Spring 2020 Term was intended to cover in-person education services. In exchange for committing to attend Harvard and paying the reported tuition and fees, Class Members were entitled to on-campus courses and access to on-campus facilities and services for the Spring 2020 Term.

93.      Defendant did not provide the contracted for services for the Spring 2020 Term. Instead, Defendant has transferred all learning to an online format and has not proportionately

23

reimbursed or reduced tuition and fees. Defendant requires payment of the same amount from Plaintiffs and the Class as originally agreed upon but has reneged upon its commitment to provide to Plaintiffs and the Class the benefit of their bargain.

94.     Further, Defendant has now indicated that it will not be providing the contracted for services in the Fall 2020 Term either.

95.     Plaintiffs and members of the Class have suffered damages as a direct and proximate result of Defendant's breach, including but not limited to being deprived of the on-campus education, experience, and services to which they were promised and for which they forwent alternative work and educational experiences.

96.     As a direct and proximate result of Defendant's breach, Plaintiffs and the Class are entitled to damages to be decided by the trier of fact in this action. Such damages include, but are not limited to, the reimbursement of certain tuition, fees, and other expenses that Defendant collected but did not deliver. Defendant should provide a significant reimbursement for the tuition and fees Plaintiffs and Class Members paid for the Spring 2020 Term and any subsequent academic term conducted in an online format and for which Harvard charges tuition and fees at the same level or higher as prior years.

97.     Defendant's performance under the contract is not excused due to COVID-19. Indeed, there is no plausible excuse for Defendant to retain and continue to charge full tuition and fees when it did not provide—and has no plans to provide—the promised educational services. Even if performance was excused or impossible, Defendant would nevertheless be required to reimburse the funds it charged for services it did not provide in Spring 2020 or later.

## COUNT II

## BREACH OF IMPLIED CONTRACT

98.     Plaintiffs hereby incorporate by reference the allegations contained in all preceding paragraphs of this complaint. Plaintiffs bring this claim on behalf of themselves and on behalf of the members of the Class against Defendant.

99.     Plaintiffs plead this Count in the alternative to Count I.

100.     Plaintiffs and Class Members entered into an implied contract by accepting Defendant's offer to register for on-campus classes and use of Defendant's facilities in accordance with Defendant's usual and customary practice of providing on-campus courses.

101.     Under the implied contract, Plaintiffs and Class Members registered for on-campus courses.

102.     It was the reasonable expectation of Plaintiffs and Class Members that Defendant would provide them with on-campus—as opposed to online—classes and instruction and use of Defendant's facilities as mutually agreed and intended in accordance with Defendant's publications including, brochures, advertisements, and other promotional materials and Defendant's usual and customary practice of providing on-campus courses.

103.     Plaintiffs and Class Members accepted and intended to use and enjoy Defendant's on-campus classes and facilities.

104.     Plaintiffs and Class Members have fulfilled all expectations of their mutual agreement, by registering and paying for on-campus courses and access to on-campus facilities and services for the Spring 2020 semester. Plaintiffs and Class Members have paid Defendant for all Spring 2020 semester financial assessments.

105.     However, Defendant breached the implied contract, failed to provide those on-campus classes and/or services, and has not otherwise performed as obligated and required by the

implied-in-fact contract between Plaintiffs and Class Members and Defendant. Defendant moved all classes to online classes, restricted or eliminated Class Members' ability to access university facilities, and/or evicted Plaintiffs and Class Members from campus housing. In doing so, Defendant has deprived and continues to deprive Plaintiffs and Class Members from the benefit of their bargains with Defendant.

106. Plaintiffs and Class Members have been damaged as a direct and proximate result of Defendant's breach. The online classes provided by Defendant are objectively different from and less valuable than the on-campus classes for which the parties entered into an implied contract.

107. Plaintiffs and Class Members are entitled to damages, including but not limited to tuition refunds, fee refunds, and/or room and board refunds.

## COUNT III

## UNJUST ENRICHMENT

108. Plaintiffs hereby incorporate by reference the allegations contained in all preceding paragraphs of this complaint. Plaintiffs bring this claim on behalf of themselves and on behalf of the members of the Class against Defendant.

109. Plaintiffs plead this Count in the alternative to Counts I and II.

110. To the extent Defendant contends that its publications permit it to unilaterally and without notice change the terms under which Plaintiffs and Class Members were to receive instruction, from on-campus to online, the promises made by Defendant to Plaintiffs and Class Members to provide on-campus instruction were illusory and no contract exists between the parties.

111. Plaintiffs and Class Members conferred benefits upon Defendant in the form of committing to attend the institution—thereby forgoing alternative professional and educational opportunities—and paying tuition and fees.

112.     At the time of this commitment, tuition and fees were intended to cover in-person educational services. In exchange for committing to attend Harvard, Class Members were entitled to in-person educational services for the duration of their time as a student at Harvard.

113.     Defendant voluntarily accepted and retained these benefits by soliciting, welcoming, and accepting commitment to the institution and payment of tuition and fees. Defendant had an appreciation or knowledge of such benefits being accepted and retained as corresponding to the subsequent services Defendant was to provide (*i.e.*, in-person education).

114.     Defendant has retained these benefits, even though Defendant *did not* provide the education, experience, and services on which the benefits were predicated during the Spring 2020 Term and has announced that it *will not* provide the same education, experience, and services for many Class Members during the Fall 2020 Term.

115.     Defendant's retention is unjust under the circumstances. Accordingly, Defendant should reimburse Plaintiffs and Class Members for tuition and fees paid since Spring 2020 for educational services it did not or will not provide.

116.     It would be unjust and inequitable for Defendant to retain the benefits of student commitment and tuition and fees when it has not fulfilled its end of the bargain. Defendant should therefore be required to proportionally reimburse students tuition and fees starting with the Spring 2020 Term to eradicate this unjust enrichment.

## COUNT IV

## CONVERSION

117.     Plaintiffs hereby incorporate by reference the allegations contained in all preceding paragraphs of this complaint. Plaintiffs bring this claim on behalf of themselves and on behalf of the members of the Class against Defendant.

118.    Plaintiffs and Class Members have an undisputed right to receive educational services, activities, and access to Defendant's facilities for the Spring 2020 Term. Plaintiffs and Class Members obtained such rights by paying Defendant tuition, fees, and/or room and board and by otherwise remaining in good standing with Defendant.

119.    Defendant wrongfully exercised control over and/or intentionally interfered with the rights of Plaintiffs and Class Members by effectively closing its campus to in-person education and switching to an online-only format, discontinuing paid-for services, and evicting students from campus housing. All the while, Defendant has unlawfully retained the monies Plaintiffs and Class Members paid Defendant, as well as barred Plaintiffs and Class Members from use of Defendant's facilities.

120.    Defendant deprived Plaintiffs and the other Class Members of the rights and benefits for which they paid Defendant tuition, fees, and/or room and board.

121.    Plaintiffs and/or Class Members have requested and/or demanded that Defendant issue refunds.

122.    Defendant's interference with the rights and services for which Plaintiffs and Class Members paid damaged Plaintiffs and Class Members, in that they paid for rights, benefits, services, and/or facility access, but Defendant has deprived Plaintiffs and Class Members of their rights, benefits, services, and/or facility access.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs request that judgment be entered against the Defendant and that the Court grant the following:

a)  An order determining that this action may be maintained as a class action under Rule 23 of the Federal Rules of Civil Procedure, that Plaintiffs are Class Representatives, that Plaintiffs'

attorneys shall be appointed as Class Counsel pursuant to Rule 23(g) of the Federal Rules of Civil Procedure, and that Class notice be promptly issued;

b)   Judgment against Defendant for Plaintiffs' and Class Members' asserted claims for relief;

c)   For compensatory and punitive damages in amounts to be determined by the Court and jury;

d)   For prejudgment interest on all amounts awarded;

e)   For an order of restitution and all other forms of equitable monetary relief;

f)   For an injunctive relief as pleaded or as the Court may deem proper; and

g)   For an order awarding Plaintiffs and the Class their reasonable attorney's fees and expenses and costs of suit.

## JURY DEMAND

Plaintiffs demand trial by jury on their own behalf and on behalf of Class Members.

Dated: August 18, 2020

Respectfully submitted,

By: */s/ Kristie LaSalle*
Kristie LaSalle (BBO #692891)
HAGENS BERMAN SOBOL SHAPIRO LLP
55 Cambridge Parkway, Suite 301
Cambridge, MA 02142
T: (617) 482-3700
kristiel@hbsslaw.com

Steve W. Berman (*Pro Hac Vice*)
HAGENS BERMAN SOBOL SHAPIRO LLP
1301 Second Avenue, Suite 2000
Seattle, WA 98101
T: (206) 623-7292
steve@hbsslaw.com

Daniel J. Kurowski (*Pro Hac Vice*)
Whitney K. Siehl (*Pro Hac Vice*)
HAGENS BERMAN SOBOL SHAPIRO LLP
455 N. Cityfront Plaza Dr., Suite 2410
Chicago, IL 60611
T: (708) 628-4949
dank@hbsslaw.com
whitneys@hbsslaw.com

Warren T. Burns (*Pro Hac Vice* forthcoming)
LeElle Slifer (*Pro Hac Vice* forthcoming)
Russell G. Herman (*Pro Hac Vice* forthcoming)
BURNS CHAREST LLP
900 Jackson Street, Suite 500
Dallas, Texas 75202
T: (469) 904-4550
F: (469) 444-5002
wburns@burnscharest.com
lslifer@burnscharest.com
rherman@burnscharest.com

David Pastor (BBO # 391000)
PASTOR LAW OFFICE, LLP
63 Atlantic Avenue 3rd Floor
Boston, MA 02110
T: 617-742-9700
F: 617-742-9701
Dpastor@pastorlawoffice.Com

Alec M. Leslie (*Pro Hac Vice*)
Bursor & Fisher, P.A.
888 Seventh Avenue
New York, NY 10019
T: 646-837-7126
F: 212-989-9163
Aleslie@bursor.com

Frederick J. Klorczyk , III (*Pro Hac Vice*)
Bursor & Fisher, P.A.
1990 North California Blvd., Suite 940
Walnut Creek, CA 94596
T: (925) 300-4455
F: (925) 407-2700
Fklorczyk@bursor.Com

*Attorneys for Plaintiffs, individually and on behalf of all others similarly situated*

## <u>CERTIFICATE OF SERVICE</u>

I, David Pastor, hereby certify that the foregoing document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non-registered participants.


Dated: August 18, 2020                                    /s/ David Pastor
                                                                     David Pastor (BBO #391000)