# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MASSACHUSETTS

ABRAHAM BARKHORDAR, SARAH
ZELASKY, and ELLA WECHSLER-
MATTHAEI, individually and on behalf of all
others similarly situated,

        Plaintiffs,

   v.

HARVARD UNIVERSITY,

        Defendant.

Civil Action No. 1:20-cv-10968-IT

## DEFENDANT'S MEMORANDUM IN SUPPORT OF ITS MOTION TO DISMISS THE FIRST AMENDED CONSOLIDATED COMPLAINT

# TABLE OF CONTENTS

**Page**

INTRODUCTION ................................................................................................................... 1

BACKGROUND ................................................................................................................... 3

    A.    Harvard's Student Handbooks ............................................................... 4

    B.    The Global Coronavirus Pandemic and Harvard's Transition to Virtual Instruction and Services ....................................................................... 5

    C.    The Lawsuits .............................................................................................. 7

ARGUMENT ....................................................................................................................... 7

I.    PLAINTIFFS' CLAIMS SEEKING TUITION AND FEE REFUNDS FOR THE SPRING 2020 SEMESTER SHOULD BE DISMISSED. ................................ 8

    A.    All Plaintiffs' Claims Are Impermissible Challenges To The Quality And Value Of Their Education. ................................................................. 8

    B.    Plaintiffs' Breach Of Contract Claims Fail ........................................ 10

        1.    Plaintiffs Fail To Plead Adequately The Express Or Implied Terms Of The Contract That Harvard Allegedly Breached. ............................ 11

        2.    The Contractual Materials Incorporated Into The Complaint Preclude Any Reasonable Student Expectation That Harvard Would Provide In-Person Education In Any Circumstance. ................... 13

        3.    This Court May Not Infer A Promise Harvard Did Not Expressly Make. ........................................................................................................ 15

    C.    Plaintiffs' Unjust Enrichment And Conversion Claims Fail. ............ 17

        1.    Plaintiffs Cannot Assert Claims For Unjust Enrichment And Conversion Predicated On A Breach Of Contract. ................................ 17

        2.    Plaintiffs' Conversion Claim Also Fails Because Plaintiffs Do Not Seek To Recover Tangible Property. ......................................................... 18

II.    PLAINTIFF BARKHORDAR'S REFUND REQUEST FOR THE FALL 2020 SEMESTER SHOULD BE DISMISSED. ...................................................... 19

CONCLUSION ................................................................................................................. 20

# TABLE OF AUTHORITIES

**Page(s)**

## Cases

*Adams v. Antonelli Coll.*,
  304 F. Supp. 3d 656 (S.D. Ohio 2018) ........................................................................ 8

*Ambrose v. New England Ass'n of Schs. & Colls., Inc.*,
  252 F.3d 488 (1st Cir. 2001) .................................................................................... 10

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009) .................................................................................................. 8

*Barneby v. New England Sch. of Montessori, LLC*,
  2016 WL 3768928 (Conn. Super. Ct. June 9, 2016) ................................................ 8

*Bauza v. Morales Carrion*,
  578 F.2d 447 (1st Cir. 1978) ............................................................................... 9, 14

*Berkowitz v. President & Fellows of Harvard Coll.*,
  58 Mass. App. Ct. 262 (2003) ................................................................................ 15

*Brooks v. AIG SunAmerica Life Assurance Co.*,
  480 F.3d 579 (1st Cir. 2007) ............................................................................ 10, 11

*Catalan-Aguilar v. R3 Educ., Inc.*,
  2015 WL 6043598 (D. Mass. Oct. 15, 2015) ......................................................... 15

*Chong v. Ne. Univ.*,
  2020 WL 5847626 (D. Mass. Oct. 1, 2020) .................................................. 4, 11, 17

*Cuesnongle v. Ramos*,
  713 F.2d 881 (1st Cir. 1983) ........................................................................ 9, 14, 18

*Devaney Contracting Corp. v. Devaney*,
  2010 WL 5464831 (Mass. App. Ct. Dec. 30, 2010) ................................................ 19

*Dickerson v. MassMutual Life Ins. Co.*,
  94 Mass. App. Ct. 1106 (2018) ............................................................................. 16

*Doe v. Brandeis Univ.*,
  177 F. Supp. 3d 561 (D. Mass. 2016) ................................................................ 4, 11

*Doe v. Harvard Univ.*,
  2020 WL 2769945 (D. Mass. May 28, 2020) ..................................................... 4, 13

*Doe v. Town of Framingham*,
  965 F. Supp. 226 (D. Mass. 1997) .......................................................................... 8

## TABLE OF AUTHORITIES
(continued)

**Page(s)**

*Gillis v. Principia Corp.*,
  832 F.3d 865 (8th Cir. 2016) ..................................................... 8

*Gossels v. Fleet Nat'l Bank*,
  453 Mass. 366 (2009) ............................................................ 19

*Higgins v. Town of Concord*,
  246 F. Supp. 3d 502 (D. Mass. 2017) ...................................... 13

*In re TJX Cos. Retail Sec. Breach Litig.*,
  527 F. Supp. 2d 209 (D. Mass. 2007) ...................................... 18

*Jorge v. Rumsfeld*,
  404 F.3d 556 (1st Cir. 2005) ..................................................... 4

*McLaughlin v. City of Lowell*,
  1998 WL 224929 (Mass. Super. Ct. Apr. 3, 1998) ....................... 9

*Metro. Life Ins. Co. v. Cotter*,
  464 Mass. 623 (2013) ............................................................ 17

*Musket Research Assocs., Inc. v. Ovion, Inc.*,
  2006 WL 8458276 (D. Mass. May 15, 2006) ............................. 19

*Neelon v. Krueger*,
  2015 WL 4647931 (D. Mass. Aug. 5, 2015) .............................. 18

*Paynter v. NYU*,
  319 N.Y.S.2d 893 (1971) ........................................................ 16

*Rac Assocs. v. R.E. Moulton, Inc*,
  2011 WL 3533221 (Mass. Super. Ct. Feb. 1, 2011) ................... 17

*Rinsky v. Trs. of Bos. Univ.*,
  2010 WL 5437289 (D. Mass. Dec. 27, 2010) ......................... 11, 12

*Rodriguez v. Mass. Bay Transp. Auth.*,
  92 Mass. App. Ct. 26 (2017) ............................................... 12, 16

*Roe v. Loyola Univ. New Orleans*,
  2007 WL 4219174 (E.D. La. Nov. 26, 2007) ............................. 18

*Ross v. Creighton Univ.*,
  957 F.2d 410 (7th Cir. 1992) .............................................. 8, 10

# TABLE OF AUTHORITIES
(continued)

**Page(s)**

*Saldivar v. Racine*,
 818 F.3d 14 (1st Cir. 2016) ................................................................................................. 3, 8

*Schaer v. Brandeis Univ.*,
 432 Mass. 474 (2000) ............................................................................................................. 9

*Shin v. Mass. Inst. of Tech.*,
 2005 WL 1869101 (Mass. Super. Ct. June 27, 2005) .......................................................... 12

*SiOnyx, LLC v. Hamamatsu Photonics K.K.*,
 332 F. Supp. 3d 446 (D. Mass. 2018) .................................................................................. 17

*Sonoiki v. Harvard Univ.*,
 2020 WL 3416516 (D. Mass. June 22, 2020) ............................................................. 4, 13, 18

*Spence v. Berkshire Life Ins. Co.*,
 561 F. Supp. 2d 126 (D. Mass. 2008) .................................................................................. 20

*Squeri v. Mount Ida Coll.*,
 2019 WL 2249722 (D. Mass. May 24, 2019) ....................................................................... 11

*Squeri v. Mount Ida Coll.*,
 954 F.3d 56 (1st Cir. 2020) ..................................................................................... 11, 12, 20

*Strategic Energy, LLC v. W. Mass. Elec. Co.*,
 529 F. Supp. 2d 226 (D. Mass. 2008) .................................................................................. 17

*Sullivan v. Bos. Architectural Ctr., Inc.*,
 57 Mass. App. Ct. 771 (2003) ................................................................................................ 9

*Weiler v. PortfolioScope, Inc.*,
 469 Mass. 75 (2014) ............................................................................................................. 19

*Wollaston Indus., LLC v. Ciccone*,
 2019 WL 6841987 (D. Mass. Dec. 16, 2019) ...................................................................... 19

## Other Authorities

Nicholas P. Fandos & Samuel Y. Weinstock, *University Closes with Marathon
 Bombing Suspect Still At-Large*, The Harvard Crimson (Apr. 19, 2013),
 https://www.thecrimson.com/article/2013/4/19/university-closes-gunman-
 loose/ ..................................................................................................................................... 2

**TABLE OF AUTHORITIES**
(continued)

**Page(s)**

Eric Levenson, *After Years of Resisting, Harvard Now Can't Stop Having Snow Days*, Boston.com (Feb. 10, 2015), https://www.boston.com/news/local-news/2015/02/10/after-years-of-resisting-harvard-now-cant-stop-having-snow-days ...................................................................................................................... 2

Liz Mineo, *The COVID-19 Evacuation Wasn't Harvard's First*, The Harvard Gazette (May 26, 2020), https://news.harvard.edu/gazette/story/2020/05/the-covid-19-evacuation-wasnt-harvards-first-explain-historians/ .................................................. 2

Office of the Governor, *COVID-19 Order No. 13* (Mar. 23, 2020), https://www.mass.gov/doc/march-23-2020-essential-services-and-revised-gatherings-order/download ........................................................................................... 6

Pursuant to Federal Rule of Civil Procedure 12(b)(6) and Local Rule 7.1(b), Defendant

Harvard University ("Harvard" or the "University")[1] submits this Memorandum in support of its

Motion to Dismiss the First Amended Consolidated Complaint ("Complaint" or "Compl.") (ECF

No. 26).

## INTRODUCTION

In response to the COVID-19 global pandemic, Harvard (like nearly all colleges and

universities in the United States) made the difficult decision to transition to remote instruction to

protect the safety of its students, faculty, and community.  Since then, Harvard has dedicated

substantial resources to ensuring that its remote instruction is accessible and high quality, all the

while working toward the day when every member of its community can return to campus safely.

Plaintiffs in this case are three Harvard students who were enrolled during the Spring

2020 semester and who had the option to take a leave of absence—and receive a partial refund—

after the pandemic forced Harvard to transition to remote learning.  But each of the Plaintiffs

chose to remain enrolled, attend remote classes, and obtain credit toward their degrees—indeed,

one re-enrolled for the Fall 2020 term knowing in advance that his instruction would be remote.

Nevertheless, Plaintiffs allege—on behalf of "[a]ll people paying tuition to one of Harvard's 12-

degree granting schools . . . for on-campus instruction during the Spring 2020 Term," Compl.

¶ 77—that Harvard should be liable in contract and tort and that they should receive tuition

refunds because (Plaintiffs allege) the remote learning environment to which Harvard

transitioned in March 2020 was inadequate.  Harvard, of course, shares Plaintiffs' frustration

with the constraints that the pandemic has imposed on the Harvard community.  But while

---

[1] The President and Fellows of Harvard College is the legal entity comprising Harvard
University, and is the proper party to this litigation.

Plaintiffs' frustration is understandable, their legal claims fail:  under Massachusetts law and the relevant contractual materials, Harvard had the discretion to alter the format of its academic offerings in the face of an unprecedented health crisis.  The Complaint should be dismissed for four important reasons.

*First*, all of Plaintiffs' claims are based on the allegation that they are owed money because Harvard provided an inadequate education.  But nearly every state—including Massachusetts—categorically rejects student claims challenging the adequacy of their education, whether brought on a contract or tort theory.  Harvard has always retained authority to modify its academic programs to adapt to unforeseeable circumstances—whether severe weather events,[2] acts of terrorism,[3] or public health crises,[4] and it must be able to do so without fear of being subjected to litigation over the changes it makes to its academic offerings.  Indeed, if Plaintiffs were permitted to proceed on this theory, *every* decision that a student believes has negatively impacted her education could be the subject of a lawsuit.  That is why courts routinely reject such claims.

*Second*, Plaintiffs' breach of contract claims fail because Harvard never made a promise, contractual or otherwise, to provide an in-person education under all circumstances.  Plaintiffs

---

[2] *See, e.g.*, Eric Levenson, *After Years of Resisting, Harvard Now Can't Stop Having Snow Days*, Boston.com (Feb. 10, 2015), https://www.boston.com/news/local-news/2015/02/10/after-years-of-resisting-harvard-now-cant-stop-having-snow-days.

[3] *See, e.g.*, Nicholas P. Fandos & Samuel Y. Weinstock, *University Closes with Marathon Bombing Suspect Still At-Large*, The Harvard Crimson (Apr. 19, 2013), https://www.thecrimson.com/article/2013/4/19/university-closes-gunman-loose/.

[4] *See, e.g.*, Liz Mineo, *The COVID-19 Evacuation Wasn't Harvard's First*, The Harvard Gazette (May 26, 2020), https://news.harvard.edu/gazette/story/2020/05/the-covid-19-evacuation-wasnt-harvards-first-explain-historians/ ("In 1752, a smallpox epidemic shut down Harvard for five months and canceled Commencement for that year.").

fail to identify any such promise, which alone is sufficient reason to dismiss their contract claims. But a second and more fundamental reason is that the contractual materials incorporated by the Complaint affirmatively demonstrate that there was no such promise. Indeed, the handbooks setting forth the policies that govern Harvard's relationships with its students expressly afford the University and its several schools vast discretion over academic affairs, including the discretion to alter academic offerings. Those provisions reflect the broad discretion already afforded universities under Massachusetts law and foreclose any suggestion that Harvard promised—expressly or impliedly—an in-person education no matter what the circumstances. And even setting aside this discretion, Harvard's handbooks spell out the process for students to take a leave of absence and receive a tuition refund. After Harvard announced its transition to remote instruction, Plaintiffs here had, but failed to take advantage of, that option.

*Third*, Plaintiffs' unjust enrichment and conversion claims fail as a matter of law because such claims cannot proceed when, as here, the parties' relationship is governed by contract and the plaintiffs seek only damages from a purported breach of that contract.

*Finally*, there is no basis for refunding tuition prospectively for any *future* semesters of remote learning. After all, current students—including the one current student Plaintiff here— knew that instruction would be remote months before the Fall 2020 semester began and again, had the option of taking a leave of absence (and thus paying no tuition). As First Circuit precedent makes clear, students who chose to proceed have no plausible claim, based in contract or otherwise, that they received anything other than what they were promised.

## BACKGROUND

The following are relevant facts alleged or incorporated in the Complaint, accepted as true for purposes of this motion. *See Saldivar v. Racine*, 818 F.3d 14, 18 (1st Cir. 2016).

### A.      Harvard's Student Handbooks

"[T]he terms of [a university's] contractual relationship [with its students] can be derived from student policy manuals," *Sonoiki v. Harvard Univ.*, 2020 WL 3416516, at *8 (D. Mass. June 22, 2020), *appeal docketed* No. 20-1689 (1st Cir. July 16, 2020),[5] and the policies applicable to Harvard students are outlined in the student handbook for the particular school in which the student is enrolled.  *See* Exs. 1-3[6] (operative handbooks for schools attended by Plaintiffs before COVID-related amendments).  The Harvard Law School ("HLS") Handbook applies to Plaintiff Barkhordar, who was enrolled as a full-time student at HLS for the Spring 2020 semester, Compl. ¶ 13, and has re-enrolled as a full-time HLS student for the Fall 2020 semester.  The Graduate School of Education ("GSE") Handbook applies to Plaintiff Wechsler-Matthaei, who graduated from Harvard in the Spring of 2020 with a master's degree in Education.  Compl. ¶ 15.  The School of Public Health Handbook applies to Plaintiff Zelasky, who graduated from Harvard in Spring of 2020 with a master's degree from that school.  Compl. ¶ 14.  Not one of the handbooks applicable to Plaintiffs conditions tuition or fees on the provision of in-person instruction or services, nor do any obligate Harvard to provide one form of instruction.  *See* Exs. 1-3.  To the contrary, most of the handbooks expressly recognize the University's substantial discretion to change tuition, fees, course offerings, and attendance policies as circumstances dictate.  The GSE Handbook, for instance, provides that Harvard:

> reserves the right to make changes at any time.  These changes may affect tuition

---

[5] The Complaint states that Harvard's handbooks are a source of the contract between Harvard and Plaintiffs.  Compl. ¶ 41.  Thus, the handbooks can be considered at the dismissal stage because they are central to Plaintiffs' contract claims and their authenticity is beyond dispute. *Jorge v. Rumsfeld*, 404 F.3d 556, 559 (1st Cir. 2005); *Chong v. Ne. Univ.*, 2020 WL 5847626, at *1 (D. Mass. Oct. 1, 2020); *Doe v. Harvard Univ.*, 2020 WL 2769945, at *5 (D. Mass. May 28, 2020) (Talwani, J.); *Doe v. Brandeis Univ.*, 177 F. Supp. 3d 561, 573 n.1 (D. Mass. 2016).

[6] All exhibits are attached to the accompanying Declaration of Jennifer B. Sokoler.

and other fees, courses, degrees, and programs offered (including the modification
or possible elimination of degrees and programs), degree and other academic
requirements, academic policies, rules pertaining to student conduct and discipline,
fields or areas of concentration, and other rules and regulations . . . .

Ex. 1 at 8.  The School of Public Health Handbook includes a materially identical provision.  *See*
Ex. 2 at 1.

In addition, all the applicable Harvard student handbooks specify that tuition and fee
refunds are available for students who withdraw or take a leave of absence for a semester or a
portion thereof.  *See, e.g.*, Ex. 3 at 91 (HLS Handbook stating that "[s]tudents who take a leave
during the academic year are charged tuition for the period of enrollment"); Ex. 1 at 19 (GSE)
(similar); Ex. 2 at 22 (School of Public Health) (similar).  In other words, the handbooks
authorize refunds only for students who are no longer enrolled in courses and are not receiving
academic credit toward their degrees.  As set out below, the Plaintiffs here could have taken such
a leave of absence and received a partial refund—but rather than doing so, they all chose to
proceed with remote learning and received credit toward their degrees.  And the only Plaintiff
who did not graduate in Spring 2020—HLS student Barkhordar—has chosen to re-enroll for Fall
2020.

**B.**      **The Global Coronavirus Pandemic and Harvard's Transition to Virtual
            Instruction and Services**

On March 10, 2020, Massachusetts Governor Charles Baker declared a state of
emergency in response to the spread of COVID-19.  Compl. ¶ 54.  That same day, Harvard
announced that to protect the safety and well-being of the Harvard community and to limit the
spread of the disease, the University would transition to virtual instruction on March 23, 2020
(the first day back from Spring Recess).  Compl. ¶¶ 2, 55.  The announcement further stated that
each Harvard school would communicate to its students more specific guidance regarding the
transition to online learning and directed students to a webpage with general answers to

frequently asked questions ("FAQ") about the University's pandemic response.  *See* Ex. 4

(March 10 announcement directing students to FAQ cited at Compl. ¶¶ 2, 20).

The FAQ page, in turn, explained that the University was "working closely with faculty

to determine how courses can be meaningfully completed remotely" and would "work[] with

faculty on alternate arrangements" if components of a class could not be completed online.  *Id.* at

2.  Additionally, the FAQ page provided that "as long as instruction continues" and Harvard

University Health Services remains open for telehealth appointments, the University would not

refund tuition or the Student Health Fee.  *Id.* at 3, 4.  In particular, the FAQ page explained that

"[r]oom and board costs w[ould] be pro-rated for the remainder of the year for all students

leaving campus and completely vacating their housing."  *Id.* at 3.  And individual schools would

assess whether to refund "[a]ctivity and student fees."  *Id.*

On March 23, 2020, Governor Baker issued an emergency order prohibiting gatherings of

more than 10 people and requiring all organizations that do not provide "COVID-19 Essential

Services" to close their physical workplaces and facilities.  Office of the Governor, *COVID-19*

*Order No. 13* (Mar. 23, 2020), https://www.mass.gov/doc/march-23-2020-essential-services-and-

revised-gatherings-order/download.  Harvard accordingly transitioned to remote instruction for

the remainder of the Spring 2020 semester.  The University gave students the option to either

continue their learning remotely or take a leave of absence and receive a partial refund of the

semester's tuition.[7]

As alleged in the Complaint, several Harvard schools—including HLS, where Plaintiff

_____

[7] *See* Ex. 1 at 19 (GSE partial refund for leave before April 10); Ex. 2 at 24 (School of Public
Health partial refund for leave before March 30); Ex. 3 at 91 (HLS partial refund for leave before
April 30).

Barkhordar is enrolled—announced in May and early June 2020 that they would offer instruction in an online format for the Fall 2020 semester.  Compl. ¶¶ 5, 59-61.[8]  HLS's announcement preceded the deadline for Barkhordar to request a leave of absence and avoid paying any tuition for the Fall 2020 semester.  *See* Ex. 5 at 1 (HLS deadline June 22).

### C.      The Lawsuits

On May 20, 2020, Sarah Zelasky (then proceeding anonymously as Student A) commenced a putative class action against Harvard, alleging claims for breach of contract, unjust enrichment, and conversion based on Harvard's failure to refund a portion of Spring 2020 semester tuition and fees after it transitioned to remote instruction.  *See* Complaint (ECF No. 1).  On June 22, 2020, Abraham Barkhordar, filed a separate class action asserting similar claims while also seeking refunded tuition and fees for future semesters offered remotely.  *See* Complaint, *Barkhordar v. Harvard*, No. 1:20-cv-11203 (D. Mass. June 22, 2020), ECF No. 1.  On July 21, 2020, this Court granted the parties' joint motion to consolidate the two cases, and on August 18, 2020, Zelasky, Barkhordar, and a third plaintiff—Ella Wechsler-Matthaei—filed a consolidated class action complaint.  Plaintiffs filed the First Amended Consolidated Complaint on September 23, 2020, identifying Zelasky, asserting breach of express and implied contract, unjust enrichment, and conversion claims, and seeking reimbursement of tuition and fees for the Spring 2020 semester and any subsequent semester conducted in an online format.

## ARGUMENT

On a motion to dismiss under Rule 12(b)(6), the Court must determine whether the

---

[8] The next month, Harvard College announced that it would continue to offer only online instruction for undergraduate students, while Harvard Business School announced plans to offer a hybrid semester with a mix of online and in-person instruction.  Compl. ¶ 5.

pleading contains "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quotation omitted). This inquiry involves a "two-step analysis." *Saldivar*, 818 F.3d at 18 (quotation omitted). First, the Court "distinguish[es] the complaint's factual allegations (which must be accepted as true) from its conclusory legal allegations (which need not be credited)." *Id.* (quotation omitted). "At step two, [the Court] must 'determine whether the factual allegations are sufficient to support the reasonable inference that the defendant is liable.'" *Id.* (quotation omitted).

## I.    PLAINTIFFS' CLAIMS SEEKING TUITION AND FEE REFUNDS FOR THE SPRING 2020 SEMESTER SHOULD BE DISMISSED.

### A.    All Plaintiffs' Claims Are Impermissible Challenges To The Quality And Value Of Their Education.

The theory underlying all of Plaintiffs' claims is that their education was inadequate— and they are entitled to tuition and fee refunds and discounts—because Harvard transitioned to remote education in response to the global COVID-19 pandemic. Specifically, they allege that instead of offering in-person instruction, Harvard delivered "an online experience presented by Google or Zoom, void of face-to-face faculty and peer interaction, separated from program resources, and barred from facilities vital to an on-campus educational experience." Compl. ¶ 3. But courts across the country have held that claims against colleges and universities seeking damages for an allegedly "inadequate" education are not cognizable, whether sounding in breach of contract or tort.[9]  Massachusetts is no exception. *See Doe v. Town of Framingham*, 965 F.

---

[9] *See, e.g.*, *Gillis v. Principia Corp.*, 832 F.3d 865, 872 (8th Cir. 2016) (a "breach-of-contract claim that raises questions concerning the reasonableness of the educator's conduct in providing educational services . . . is one of educational malpractice" and must be dismissed (quotations omitted)); *Ross v. Creighton Univ.*, 957 F.2d 410, 414 (7th Cir. 1992) ("[T]he overwhelming majority of states that have considered this type of claim have rejected it."); *Adams v. Antonelli Coll.*, 304 F. Supp. 3d 656, 664-65 (S.D. Ohio 2018) (rejecting contract-based claim for a tuition refund based on allegation of "inadequate" education); *Barneby v. New England Sch. of*

Supp. 226, 229-30 (D. Mass. 1997) ("educational malpractice" suits "not recognized under Massachusetts law"); *accord McLaughlin v. City of Lowell*, 1998 WL 224929, at *5 (Mass. Super. Ct. Apr. 3, 1998).

Courts reject such claims because they "are chary about interfering with academic . . . decisions made by private colleges and universities." *Schaer v. Brandeis Univ.*, 432 Mass. 474, 482 (2000) (quotation omitted). School officials, not courts, are experts in designing courses and academic requirements, and they must have "the widest range of discretion" not only to adapt those programs to new pedagogical theories, the world's evolving economies and cultures, and advances in technology and scientific knowledge, but also to address multiple other contingencies beyond the control of the university. *See Sullivan v. Bos. Architectural Ctr., Inc.*, 57 Mass. App. Ct. 771, 774-75 & n.5 (2003) (quotation omitted). Indeed, that discretion is at its zenith where, as here, a university is "dealing with uncertain contingencies." *Bauza v. Morales Carrion*, 578 F.2d 447, 451-53 (1st Cir. 1978). As the First Circuit explained in rejecting a challenge to a university's decision to change its course offerings because of a teacher strike, it "should startle anyone at all familiar with university life" "to think that a university could be found to have broken its contract when it changed the dates of classes, or the curriculum, for reasons beyond its control." *Cuesnongle v. Ramos*, 713 F.2d 881, 885-86 (1st Cir. 1983).

Plaintiffs' claims necessarily call for this Court to preside over a review of the quality of the education Harvard provided in Spring 2020 and thus impermissibly ratify the very type of claims that Massachusetts courts have rejected. It would be impossible to measure the amount of any refund or discount without evaluating the difference in value between the education students

---

*Montessori, LLC*, 2016 WL 3768928, at *3 (Conn. Super. Ct. June 9, 2016) (dismissing unjust enrichment claim based on alleged deprivation of educational opportunities).

paid for and the allegedly lower-quality education they received. *See Ross*, 957 F.2d at 414

(noting "inherent uncertainties" in determining "nature of damages" in claims alleging

inadequacy of educational offering). In other words, Plaintiffs are asking this Court both to

undertake the "patent[ly] undesirab[le]" task of "assess[ing] the efficacy of the operations of [an]

academic institution" and to interpose its own judgment of the value of the education Harvard

provided as the "lawful" tuition to charge. *Ambrose v. New England Ass'n of Schs. & Colls.,*

*Inc.*, 252 F.3d 488, 499 (1st Cir. 2001).

Nor could Plaintiffs' challenge, if allowed to proceed, be cabined to the pandemic-related

context at issue here. Harvard, like all schools, regularly makes academic decisions that students

could challenge on similar grounds, from changing course requirements or pedagogy to closing a

facility for renovations. Courts recognize that it would be untenable for an educational

institution to have to defend a lawsuit arguing that the tuition charged was too high whenever a

student second-guesses a decision affecting her education. *See, e.g., Ross*, 957 F.2d at 414

(rejecting such claims in part because the "sheer number of claims that could arise if this cause

of action were allowed might overburden schools"). Such untenable consequences are why

courts uniformly reject these claims, however they are styled. This Court should likewise

dismiss all claims in the Complaint and reject Plaintiffs' invitation to preside over Harvard's

academic decisions—claims that Massachusetts law precludes.

### B. Plaintiffs' Breach Of Contract Claims Fail.

Next, Plaintiffs' breach of contract claims fail because (i) they do not identify with

specificity the contractual promise Harvard allegedly breached, *see Brooks v. AIG SunAmerica*

*Life Assurance Co.*, 480 F.3d 579, 586 (1st Cir. 2007); (ii) the contractual materials incorporated

by reference in the Complaint make clear *first*, that Harvard retains broad discretion to modify

the format of courses and *second*, that payment of tuition and fees is not conditioned on the

receipt of in-person instruction; and (iii) Massachusetts law precludes enforcing a promise of in-person education absent express contractual language imposing that obligation.

        1.     *Plaintiffs Fail To Plead Adequately The Express Or Implied Terms Of The Contract That Harvard Allegedly Breached.*

"It is well-established that the student-college relationship is contractual in nature." *Brandeis Univ.*, 177 F. Supp. 3d at 593.  Breach of contract claims, however, must be dismissed where (as here) plaintiffs "allege, in conclusory fashion, that the defendant breached the contract." *Squeri v. Mount Ida Coll.*, 2019 WL 2249722, at *5 (D. Mass. May 24, 2019) (quotation omitted), *aff'd* 954 F.3d 56, 71 (1st Cir. 2020) (holding that students failed to state express or implied breach of contract claim against university because they failed to "allege . . . specific [contract] terms").  Rather, a plaintiff must describe with specificity "what obligations were imposed on each of the parties by the alleged contract" and "the specific contractual promise the defendant failed to keep." *Brooks*, 480 F.3d at 586 (quotation omitted).  These requirements apply with particular force to claims brought by students against universities. Although under Massachusetts law "statements in 'handbooks, policy manuals, brochures, catalogs, advertisements, and other promotional materials can form the basis of a valid contract,'" any promises contained therein must be "'definite and certain so that the promisor should reasonably foresee that it will induce reliance.'" *Rinsky v. Trs. of Bos. Univ.*, 2010 WL 5437289, at *11 (D. Mass. Dec. 27, 2010) (quotation omitted).  Indeed, Judge Stearns recently dismissed a nearly identical tuition-related contract claim precisely because the complaint failed to allege any such promise. *See Chong*, 2020 WL 5847626, at *3 (dismissing breach of contract claim because the plaintiffs had not "plausibly established that the parties' agreement included a right to in-person instruction").

       Plaintiffs' contract claims here fail for the same reason:  they do not plausibly allege *any*

"specific contractual promise" that Harvard failed to keep.  Instead, Plaintiffs assert in

conclusory fashion that Harvard promised in its "publications" and via its customary practice to

provide an "in-person learning experience" in exchange for students' tuition and fees.  Compl.

¶¶ 19, 35, 41-42; *see id.* ¶ 38 (listing, without citation, in-person services supposedly promised).

But Plaintiffs do not identify *any* source of *any such* alleged promises in Harvard's student

handbooks or any other relevant document; moreover, they fail to quote any contract provision

promising an in-person education in all circumstances.  That deficiency is fatal to both Plaintiffs'

express and implied breach of contract claims.  *See Squeri*, 954 F.3d at 71-72; *see also Rinsky*,

2010 WL 5437289, at *11-12 (dismissing breach of contract claim where plaintiff student both

"failed to offer what exactly the alleged contract promised . . . offering no quotations from the

[university's] handbook [and] promotional materials" and failed to "suppl[y] facts from which to

fairly infer implied" contract terms); *Rodriguez v. Mass. Bay Transp. Auth.*, 92 Mass. App. Ct.

26, 29 (2017) (affirming dismissal of breach of contract claim where contract was "silent

regarding the source of the contractual obligation").

      The only source that the Complaint purports to quote is a "Harvard website" that

describes resources on the Harvard campus that are available to *undergraduate* students.  *See*

Compl. ¶ 34 (quoting the website as stating: "Here, undergraduate students have access to almost

every extracurricular program imaginable . . . .").  By its terms, that broad statement does not

apply to Plaintiffs, all of whom are graduate students.  Even so, it is far "too indefinite to create

an enforceable contract."  *Shin v. Mass. Inst. of Tech.*, 2005 WL 1869101, at *7 (Mass. Super.

Ct. June 27, 2005) (statement in medical school brochure that students would get "access to a full

range of physicians . . .  who can care for your physical and psychological needs" did not form

an enforceable contract).[10]   In short, the Complaint's allegations are "too vague and imprecise"
to support a breach of contract action, express or implied.  *Higgins v. Town of Concord*, 246 F.
Supp. 3d 502, 518 (D. Mass. 2017) (dismissing breach of contract claim).  Thus, dismissal of
those claims is required.

> 2. *The Contractual Materials Incorporated Into The Complaint Preclude Any*
> *Reasonable Student Expectation That Harvard Would Provide In-Person*
> *Education In Any Circumstance.*

That Plaintiffs have failed to plead any binding contractual promise is enough to dismiss
the Complaint.  But Plaintiffs' claims suffer from an even more fundamental flaw: no student
reviewing the contractual materials incorporated in the Complaint could reasonably expect that
Harvard was obligated to provide an in-person education in all circumstances, much less in the
face of a global pandemic.  To the contrary, those materials make clear both that there is no
contractual right to in-person education and that Harvard has the express contractual (and legal)
right in its discretion to modify course offerings and attendance policies.  *See supra* at 4-5.

In considering students' breach of contract claims against their universities, including at
the motion to dismiss stage, courts look to "student policy manuals" and handbooks as a source
of the "terms of [the] contractual relationship."  *Sonoiki*, 2020 WL 3416516, at *8 (motion to
dismiss).  Their meaning is a question of law for the Court and is judged by "a reasonable
expectations standard"—*i.e.*, "what meaning the university should reasonably expect the other
party to have given terms in its contract."  *Doe*, 2020 WL 2769945, at *9 (motion to dismiss).

No student reviewing Harvard's handbooks could reasonably expect that Harvard

---

[10] The Complaint also cites correspondence from Harvard administrators to students regarding
Harvard's response to the pandemic.  Comp. ¶¶ 55, 60.  Even if these were contractual in nature
(they are not), Plaintiffs have pointed to nothing in those letters, which notified students about
the transition to remote learning, that can be construed as promising in-person instruction.

promised an in-person education, no matter the circumstances.  For one thing, the Complaint

points to no provision in any student handbook, document, or any other relevant material making

any such promise—because there is no such provision to cite.  *See supra* Part I.B.1.  And even if

such promises could be inferred from silence (*but see infra* Part I.B.3), the student handbooks

contain provisions expressly reserving Harvard's right to modify services, tuition, fees, courses,

or programs offered.[11]  For example, the GSE and School of Public Health Handbooks explicitly

state that the schools "reserve[] the right" "at any time" "to make changes" that "may affect"

matters including "tuition," "other fees," "degrees and programs offered (including the

modification or possible elimination of degrees and programs)," "degree and other academic

requirements," "academic policies," and "other rules and regulations applicable to students."  Ex.

1 at 8; Ex. 2 at 1.  These provisions mirror the broad discretion already afforded universities

under Massachusetts law.  *See supra* at 8-10; *infra* at 15-17.

No student reviewing these provisions (or Massachusetts law) could reasonably conclude

that Harvard promised to provide on-campus instruction in the midst of a pandemic.  If Harvard

can at "any time" "make changes" to degrees, programs, or courses, it must also be able to

transition those courses to remote instruction in response to a public health crisis.  *See*

*Cuesnongle*, 713 F.2d at 885 (reservation of rights clause foreclosed students' breach of contract

claims premised on university closing course sections, charging a fee for activities not held,

reducing student services, and failing to provide adequate library and student center facilities).

These are not the only provisions that preclude Plaintiffs' contract claims.  The

---

[11] The HLS Handbook lacked an express reservation of rights provision before March 2020.  But no such provision was required, because HLS "also did not explicitly deny itself that" discretion, *Bauza*, 578 F.2d at 453, which the First Circuit has held is inherent in university administration:  "a university could not be run any other way," *Cuesnongle*, 713 F.2d at 885.

handbooks applicable to Plaintiffs also include refund provisions that entitle students to partial tuition and fee refunds if they withdraw or take a leave of absence—*i.e.*, if they leave the University for a portion of the semester and thus receive no further access to its courses and services and no credit toward their degrees.  *See supra* at 5 (citing leave provisions).  Students at these schools were given the opportunity to take a leave of absence and receive a partial refund prior to—and well into—the transition of programming to a remote setting in the Spring 2020 semester.  *See supra* at 5-6.  Students who were dissatisfied with the transition to remote instruction thus had the option to receive a partial tuition and fee refund for the term.  But the inverse is also true: students (like Plaintiffs) who chose to remain enrolled and receive full academic credit toward their degrees could not reasonably expect to receive a refund.

3.     *This Court May Not Infer A Promise Harvard Did Not Expressly Make.*

Nor may the Court infer a promise of in-person instruction that was not expressly made, given the substantial deference that courts afford universities in determining the scope and content of their academic programs.  In fact, even if Harvard's handbooks had not granted the University broad discretion to alter its educational offerings, Harvard would still retain that discretion under Massachusetts law.  *See supra* at 8-10.  Plaintiffs demand, in essence, that the Court overwrite express provisions of the Harvard-student contract by implying terms that waive the discretion colleges and universities need—and possess as a matter of Massachusetts law even apart from the contracts—in order to adapt their programs to the evolving needs of their students and employees.  The law simply does not support this position.  *See Berkowitz v. President & Fellows of Harvard Coll.*, 58 Mass. App. Ct. 262, 269-70 (2003) (reversing denial of motion to dismiss because "in the absence of a violation of a reasonable expectation created by the contract or arbitrary and capricious conduct by the university, courts are not to intrude into university decision-making" (citation omitted)); *see also Catalan-Aguilar v. R3 Educ., Inc.*, 2015 WL

6043598, at *2-3 (D. Mass. Oct. 15, 2015) (same); *supra* at 8-10 (citing cases).  Thus, absent any specific, express contractual provision requiring Harvard to continue on-campus instruction notwithstanding an unprecedented global pandemic, Massachusetts law precludes this Court from inferring an obligation to do so.

The allegation that Harvard's "usual and customary practice[]" is to provide on-campus courses, Compl. ¶ 100, does not alter that conclusion.  For one thing, transforming a "usual or customary practice" into an implicit contractual promise would nullify not only universities' broad discretion under Massachusetts law, but also the *express* discretion the contractual provisions here grant Harvard.  *See supra* at 4-5, 13-14; *Dickerson v. MassMutual Life Ins. Co.*, 94 Mass. App. Ct. 1106 (2018) ("Although custom and practice may assist in policy interpretation, it may not be used to contradict or vary the terms of a policy.").  Plaintiffs' theory, moreover, would fail even apart from this legal and contractual discretion.  Take, for example, *Rodriguez v. Massachusetts Bay Transportation Authority*, 92 Mass. App. Ct. 26 (2017).  The plaintiff there alleged that the MBTA breached its contract with purchasers of rail passes when extreme storms interrupted its ordinary service schedule, resulting in delays and cancellations. *Id.* at 26-28.  The Massachusetts Appeals Court affirmed the dismissal of the plaintiff's breach of contract claim, holding that (i) "it [wa]s not reasonable to draw th[e] inference" that the MBTA "agreed to be bound by the regular schedule" and (ii) "the purchase of a monthly pass . . . is not a guarantee of performance according to its published schedule in these extraordinary circumstances."  *Id.* at 30-31.  As in *Rodriguez*, it is unreasonable to infer here that (i) because Harvard usually provides on-campus instruction it impliedly agreed to be "bound" to do so; or (ii) students' payment of tuition entitles them to on-campus instruction notwithstanding extraordinary circumstances.  *Cf. Paynter v. NYU*, 319 N.Y.S.2d 893, 894 (1971) (reversing

- 16 -

tuition refund where ordinary class schedule was suspended due to anti-war protests).

    **C.**    **Plaintiffs' Unjust Enrichment And Conversion Claims Fail.**

        1.    *Plaintiffs Cannot Assert Claims For Unjust Enrichment And Conversion Predicated On A Breach Of Contract.*

No claim for unjust enrichment or conversion lies where the parties' relationship is governed by contract and the plaintiff seeks only damages from a purported breach. *Metro. Life Ins. Co. v. Cotter*, 464 Mass. 623, 641 (2013) ("[U]njust enrichment [claim] will not lie where there is a valid contract" between the parties (quotation omitted)); *Rac Assocs. v. R.E. Moulton, Inc*, 2011 WL 3533221, at \*1 (Mass. Super. Ct. Feb. 1, 2011) (dismissing conversion claim based on "failure to pay sums due on a contract for services"). Unjust enrichment is an equitable claim that is "displac[ed]" when "[a] valid contract defines the obligations of the parties" and provides the plaintiff with an adequate remedy at law. *SiOnyx, LLC v. Hamamatsu Photonics K.K.*, 332 F. Supp. 3d 446, 472 (D. Mass. 2018) (quotation omitted). Judge Stearns recently dismissed a nearly identical unjust enrichment claim for precisely this reason. *See Chong*, 2020 WL 5847626, at \*4. Likewise, "resolution of the parties' obligations under [a] tort" like conversion "is unnecessary and duplicative" where the parties' duties are provided for by contract and the plaintiff alleges "only pure economic loss" based on a contract breach. *Strategic Energy, LLC v. W. Mass. Elec. Co.*, 529 F. Supp. 2d 226, 236 (D. Mass. 2008); *see Rac Assocs.*, 2011 WL 3533221, at \*1. Plaintiffs' unjust enrichment and conversion claims thus fail because they: (i) rest on Harvard's purported failure to perform obligations under the agreement that Plaintiffs entered into when they enrolled and paid tuition; and (ii) seek to recover for an economic injury—*viz.*, tuition and fees. *See* Compl. ¶¶ 108-22.[12]

---

[12] Plaintiffs attempt to avoid this conclusion by asserting that "no contract exists between the parties" if Harvard's handbooks "permit it to unilaterally and without notice change the terms

But even if Plaintiffs could bring these claims based on an alleged breach of contract, they must still be dismissed because Plaintiffs have not pleaded (and cannot plead) that Harvard's decision to transition to remote learning contravened any duty it owed to its students. Harvard's decision to shift to remote learning in response to the COVID-19 pandemic was well within the discretion afforded Harvard by its student handbooks and Massachusetts law to adapt curricula. *See supra* at 8-17. Thus, for the same reason that Plaintiffs have failed to state a claim for breach of contract, their unjust enrichment and conversion claims also fail. *See Sonoiki*, 2020 WL 3416516, at *15 (dismissing quasi-contract claim based on breach of student handbook where no breach occurred); *Neelon v. Krueger*, 2015 WL 4647931, at *6 (D. Mass. Aug. 5, 2015) (Talwani, J.) (holding that "actions . . . in accordance with the . . . contract . . . were not wrongful" for purposes of conversion claim (quotation omitted)); *see also Roe v. Loyola Univ. New Orleans*, 2007 WL 4219174, at *2-3 (E.D. La. Nov. 26, 2007) (university not unjustly enriched by retaining tuition where student "received full credit for" courses and graduated).

2.   *Plaintiffs' Conversion Claim Also Fails Because Plaintiffs Do Not Seek To Recover Tangible Property.*

Plaintiffs' conversion claim also fails because Plaintiffs do not seek to recover tangible property. In Massachusetts, "conversion . . . relate[s] to interference with tangible rather than intangible property." *In re TJX Cos. Retail Sec. Breach Litig.*, 527 F. Supp. 2d 209, 212 (D. Mass. 2007*), aff'd in part, vacated in part*, 564 F.3d 489 (1st Cir. 2009) (quotation omitted). Here, Plaintiffs contend that Harvard wrongfully interfered with their "right to receive

---

under which Plaintiffs and Class Members were to receive instruction." Compl. ¶ 110. But that is a legal conclusion, not a factual allegation, and it is wrong—the First Circuit, examining an almost identical reservation of rights provision in a university's catalogue, concluded that the provision was the "Law among the parties" and held that the university had not breached its contractual obligations. *See Cuesnongle*, 713 F.2d at 885 (quotation omitted).

educational services, activities, and access to [Harvard's] facilities."  Compl. ¶¶ 118, 120, 122. Professional services, however, are not "tangible property."  *See, e.g.*, *Musket Research Assocs., Inc. v. Ovion, Inc.*, 2006 WL 8458276, at *6 (D. Mass. May 15, 2006) (rejecting claim for conversion of "ideas, analysis, and services, rather then [*sic*] the tangible pieces of paper").

Plaintiffs cannot cure this error by pleading that Harvard converted the tuition and fees they paid.  "Conversion occurs only when a defendant exercises wrongful control over specific personal property," *Gossels v. Fleet Nat'l Bank*, 453 Mass. 366, 372 (2009)—in the case of money, "specific funds, not debts or fungible moneys," *Devaney Contracting Corp. v. Devaney*, 2010 WL 5464831, at *1 (Mass. App. Ct. Dec. 30, 2010).  But Plaintiffs have not identified "specific funds" that Harvard converted.  To the contrary, Plaintiffs seek to recover the *value* of the in-person education they were denied, rather than the specific monies that they paid to Harvard.  *E.g.*, Comp. ¶¶ 72, 74.  Such claims for value do not sound in conversion.  *See, e.g.*, *Weiler v. PortfolioScope, Inc.*, 469 Mass. 75, 87-88 (2014); *Wollaston Indus., LLC v. Ciccone*, 2019 WL 6841987, at *3 (D. Mass. Dec. 16, 2019) (dismissing conversion claim).

## II.     PLAINTIFF BARKHORDAR'S REFUND REQUEST FOR THE FALL 2020 SEMESTER SHOULD BE DISMISSED.

Plaintiff Barkhordar, the only named plaintiff who has not graduated, also seeks tuition discounts for the Fall 2020 term (and any future term offered remotely).  Those claims must be dismissed for the same reasons as the Spring 2020-based claims: they impermissibly challenge the value of a Harvard education, are based on a "contractual promise" that Harvard never made, and are inconsistent with the broad discretion granted universities by both law and contract.  *See supra* Part I.  But the Court must dismiss these forward-looking claims for the *additional* reason that—as the Complaint itself acknowledges—Harvard's schools expressly notified students that the Fall 2020 term would be offered remotely before the deadline to pay tuition and fees.  *See*

*supra* at 6-7; Compl. ¶¶ 5, 59-61.  Accordingly, no student could have expected to receive an in-person education in exchange for Fall tuition and fees.[13]

Plaintiffs contend that the Court should ignore students' awareness of Harvard's plans for Fall 2020 because they were given a "coercive choice" of paying for online instruction or interrupting their education.  Compl. ¶ 73.  But if Plaintiff Barkhordar preferred to pay less for his education or attend in-person classes, he was free to transfer his credits to a different institution or, as many did, take a leave of absence from Harvard.  Plaintiff Barkhordar cannot cite any authority that compels Harvard to provide him future semesters of in-person education no matter what.  Indeed, the First Circuit's decision in *Squeri* expressly precludes that theory of relief.  There, students alleged that they entered into a contract with their college when they were admitted and that the college breached that contract by closing down unexpectedly before they graduated.  The First Circuit explicitly rejected the argument that because the students were admitted, enrolled, and paid "one semester of tuition," the school owed them "four years of education in exchange."  *Squeri*, 954 F.3d at 72.  That holding precludes Plaintiff Barkhordar's forward-looking theory here: if Mount Ida College did not breach a duty to its students by shutting down altogether, then Harvard cannot have "breached" any obligation by transitioning to remote instruction during a global health emergency—particularly where Harvard informed students of that transition before they were required to pay tuition and fees.

## CONCLUSION

The Complaint should be dismissed with prejudice.

---

[13] To the extent Plaintiff Barkhordar seeks refunds for future semesters, such claims are for anticipatory repudiation, which is not actionable.  "Seeking damages for breach of . . . [a] contract before that breach has actually occurred, is . . . an impermissible cause of action" in Massachusetts. *Spence v. Berkshire Life Ins. Co.*, 561 F. Supp. 2d 126, 130 (D. Mass. 2008).

Dated: October 7, 2020                          Respectfully submitted,


                                    /s/ Anton Metlitsky
                                    Anton Metlitsky (*pro hac vice*)
                                    ametlitsky@omm.com
                                    Jennifer Sokoler (*pro hac vice*)
                                    jsokoler@omm.com
                                    O'MELVENY & MYERS LLP
                                    7 Times Square
                                    New York, NY 10036
                                    Telephone:      (212) 326-2000
                                    Facsimile:      (212) 326-2061

                                    Matthew Powers (*pro hac vice*)
                                    mpowers@omm.com
                                    O'MELVENY & MYERS LLP
                                    Two Embarcadero Center
                                    San Francisco, CA 94111
                                    Telephone:      (415) 984-8700
                                    Facsimile:      (415) 984-8701

                                    Victoria L. Steinberg, BBO #666482
                                    vsteinberg@toddweld.com
                                    Rebecca M. O'Brien, BBO #693592
                                    robrien@toddweld.com
                                    TODD & WELD LLP
                                    One Federal Street
                                    Boston, MA  02110
                                    Telephone:      (617) 624-4714
                                    Facsimile:      (617) 624-4814

                                    *Attorneys for Defendant*
                                    *President and Fellows of Harvard College*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that this document filed through the ECF system will be sent

electronically to the registered participants as identified on the Notice of Electronic Filing (NEF)

and paper copies will be sent to those indicated as non-registered participants on October 7,

2020.

*/s/ Anton Metlitsky*
Anton Metlitsky (*pro hac vice*)
