# EXHIBIT 1

## COMMONWEALTH OF MASSACHUSETTS

**ESSEX, ss.**  **SUPERIOR COURT**
**CIVIL ACTION**
**No. 2077CV00431**

### PAUL MORAN[1]

<u>vs.</u>

### STONEHILL COLLEGE, INC.

### <u>MEMORANDUM OF DECISION AND ORDER</u>
### <u>ON DEFENDANT'S MOTION TO DISMISS</u>

Plaintiff Paul Moran ("Moran") brings this suit against defendant Stonehill College, Inc. ("Stonehill") on behalf of himself and a proposed class of numerous other similarly situated persons to recover monies Stonehill received in consideration for tuition, room and board, and other fees related to on-campus amenities despite the cancellation of on-campus instruction and the closure of its on-campus facilities due to the COVID-19 pandemic. The First Amended Complaint and Demand for Jury Trial ("First Amended Complaint") seeks compensation for the services and benefits of the on-campus experience and in-person instruction not received as a result of the closure of Stonehill's campus during the Spring 2020 semester. It alleges the following four counts: (I) breach of contract; (II) violations of G. L. c. 93A, § 2; (III) unjust enrichment; and (IV) declaratory judgment. The matter is now before the court on Stonehill's motion to dismiss pursuant to Mass. R. Civ. P. 12(b)(6) (Paper No. 13). After a hearing on the motion on November 17, 2020, and for the reasons that follow, the motion to dismiss is **<u>ALLOWED</u>** in part and **<u>DENIED</u>** in part.

---

[1] On behalf of himself and all others similarly situated

## BACKGROUND

The following facts are taken from the allegations of the First Amended Complaint (Paper No. 7).

Stonehill is a private college principally located in Easton, Massachusetts. Moran's son is a full-time Stonehill student who resided on campus at the start of the 2019/2020 academic year. Moran made payments to Stonehill on behalf of his son for fees, room and board, and tuition for the 2019/2020 academic year.

The First Amended Complaint alleges that, to entice students to attend, Stonehill touts its in-person, hands-on curriculum. Stonehill's website markets to prospective students the benefits it provides with its "beautiful 384-acre" on-campus experience. Its educational marketing materials also emphasize the benefits of living on campus, saying: "Your residence life experience will give you the opportunity to learn more about yourself as you come to know people from different backgrounds and cultural experiences – all of which will help you learn and grow and prepare you for life after college." Stonehill also promotes its small class size and 12:1 student/faculty ratio as another reason to attend the college. According to the First Amended Complaint, the success of Stonehill's marketing campaign is demonstrated by the fact that eighty-nine percent of its students choose to live on and learn at Stonehill's campus.

Stonehill charged the following amounts for Moran's son for the 2019-2020 academic year: $46,642 as tuition; $16,520 for room and board; a $100 room guarantee fee; $2,702 for student health insurance; a $30 registration fee; a $30 recreational center fee; a $50 technology fee; a $150 resident parking fee; and $150 for his meal plan. Stonehill charged members of the proposed class the same types of fees.

On March 16, 2020, Stonehill ordered all students to leave campus for the remainder of the Spring 2020 semester due to the COVID-19 pandemic. That same day, Stonehill closed the school's facilities and canceled all in-person classes, events, and services. Stonehill informed its students that all classes would resume online.

Following the closure, Stonehill offered only the following partial refunds to Moran and members of the proposed class: a credit of forty-two percent of the semester's room and board charge (totaling $2,160);[2] and a refund of all unused dollars on the semester's meal plans. The First Amended Complaint alleges Stonehill's offer to provide a $2,160 "credit" for the Spring 2020 semester room charge is unfair, that Stonehill was not authorized to retain that amount for use for future semesters, and that Stonehill's retention of the credit has caused harm to Moran and members of the proposed class.

Moran also alleges that Stonehill is unfairly profiting from the closure necessitated by the pandemic because it has refused to return funds for services it cannot provide. Besides room and board charges, the closure of on-campus classes and activities prevented Stonehill's students from receiving the benefit of forty-two percent of the fees paid for the Spring 2020 semester. Stonehill's refund plan does not include a pro rata reimbursement for any of the fees paid for services not provided due to the campus closure (e.g., the recreational center, technology, and parking fees).

The First Amended Complaint also seeks compensation for the difference in value between in-person education and online instruction. Moran alleges that Stonehill itself acknowledges the superiority of in-person versus online instruction, as Stonehill's tuition and

---

[2] Although not explained in the First Amended Complaint, the court infers that this forty-two percent calculation is based on the amount of the Spring 2020 semester that was remaining at the time of the closure of Stonehill's campus on March 16, 2020.

3

fees for in-person instruction are higher than its tuition and fees for online instruction. According to the First Amended Complaint, Moran's son and members of the proposed class chose to attend Stonehill for the on-campus experience and in-person instruction.

As a result of the closure, Moran's son has not received the services and access Moran paid for the Spring 2020 semester. Moran's son and members of the proposed class were deprived of the following during the Spring 2020 semester: in-person interaction with professors, mentors, and peers; access to facilities such as computer labs, study rooms, and the library; the opportunity to participate in student governance and extra-curricular activities and groups; and other services and amenities for which they had paid. The First Amended Complaint alleges that the value of online instruction is less than that of in-class instruction, as reflected by the fact that Stonehill charges less for the former. Despite this, Stonehill has failed to refund any portion of Moran's son's and the proposed class members' Spring 2020 semester tuition and fee payments.

## DISCUSSION

I. Standard of Review

To survive a motion to dismiss under Mass. R. Civ. P. 12(b)(6), a complaint must allege facts "plausibly suggesting . . . entitlement to relief[.]" Iannacchino v. Ford Motor Co., 451 Mass. 623, 636 (2008), quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 557 (2007). Detailed factual allegations are not required, but the plaintiff must present more than mere "labels and conclusions," such that the alleged facts "raise a right to relief above a speculative level." Id., quoting Twombly, 550 U.S. at 555. In determining whether a complaint meets this standard, the court accepts the factual allegations in the complaint as true and draws reasonable inferences in favor of the plaintiff. Harrington v. Costello, 467 Mass. 720, 724 (2014).

In considering a motion to dismiss, the court is generally limited to the four corners of the complaint unless the court converts the motion to one for summary judgment. There are exceptions to this general rule. The court may consider "matters of public record, orders, items appearing in the record of the case, and exhibits attached to the complaint" without converting the motion to one for summary judgment. Reliance Ins. Co. v. Boston, 71 Mass. App. Ct. 550, 555 (2008), quoting Schaer v. Brandeis Univ., 432 Mass. 474, 477 (2000). The court may also consider documents not attached to the complaint, but upon which the plaintiff relied in framing the complaint, in reviewing a motion to dismiss. Marram v. Kobrick Offshore Fund, Ltd., 442 Mass. 43, 45 n.4 (2004).

II. Analysis

a. The First Amended Complaint Does Not Allege Educational Malpractice

Stonehill first argues that the First Amended Complaint must be dismissed because Moran's claims for breach of contract, violation of G. L. c. 93A, and unjust enrichment are actually claims for educational malpractice, which have not been recognized as actionable in Massachusetts. Surprisingly, given the number of institutions of higher learning in the Commonwealth, Massachusetts' position regarding the viability of educational malpractice claims is unclear. Many other jurisdictions, however, reject such claims based on a reluctance to second guess the judgments and conduct of professional educators and due to the risk of interfering with the right to academic freedom grounded in First Amendment protections.

Regardless of the viability of educational malpractice claims in Massachusetts, the court concludes that the First Amended Complaint does not allege educational malpractice. Moran does not challenge the judgment or conduct of his son's educators, or Stonehill's right to academic freedom and the discretion to operate its educational programs without unwarranted

judicial intervention. He does not challenge the substance of Stonehill's educational programming in a way that implicates First Amendment concerns. In addition, Moran does not challenge the necessity of the closure of Stonehill's campus due to the pandemic. The question raised by the First Amended Complaint is not whether Stonehill was justified in closing its campus, but rather where that risk and financial burden should be contractually allocated. See Rosado v. Barry Univ., C.A. No. 1:20 CV-21813-JEM, 2020 WL 6438684, at *4 (S.D. Fla. Oct. 30, 2020).

Moran's claims are more akin to a garden variety breach of contract action. He simply alleges that he paid for the use of certain services and facilities, and did not receive the benefit for which he bargained. In several cases where students have brought similar claims seeking tuition reimbursement after universities closed campuses and moved all in-person classes online in response to the pandemic, courts have rejected the defendant universities' arguments that such claims are educational malpractice claims not recognized by law. See Ford v. Rensselaer Polytechnic Institute, C.A. No. 1:20-CV-470, 2020 WL 7389155, at *6 (N.D.N.Y. Dec. 16, 2020) (rejecting defendant's argument that plaintiffs' breach of contract claim was educational malpractice claim because plaintiffs did not challenge merits of defendant's decision to shift to remote learning, but only argued that "the value of the on-campus experience defendant plausibly promised them is greater than the value of the remote experience they received"); Zahn v. Ohio Univ., C.A. No. 2020-371JD, 2020 Ohio Misc. LEXIS 230, at *5 (Ohio Ct. Cl. Oct. 19, 2020) (rejecting defendant's argument that plaintiff's breach of contract claim for switching from in-person instruction to online courses was educational malpractice claim); Waitt v. Kent State Univ., No. 2020-00392JD, 2020 WL 5894543 at *2 (Ohio Ct. Cl. Sept. 28, 2020) (same); Smith

6

v. The Ohio State Univ., No. 2020-321JD, 2020 WL 5694224, at *2 (Ohio Ct. Cl. August 24, 2020) (same).

    b. <u>Breach of Contract (Count I)</u>

Stonehill next claims that Moran's breach of contract claim fails as a matter of law because it fails to identify any contractual provision breached by Stonehill, fails to allege any specific contractual language by which Stonehill promised to provide wholly in-person instruction, and raises only conclusory allegations that Moran's son received a lessened quality of education when Stonehill transitioned to online instruction. The court disagrees and concludes that the allegations of the First Amended Complaint are sufficient plausibly to suggest an entitlement to relief under a breach of contract theory.

To state a claim for breach of contract, a plaintiff must allege "that there was an agreement between the parties; the agreement was supported by consideration; the plaintiff was ready, willing, and able to perform his or her part of the contract; the defendant committed a breach of the contract; and the plaintiff suffered harm as a result." <u>Bulwer</u> v. <u>Mount Auburn Hosp.</u>, 473 Mass. 672, 690 (2016); citing <u>Singarella</u> v. <u>Boston</u>, 342 Mass. 385, 387 (1961). Here, Moran alleges that he and members of the proposed class entered into binding contracts with Stonehill through the admission agreement and payment of tuition and fees. As part of the contract, Stonehill promised to provide certain services and use of amenities, in-person instruction, and other services for which Moran and other members of the proposed class had paid. In particular, Moran alleges that the parties' agreement included the expectation of in-person instruction. In support of this allegation, the First Amended Complaint points to: (1) Stonehill's website and marketing materials touting its on-campus experience as a central part of what Stonehill has to offer its students; and (2) the fact that, given the choice between in-person

7

instruction and the less-expensive option of online instruction, Moran's son and other members of the proposed class chose the in-person option. Moran alleges that, due to the closure of its campus in March 2020, Stonehill has failed to provide the promised services and access to amenities fully, thereby depriving Moran's son and other class members of the experience and services for which they paid. As a result, Moran seeks reimbursement of certain tuition, fees, and other amounts that Stonehill collected for services Stonehill failed to deliver fully.

As the coronavirus pandemic resulted in the closure of educational institutions across the United States in March 2020, this is not the only case of its kind. Both parties have provided the court with recent cases supporting their respective positions. Of note are two cases currently pending in the United States District Court for the District of Massachusetts, both of which were recently before the same judge (Stearns, J.) on motions to dismiss similar to the one presently before this court.

In Chong v. Northeastern University, C.A. No. 1:20-10844-RGS (D. Mass. Oct. 1, 2020), the court dismissed, without prejudice, the plaintiff students' breach of contract claim seeking partial reimbursement of tuition to compensate for the inferiority of online instruction, holding that the "plaintiffs fail to state a claim because they have not plausibly established that the parties' agreement included a right to in-person instruction." Chong, slip op. at 6. The court also allowed the motion to dismiss with respect to the plaintiffs' breach of contract claim related to a student activity fee, student center fee, and undergraduate student fee because those fees were imposed to "support" (rather than to gain access to) certain facilities during terms for which students are enrolled in classes, but denied the breach of contract claim related to a campus recreation fee because payment of that fee gave students the option to gain admission to home athletic events and use fitness facilities. Id. at 10-11.

The court reached a different result in In re: Boston University COVID-19 Refund Litigation, C.A. No. 1:20-10827-RGS (D. Mass. Jan. 7, 2020), denying Boston University's motion to dismiss the plaintiff students' breach of contract claims premised on the failure to provide in-person instruction and the closure of on-campus facilities and resources. In re: Boston University COVID-19 Refund Litigation, slip op. at 6-9. The court rejected the argument that the plaintiffs failed to articulate any legal basis for a contractual right to in-person instruction, pointing to the plaintiffs' allegation that representations in the defendant's course registration materials implied that they would receive traditional, in-person instruction at physical locations on campus. Id. at 6. The court concluded that it could not say, as a matter of law, "that no student could have reasonably expected that paying the tuition charged for the Spring semester of 2020 and registering for on-campus courses would entitle them to in-person instruction," and noted that it "need[ed] the benefit of further factual development of the contractual claims to resolve the issue on the merits." Id. at 6-7. The court reached the same result with respect to the plaintiffs' claims for reimbursement of fees, explaining, "the court cannot say, as a matter of law, that plaintiffs could not have reasonably expected that their payment of mandatory fees would grant them access to at least some of the on-campus facilities and resources shut down by BU on March 22, 2020." Id. at 8.

What this court takes from the divergent outcomes in these two cases is the importance of the particular allegations raised by the plaintiffs and the nature of the record before the court. Here, Moran bases the breach of contract claim as it relates to tuition on Stonehill's website and marketing materials touting its on-campus experience as a central part of what Stonehill has to offer its students, as well as the fact that Stonehill specifically offers the option of in-person, on-campus instruction for one price, and a separate, less expensive online instruction option. The

9

court concludes that these allegations plausibly establish that the parties' agreement included a right to in-person instruction.[3] As in In re: Boston University COVID-19 Refund Litigation, this court cannot say, as a matter of law, that Moran could not have reasonably expected that paying the in-person tuition rate charged for the 2020 Spring semester and registering for on-campus courses would entitle his son to in-person instruction.

Several cases brought by students against colleges and universities seeking reimbursement of tuition and fees after campuses were shuttered and classes moved online due to the pandemic have reached the same result. See Rosado, C.A. No. 1:20 CV-21813-JEM, 2020 WL 6438684, at *3 (S.D. Fla. Oct. 30, 2020) (denying motion to dismiss breach of contract claim based on defendant's closure of campus and transition to online classes due to pandemic where defendant charged more for on-campus instruction than online instruction, and defendant's publications clearly implied in-person instruction and touted its many on-campus resources and facilities); Salerno v. Florida S. College, C.A. No. 8:20-cv-1494-30SPF, 2020 WL 5583522 at *5 (M.D. Fla. Sept. 16, 2020) (denying motion to dismiss breach of contract claim based on defendant's closure of campus and transition to online classes due to pandemic where defendant's publications clearly implied in-person instruction and touted its many on-campus resources and facilities); Milanov v. University of Michigan, C.A. No. 20-000056-MK, 2020

---

[3] The court is not persuaded by Stonehill's argument that Moran "does not dispute that [his son] received full credit for his Spring 2020 courses, which is all that Stonehill agreed to provide in exchange for the tuition and fees that were paid." (Def.'s Mem., Paper No. 13.1, p. 14.) This appears to be an obvious oversimplification of any agreement between a student and an institute of higher learning. As another court explained in response to a defendant university's similar argument that any breach resulting from the transition to online teaching was de minimis because the student still earned credits toward a diploma: "This is kind of like purchasing a Cadillac at full price and receiving an Oldsmobile. Although both are fine vehicles, surely it is no consolation to the Cadillac buyer that the 'Olds' can also go from Point A to Point B." Rosado v. Barry Univ., C.A. No. 1:20 CV-21813-JEM, 2020 WL 6438684, at *4 (S.D. Fla. Oct. 30, 2020).

10

Mich. Ct. Cl. LEXIS 1 (Mich. Ct. Cl. July 27, 2020) (denying motion for summary disposition on plaintiffs' breach of contract claims seeking reimbursement of pro rata portion of amounts paid for in-person instruction, housing, meals, and student activities following closure of campus and transition to allegedly inferior online instruction due to pandemic); Ford, C.A. No. 1:20-CV-470, 2020 WL 7389155, at *7 (denying motion to dismiss breach of contract claim); Zahn, C.A. No. 2020-371JD, 2020 Ohio Misc. LEXIS 230, at *3, 6-7 (ruling that plaintiff stated claim for breach of contract where complaint specifically alleged that tuition and fees for defendant's online classes are significantly less expensive than those for on-campus classes); Smith, No. 2020-321JD, 2020 WL 5694224, at *2 (ruling that plaintiff's allegation that she contracted for in-person classes and received online classes instead stated claim for breach of contract).

The court reaches the same conclusion with respect to the breach of contract claim as it relates to the room and board credit and various fees. The First Amended Complaint alleges that Stonehill breached its contract with Moran and other proposed class members by offering a credit of forty-two percent of the semester's room and board charge (rather than a refund), and failing to return any portion of the various fees paid to Stonehill. The room and board charges and at least some of the fees charged (e.g., the recreational center and resident parking fees) appear, by their very names, to be assessed based on the premise that they grant access to some of the on-campus facilities shut down by Stonehill in March 2020. As a result, dismissal at this early stage is inappropriate.

As in In re: Boston University COVID-19 Refund Litigation, further factual development of the breach of contract claim is necessary to resolve these issues on the merits. At this stage in the proceedings, the court has only the allegations of the First Amended Complaint and certain documents that may form part of the agreement between the parties. Stonehill's motion to

dismiss is accompanied by the Affidavit of Thomas V. Flynn, General Counsel and Clerk at Stonehill, which attaches and authenticates several excerpts from "The Hill Book." According to Flynn, "The Hill Book serves as the online, accredited version of the Stonehill College Academic Catalog which contains information about the College's academic programs and partnerships, degree requirements, course offerings, admission and financial information, and College academic policies and resources." The First Amended Complaint does not specifically identify The Hill Book as forming the basis for the contract between Moran and Stonehill and, to the extent it does, the excerpts attached to Flynn's affidavit are just that, excerpts. The entire contract is not before the court, and it is unclear to what extent Moran relied on The Hill Book in framing the First Amended Complaint. The excerpts submitted by Stonehill do not address either Moran's allegation that Stonehill charges less for online instruction, or Stonehill's retort at the motion to dismiss hearing that the online instruction offered by Stonehill is an entirely different caliber of courses and instructors. It would be inappropriate for the court to dismiss the breach of contract claim on this incomplete record.

c. <u>Count II, Violations of G. L. c. 93A, § 2, Fails as a Matter of Law</u>

The First Amended Complaint alleges that Stonehill's refusal to refund tuition payments, room and board, and fees following the March 2020 closure of its campus constitutes an unfair and deceptive business practice in violation of G. L. c. 93A, § 2. Stonehill seeks dismissal of this count on grounds that G. L. c. 93A does not apply to Stonehill because it is a charitable corporation not engaged in trade or commerce. The court agrees.

> Chapter 93A makes unlawful "[u]nfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce." G. L. 93A, § 2(a). It is well established law that while "[a]n entity's 'status as a charitable corporation is not ... dispositive of the issue whether ch. 93A applies[,]' ... [i]n most circumstances, a charitable institution will not be engaged in trade

12

> or commerce when it undertakes activities in furtherance of its core mission." Linkage Corp. v. Trustees of Boston Univ., 425 Mass. 1, 23, 26 (1997), quoting Planned Parenthood Fed'n of Am. v. Problem Pregnancy of Worcester, Inc., 398 Mass. 480, 492-493 (1986). Such claims may properly be dismissed for failing plausibly to allege that the defendant is engaged in trade or commerce. See Poznik v. Massachusetts Med. Prof. Ins. Ass'n, 417 Mass. 48, 52-53 (1994).

Squeri v. Mount Ida Coll., 954 F.3d 56, 72 (1st Cir. 2020). "[T]he words 'trade' and 'commerce' in ch. 93A, § 1(b) do not traditionally mean the provision of education to students at a not-for-profit college." Id. at 73, citing Planned Parenthood, 398 Mass. at 493-494.

Moran contends that Stonehill's refusal to refund tuition and fees cannot be considered part of its core charitable mission. This argument, however, construes the issue too narrowly. While Moran challenges the amount and nature of the compensation Stonehill offered, Stonehill's decision to reimburse certain charges but not others was part of Stonehill's larger process of deciding how best to continue educating its students when a pandemic forced it to shutter its campus and made in-person instruction impossible. As Stonehill's decisions regarding its response to the pandemic were made in the context of furthering its core mission of educating its students, it was not engaged in trade or commerce and Chapter 93A does not apply. Compare Squeri, 954 F.3d at 73 (college's alleged failure to follow through on proposed merger with another college, failure to disclose financial distress, and transfer of students' financial and academic information to prospective successor institution were activities taken in furtherance of college's charitable mission of education and Chapter 93A did not apply), with Linkage, 425 Mass. at 23-26 (where private commercial company brought suit for breach of contract to run offsite training program at university's conference center, university was engaged in trade or commerce and Chapter 93A applied). For these reasons, the court will dismiss Count II of the First Amended Complaint.

### d. Unjust Enrichment (Count III)

As an alternative to the breach of contract claim alleged in Count I, the First Amended Complaint also includes a claim for unjust enrichment. A claim for unjust enrichment is based on the "retention of money or property of another against the fundamental principles of justice or equity and good conscience." Santagate v. Tower, 64 Mass. App. Ct. 324, 329 (2005). To prevail on such a claim, a plaintiff must show that: 1) the plaintiff conferred a benefit on the defendant; 2) the defendant knew of the benefit; and 3) acceptance or retention of the benefit under the circumstances would be inequitable without payment for its value. Massachusetts Eye & Ear Infirmary v. QLT Phototherapeutics, Inc., 552 F.3d 47, 57 (1st Cir. 2009) (interpreting Massachusetts law).

Stonehill first argues that Moran cannot, as a matter of law, state a claim for unjust enrichment because he has an adequate alternative remedy available, namely, his breach of contract claim. It is true that "a claim for unjust enrichment is not available when there is a legal remedy for breach of contract." CACH, LLC v. Yue Fang, 95 Mass. App. Ct. 1119, 3 n.2 (2019) (unpublished Rule 1:28 decision), citing Santagate, 64 Mass. App. Ct. at 329. Stonehill, however, disputes the existence of any contract between the parties requiring in-person instruction. It would, as a result, be inappropriate for the court to conclude that Moran is limited to a contractual remedy at this juncture. See In re: Boston University COVID-19 Refund Litigation, C.A. No. 1:20-10827-RGS, slip op. at 10 (denying motion to dismiss unjust enrichment claim where defendant university disputed existence of contract requiring in-person instruction or access to on-campus facilities and resources).

Stonehill also contends that dismissal of the unjust enrichment claim is required because Moran does not adequately allege the essential elements of unjust enrichment. The court

14

disagrees. "Unjustness is 'a quality that turns on the reasonable expectations of the parties.' " Id., quoting Metropolitan Life Ins. Co. v. Cotter, 464 Mass. 623, 644 (2013). Here, Moran alleges that he reasonably expected that his son would receive in-person instruction and access to on-campus facilities and resources in return for payment of tuition and fees and that Stonehill failed to provide these services and access. The court cannot say, as a matter of law, that no reasonable juror taking these allegations as true could find that Stonehill's failure to refund at least a portion of the tuition and fees paid by the plaintiff was unjust under the circumstances. As a result, dismissal of the unjust enrichment claim at this juncture is not warranted. See id. at 11 (declining to dismiss unjust enrichment claim based on similar allegations).

   e. Declaratory Judgment (Count IV)

Stonehill moves to dismiss Moran's declaratory judgment count on grounds that it is "duplicative and unnecessary, given the clear terms governing the Stonehill-student relationship." (Def.'s Mot., Paper No. 13, p. 2.) The court disagrees and declines to dismiss Count IV at this juncture. The declaratory judgment count seeks a form of relief different from the other counts of the First Amended Complaint and, as the court's analysis of the breach of contract claim demonstrates, the terms governing the relationship between Stonehill and Moran are far from clear at this juncture.

   f. A Force Majeure Clause Does Not Bar Moran's Claims

Stonehill also briefly argues that Moran's claims are barred by a force majeure clause in The Hill Book. A section of The Hill Book entitled "Delivery of Services" includes the following language: "Stonehill College assumes no liability for the delay or failure in providing educational or other services or facilities due to causes beyond its reasonable control." (Aff. of Thomas V. Flynn, Paper No. 13.2, at Ex. C.) However, the record before the court does not

15

establish as a matter of law the necessary elements for invoking such a clause. Moreover, a force majeure clause (if properly invoked) simply excuses performance; it does not allow a non-performing party to retain funds for services for which it was paid but did not provide.

### g. Moran's Alleged Damages Are Not Too Speculative to Permit Recovery

The court also rejects Stonehill's argument that the breach of contract and unjust enrichment claims fail as a matter of law because the damages sought are too speculative to permit recovery. "While it is true that a plaintiff need not prove damages with mathematical certainty, 'damages cannot be recovered when they are remote, speculative, hypothetical, and not within the realm of reasonable certainty.'" Kitner v. CTW Transport, Inc., 53 Mass. App. Ct. 741, 748 (2002), quoting Lowrie v. Castle, 225 Mass. 37, 51 (1916). Although it may be difficult to assess the value of the loss of access to certain on-campus resources (e.g., mentors, peers, and study rooms), Moran's alleged damages are not entirely speculative. For example, a jury could determine damages based on the failure to refund fees by doing the same pro rata calculation Stonehill apparently did when determining the room and board credit it offered, and determine damages for the lesser experience of online learning by considering the different rates Stonehill charges for its on-campus and online learning options. The court is careful to note that it is not specifically approving these theoretical measures of damages. It would be impossible to do so at the motion to dismiss stage, when the court has only a very limited record before it. The court notes these possibilities only to explain why it does not view Moran's alleged damages as impermissibly speculative at this juncture.

## **ORDER**

For the foregoing reasons, defendant Stonehill College, Inc.'s motion to dismiss is **ALLOWED** as to Count II, and **DENIED** as to Counts I, III and IV. Count II of the First Amended Complaint and Demand for Jury Trial is hereby **DISMISSED**.

Dated: February 16, 2021

*Janice W. Howe*
Janice W. Howe
Justice of the Superior Court