UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| ABRAHAM BARKHORDAR, SARAH ZELASKY, and ELLA WECHSLER-MATTHAEI, individually and on behalf of all others similarly situated, <br><br> Plaintiffs, <br><br> v. <br><br> PRESIDENT AND FELLOWS OF HARVARD COLLEGE, <br><br> Defendant. | * <br> * <br> * <br> * <br> * <br> * <br> * <br> * Civil Action No. 1:20-cv-10968-IT <br> * <br> * <br> * <br> * <br> * <br> * |

MEMORANDUM AND ORDER

June 21, 2021

TALWANI, D.J.

This is one of many cases filed during the COVID-19 pandemic after colleges and universities moved instruction online. Plaintiffs' First Amended Consolidated Class Action Complaint ("Am. Compl.") [#26] alleges that the twelve degree-granting schools at Harvard University acted unlawfully when they ceased to provide in-person instruction and access to on-campus facilities and failed to refund a portion of students' tuition and fees. Plaintiffs assert claims for breach of express and implied contract, unjust enrichment, and conversion.

Before the court is Defendant's Motion to Dismiss the First Amended Consolidated Class Action Complaint [#33]. For the reasons that follow, the Motion [#33] is ALLOWED and the Amended Complaint [#26] is DISMISSED.

I. Facts as Alleged

Unless stated otherwise, the following facts are drawn from the Amended Complaint [#26], the well-pleaded allegations of which are taken as true for the purposes of evaluating a motion to dismiss. See Ruivo v. Wells Fargo Bank, N.A., 766 F.3d 87, 90 (1st Cir. 2014).

Harvard University ("Harvard") is a private university, with 12 degree-granting schools, located in Cambridge, Massachusetts. Am. Compl. ¶¶ 26, 77 [#26].[1] Harvard recruits students by advertising an on-campus, immersive experience through its website and other promotional materials. Am. Compl. ¶¶ 33-34 [#26]. Prior to the COVID-19 pandemic, Harvard offered few online courses and/or programs. Id. at ¶ 32. Instead, Harvard structured its programs around on-campus, in-person instruction. Id. at ¶ 40.

In the Spring of 2020, Plaintiff Sarah Zelasky was enrolled in a master's degree program at Harvard's School of Public Health, Plaintiff Ella Wechsler-Matthaei was enrolled in a master's degree program at Harvard's Graduate School of Education, and Plaintiff Abraham Barkhordar was enrolled at Harvard Law School. Id. at ¶¶ 13-15. Plaintiffs decided to attend Harvard because of the unique opportunities Harvard offered, including networking and collaborating with professors and professionals; Plaintiffs expected these opportunities would be available through in-person instruction and access to on-campus facilities and services. Id. at ¶¶ 46-47.

Plaintiffs paid tuition and fees for the Spring 2020 term, id. at ¶ 47, and expected, based on descriptions in Harvard publications, including catalogs, manuals, handbooks, bulletins, brochures, advertisements, and other promotional materials, that Harvard would provide in-person education and the use of its facilities. Id. at ¶ 41. The Spring 2020 term began on January 27, 2020. Id. at ¶ 45.

On March 10, 2020, the Governor of Massachusetts declared a state of emergency due to

---

[1] Harvard's legal name is President and Fellows of Harvard College. Defendant's Memorandum in Support of its Motion to Dismiss the First Amended Consolidated Complaint ("Mem. in Support Mot. Dismiss") 1 n.1 [#34].

2

COVID-19, and Harvard announced, via its website and in an email to students and faculty, that beginning on March 23, 2020, the first day back from spring recess, all classes would be conducted remotely. Id. at ¶¶ 54-55. Shortly after this announcement, Harvard closed university facilities, id. at ¶¶ 57-58, cancelled on-campus events, and suspended many on-campus services. Id. at ¶ 21. As a result, Plaintiffs lost access to in-person instruction, buildings, facilities, technology, and other programs and services. Id. Transition to online classes made it difficult for "students to connect with professors, classmates, and staff." Id. at ¶ 24.

Harvard gave students the option to continue their Spring 2020 classes remotely or take a leave of absence and receive a partial refund of the semester's tuition. See Graduate School of Education Handbook 19 [#35-1] (partial refund before April 10); School of Public Health Handbook 24 [#35-2] (partial refund before March 30); Law School Handbook 91 [#35-3] (partial refund before March 31 (7/9 of total annual change) or April 30 (8/9 of total annual charge)).[2] Harvard also offered pro-rated refunds for room and board to students who were living on campus and vacated their housing. See FAQs re Harvard's Coronavirus Policies and Resources 3 [#35-4].

Remote instruction continued for the rest of the Spring 2020 semester. Am. Compl. ¶¶ 57-58 [#26]. Classes for the Spring term ended on April 29, 2020, and the final examination

---

[2] Defendant filed in support of its Motion [#33] a Declaration [#35] with five attachments: Graduate School of Education Handbook [#35-1]; School of Public Health Handbook [#35-2]; Harvard Law School Handbook [#35-3]; COVID-19 Frequently Asked Questions [#35-4]; and Harvard Law School's Leave of Absence Policy for the 2020-2021 school year [#35-5]. Neither side contends that inclusion of these documents converts the Motion to Dismiss [#33] into a motion for summary judgment. See Giragosian v. Ryan, 547 F.3d 59, 65 (1st Cir. 2008) (on a 12(b)(6) motion, a district court may consider the "facts and documents that are part of or incorporated into the complaint" and also "documents incorporated by reference in [the complaint], matters of public record, and other matters susceptible to judicial notice") (internal citations and quotations omitted).

period ended on May 16, 2020. Id. at ¶ 45. Students who elected to finish the Spring 2020 semester remotely were not provided tuition refunds. Id. at ¶¶ 4, 58.

All three Plaintiffs completed the Spring 2020 term online. Id. at ¶¶ 13-15, 70-71. Plaintiffs Zelasky and Wechsler-Matthaei graduated from Harvard at the end of the Spring 2020 semester. Id. ¶¶ 14-15.

With limited exceptions, Harvard's degree-granting schools offered remote instruction during the Fall 2020 semester, id. at ¶¶ 5, 59-61, and did not reduce tuition. Id. at ¶¶ 6, 62-63. On June 3, 2020, Harvard Law School announced the Fall 2020 semester would be remote and informed law students they would have additional time to request a deferral or leave of absence for the Fall 2020 semester (or the entire 2020-2021 academic school year). Id. at ¶ 60. Plaintiff Barkhordar did not request a deferral or leave of absence and is currently enrolled at Harvard Law School. Id. at ¶ 13.

Plaintiffs contend that tuition for online courses at Harvard is lower than tuition for in-person courses. Id. at ¶ 72. They claim that Harvard's refusal to provide them with refunds for the Spring 2020 semester when classes were moved online amounted to a breach of express and implied contracts, unjust enrichment, and conversion. Id. at ¶¶ 87-122. They seek to bring these claims on behalf of a purported class of similarly situated persons, including "[a]ll people paying tuition to one of Harvard's 12 degree-granting schools in whole or in part, personally and/or on behalf of others, for on-campus instruction during the Spring 2020 Term." Id. at ¶¶ 76-77.

Plaintiff Barkhordar also brings claims and seeks relief for tuition paid for the online 2020-2021 school year. Id. at ¶ 96.

II. Legal Standard

To evaluate a motion to dismiss for failure state a claim under Rule 12(b)(6) of the Federal Rules of Civil Procedure, the court must accept as true all well-pleaded facts, analyze

those facts in the light most favorable to the plaintiff's theory, and draw all reasonable inferences from those facts in favor of the plaintiff. U.S. ex rel. Hutcheson v. Blackstone Med., Inc., 647 F.3d 337, 383-84 (1st Cir. 2011) (citing Gagliardi v. Sullivan, 513 F.3d 301, 305 (1st Cir. 2008)). To avoid dismissal, a complaint must set forth "'factual allegations, either direct or inferential, respecting each material element necessary to sustain recovery under some actionable legal theory.'" Gagliardi, 513 F.3d at 305 (citation omitted). The plaintiff's obligation to articulate the basis of his claims "requires more than labels and conclusions." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007). The facts alleged, when taken together, must be sufficient to "state a claim to relief that is plausible on its face." A.G. ex. rel. Maddox v. Elsevier, Inc., 732 F.3d 77, 80 (1st Cir. 2013) (quoting Twombly, 550 U.S. at 570). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inferences that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citation omitted).

On a motion to dismiss, "a judge can mull over 'documents incorporated by reference in [the complaint], matters of public record, and other matters susceptible to judicial notice,'" Lydon v. Local 103, Int'l Bhd. of Elec. Workers, 770 F.3d 48, 53 (1st Cir. 2014) (quoting Giragosian, 547 F.3d at 65) (alteration in original), but may not consider other materials beyond the pleadings.

III. Discussion

Plaintiffs bring claims for breach of contract, unjust enrichment, and conversion. Defendant argues all counts should be dismissed because the claims are impermissible claims for educational malpractice and because Plaintiffs failed to plausibly state claims upon which relief can be granted. The court addresses the educational malpractice argument first and then turns to whether Plaintiffs have stated plausible claims for relief.

5

A. Educational Malpractice

Harvard argues that Plaintiffs' claims require the court to "preside over a review of the quality of the education Harvard provided in Spring 2020" and that this review would require the court to interfere with academic decisions. Mem. in Support of Mot. Dismiss 9 [#34]. Harvard contends that Plaintiffs' claims are therefore barred under the educational malpractice doctrine. Id.

Plaintiffs do not dispute that educational malpractice claims would be barred. Opposition to Defendant's Mot. to Dismiss ("Opp'n") 2 [#47]. Plaintiffs argue instead that they pleaded permissible claims for breach of specific contractual promises to provide specific educational services. Id. at 3 (quoting Ross v. Creighton Univ., 957 F.2d 410, 413 (7th Cir. 1992)).

Based on the Amended Complaint [#26], Plaintiffs are seeking to bring breach of contract claims, not educational malpractice claims. To be sure, portions of the Amended Complaint [#26] assert that online instruction was inferior to in-person instruction. See id. at ¶¶ 71-72 ("The remote learning option is not the equivalent of the in-person education putative Class Members were promised when they committed to attend Harvard. Moreover, a remote education is not worth what Defendant charged Plaintiffs and Class Members for the Spring 2020 Term and intends to charge Plaintiffs and Class Members for the Fall 2020 term."); id. at ¶ 106 ("The online classes provided by Defendant are objectively different from and less valuable than the on-campus classes for which the parties entered into an implied contract."). However, the focus of the alleged breach is that Harvard provided different services than it promised, not that the services were of lower educational quality. See Holmes v. Univ. of Mass., Suffolk Cty. Super. Ct., No. 209-cv-01025-B, 2021 WL 1099323, slip op. at *5 n.3 (Mar. 8, 2021) ("I agree with the many courts who have considered this question, locally and farther afield, that the sorts of claims pleaded here are not claims for 'educational malpractice.'").

6

The court notes that if Plaintiffs seek to prove damages for their contract claims by assessing and comparing the educational quality of in-person and remote instruction, the educational malpractice doctrine may be implicated, and Plaintiffs' contract claims may be foreclosed. See Ross, 957 F.2d at 417 (claims that require "second-guessing the professional judgment of the University faculty on academic matters" are barred). However, at this stage, where Plaintiffs claim that Harvard offers online classes at a lower cost than Plaintiffs were charged, and where the court is not being asked to assess the educational quality of online versus in person education, Plaintiffs claims are not barred under the educational malpractice doctrine. See Omori v. Brandeis Univ., Civ. Action No. 20-11021-NMG, 2021 WL 1408115, at *2 (D. Mass. Apr. 13, 2021) (explaining the educational malpractice doctrine did not foreclose plaintiffs' breach of contract claims in a COVID-19 tuition refund suit).

B. Breach of Express Contract

1. Legal Standard

"Under Massachusetts law, a breach of contract claim requires the plaintiff to show that (1) a valid contract between the parties existed, (2) the plaintiff was ready, willing, and able to perform, (3) the defendant was in breach of the contract, and (4) the plaintiff sustained damages as a result." Bose Corp. v. Ejaz, 732 F.3d 17, 21 (1st Cir. 2013) (citing Singarella v. City of Bos., 342 Mass. 385, 387, 173 N.E.2d 290 (1961)). At a minimum, a plaintiff must "explain what obligations were imposed on each of the parties by the alleged contract." Buck v. Am. Airlines, Inc., 476 F.3d 29, 38 (1st Cir. 2007) (internal quotation and citation omitted).

In Massachusetts, "[i]t is well-established that the student-college relationship is contractual in nature." Doe v. Brandeis Univ., 177 F. Supp. 3d 561, 593 (D. Mass. 2016) (citing Mangla v. Brown Univ., 135 F.3d 80, 83 (1st Cir. 1998) ("The student-college relationship is essentially contractual in nature. The terms of the contract may include statements provided in

7

student manuals and registration materials.")). "[I]interpretation of a contract is ordinarily a question of law for the court." Coll v. PB Diagnostic Sys., Inc., 50 F.3d 1115, 1122 (1st Cir. 1995) (internal quotation omitted). When a court interprets the terms of a university-student contract, it applies a "reasonable expectation" standard, in other words, "what meaning the party making the manifestation, the university, should reasonably expect the [student] to give it." Schaer v. Brandeis Univ., 432 Mass. 474, 478, 735 N.E.2d 373 (2000) (internal quotations and citations omitted); see also Driscoll v. Trustees of Milton Academy, 70 Mass. App. Ct. 285, 293, 873 N.E.2d 1177 (2003) (holding that the same "reasonable expectation" standard applies to contracts between a private, college-preparatory school and its students).[3]

2. Analysis

   a. The Alleged Contract

Plaintiffs allege they "entered into identical, binding contracts with Defendant by accepting Defendant's offer to register for on-campus classes in accordance with the terms of Defendant's publications and Defendant's usual and customary practice of providing on-campus courses." Am. Compl. ¶ 88 [#26]. Plaintiffs allege it was their "reasonable expectation," and the reasonable expectation of Harvard, that Harvard would provide in-person instruction and the use of on-campus facilities as "mutually agreed in accordance with Defendant's usual and customary practice of providing on-campus courses, and as provided in Defendant's publications, including but not limited to the policies, procedures, brochures, advertisements, and other promotional materials." Id. at ¶ 89. Plaintiffs assert that the terms of their contracts with Harvard are set forth

---

[3] The reasonable expectation standard reflects that while "some elements of the law of contracts are used and should be used in the analysis of the relationship between [student] and the university, because [t]he student-university relationship is unique, contract law need not be rigidly applied." Guckenberger v. Bos. Univ., 974 F. Supp. 106, 150–51 (D. Mass. 1997) (internal citations and quotations omitted).

in these promotional materials, including representations made by Harvard on its websites and in other publications, and that they have alleged specific contractual promises that entitled them to in-person, on-campus instruction for the Spring 2020 semester. Id. at ¶ 89; see also Opp'n 7-11 [#47].

Defendant does not challenge the existence of a contractual relationship between Harvard and each Plaintiff. Mem. in Support of Mot. Dismiss 10-11 [#34]. Defendant argues, however, that Plaintiffs do not identify the source of any specific promises, id. at 12 (citing Am. Compl. ¶¶ 19, 35, 41-42 [#26]), and that this lack of specificity is fatal to both the implied and express contract claims. Id. (citing Squeri v. Mount Ida Coll., 954 F.3d 56, 71-72 (2020); Rinsky v. Trustees of Bos. Univ., Civ. Action No. 10cv10779-NG, 2010 WL 5437289, at *11 (Dec. 27, 2010) (dismissing breach of contract claim where plaintiff student "failed to offer what exactly the alleged contract promised . . . offering no quotations from the [university's] handbook [and] promotional materials" and failed to "suppl[y] facts from which to fairly infer implied" contract terms)). Harvard contends further that Massachusetts law precludes using custom and practice to alter express contract language. Id. at 15-16.

"In Massachusetts, statements in 'handbooks, policy manuals, brochures, catalogs, advertisements, and other promotional materials can form the basis of a valid contract.'" Rinsky, 2010 WL 5437289, at *11 (quoting Shin v. Mass. Inst. of Tech., No. 020403, 2005 WL 1869101, at *6 (Mass. Super. June 27, 2005)). Plaintiffs allege that Harvard promised to provide, and Plaintiffs paid for and expected to receive: (1) "face-to-face faculty and peer interaction," Am. Compl. ¶ 3 [#26]; "on-campus education, facilities, services, and activities," id. at ¶¶ 16, 19, 21; the "ability to communicate directly with professors, utilize campus facilities and laboratories," id. at ¶ 23; the opportunity to "attend office hours, and work through issues in-person," id.; "in-person access to renowned faculty," id. at ¶ 25; "interactions that occur with professors before,

9

during, and after class," id. at ¶ 36; "spontaneous interactions that occur with fellow students before, during, and after class," id.; "access to Harvard's libraries which [have] books, archives, and other resources that are only accessible in person," id. at ¶ 37; "access to study spaces," id.; "[s]tudent governance and student unions," id. at ¶ 38; "[e]xtracurricular activities, groups, intramural sports," id.; "[s]tudent art, culture, and other activities," id.; "[s]ocial development and independence," id.; "[h]ands-on learning and experimentation, including labs and clinical education opportunities," id.; "[n]etworking and mentorship opportunities," id.; and "[i]n-person interactions with potential employers." Id. However, none of these allegations are tied to specific documents or statements in which these promises were purportedly made. See Rinsky, 2010 WL 5437298, at 11 (dismissing contract claim where no specific quotations from the contract were included and no facts were provided from which the court could fairly imply terms); Satam v. Northeastern, 20-cv-10915-RGS, Elec. Order [#40] (Nov. 6, 2020) (allowing motion to dismiss where plaintiffs did not include contracts as a part of the pleadings and did not allege they read or relied on the contracts).[4] The single web page quoted in the Amended Complaint [#26] references Harvard's "libraries," "laboratories," "museums," and "research centers," and states that "Harvard's campus creates a stunning background," id. at ¶ 34, but includes no specific "contractual terms."

Some courts addressing similar claims have declined to find a binding contract to provide in-person instruction at all times even upon review of the universities' catalogs, brochures, and other promotional materials. See, e.g., Gociman v. Loyola Univ. of Chicago, No. 20 C 3116,

---

[4]In Satam, the court emphasized that because plaintiffs failed to include the contract language with the complaint, the university lacked adequate notice of the alleged contractual rights and breach; the same is true here. Satam, 20-cv-10915-RGS, Elec. Order [#40].

10

2021 WL 243573, at *4 (N.D. Ill. Jan. 25, 2021) (course catalogue parentheticals about lectures happening in person were "hardly sufficient to form a binding contract," particularly where disclaimers were made and "[p]laintiffs' attempt to read into the catalogue an obligation to provide only in-person instruction . . . [is] plainly inconsistent with the document itself"); Oyoque v. DePaul Univ., 20 C 3431, 2021 WL 679231, at *4 (N.D. Ill. Feb. 21, 2021) (university's statements about the availability of resources and amenities was "informative rather than promissory"); Burt v. Bd. of Trustees of Univ. of Rhode Island, - - - F. Supp. - - -, 2021 WL 825398, at *4 (D.R.I. Mar. 4, 2021) ("no plausible reading of the university materials . . . gives rise to enforceable contractual promises").

Other courts have found on a motion to dismiss that they are unable to state as a matter of law whether students' expectation of in-person instruction was unreasonable. See Moran v. Stonehill Coll., Inc., No. 2077CV00431, 2021 WL 965754, at *5, *7 (Mass. Super. Feb. 16, 2021) (motion to dismiss denied because further factual development was needed, and because, based on the fact plaintiff enrolled in the in-person track and not the cheaper online track and based on statements touting Stonehill's on-campus experience "as a central part of what Stonehill has to offer students," plaintiff plausibly stated he had a reasonable expectation of in-person instruction); In re Bos. Univ. COVID-19 Refund Litig., - - - F. Supp. - - -, 2021 WL 66443, at *2 (D. Mass. Jan. 7, 2021) ("Drawing all inferences in plaintiffs' favor, the court cannot, as a matter of law, say that no student could have reasonably expected that paying the tuition charged for the Spring semester of 2020 and registering for on-campus courses would entitle them to in-person instruction."); Omori, 2021 WL 1408115, at *3 ("Here, the factual allegations in the complaint support the inference that Brandeis should have reasonably expected its prospective students to understand its promotion of "hands-on experience" and "state-of-the-art studios," . . . to be an offer of in-person instruction and on-campus facilities and experience.

11

The complaint plausibly submits, furthermore, that students paid the (higher) on-campus tuition and fees charged for the Spring, 2020, academic term and registered for on-campus courses in consideration for receiving such services, hence forming a contract.").

Unlike the plaintiffs in Moran, Omori, and In re Bos. Univ. COVID-19 Litig., Plaintiffs have not identified the specific terms that their university should have reasonably expected students to understand to be an offer of in-person instruction and access to on-campus facilities. See Chong v. Northeastern Univ., 494 F. Supp. 3d 24, 28 (D. Mass. 2020); Omori, 2021 WL1408115, at *3. While Plaintiffs have alleged that Harvard charges less for online classes, they have not alleged that Harvard charged less money for online instruction in degree-granting programs. Cf. Rosado v. Barry Univ., 499 F. Supp. 3d 1152, 1155, 1157-58 (S.D. Fla. 2020) (finding that where two-tiers of instruction are offered, it may be reasonable to expect a refund where a student specifically contracted for the more expensive, in-person option, and instead receives the online option which is marketed at a different price); Salerno v. Fla. Southern Coll., 488 F. Supp. 3d 1211, 1216-17 (M.D. Fla. 2020) (same). And even assuming for purposes of this Motion [#33] that Harvard could reasonably expect that students would understand from general promotional material that they had contracted for in-person instruction and on-campus access during normal times, Spring 2020 was not a normal time. Here, where Plaintiffs have provided virtually no direct language from the promotional and other materials, and have not alleged that Harvard charged less money for online instruction in degree-granting programs, the Amended Complaint [#26] fails to plausibly allege facts suggesting that Harvard would reasonably expect students to understand from such material that Harvard had promised to provide in-person instruction, even where, during a global pandemic, the Governor and public health officials dictated otherwise.

      b.      Reservation of Rights

Harvard also argues the contract claims should be dismissed because Harvard specifically reserved the right to modify its course offerings and thus had discretion, in the face of an unprecedented health crisis, to alter the format of its academic offerings. Mem. in Support of Mot. Dismiss 2, 13-15 [#34]. Plaintiffs respond that the reservation of rights in student handbooks should not excuse Defendant's contractual obligations. Opp'n at 13-15 [#47].

There is no dispute that the student handbooks Harvard attached provide at least some of the terms of Plaintiffs' contracts with Harvard. Two of the three handbooks include express reservations of rights:

The Graduate School of Education Student Handbook [#35-1] provides that

> [r]eview of academic, financial, and other considerations may lead to changes in the policies, rules, and regulations applicable to students; the Harvard Graduate School of Education therefore reserves the right to make changes at any time. These changes may affect tuition and other fees, courses, degrees, and programs offered (including the modification or possible elimination of degrees and programs) degree and other academic requirements, academic policies, rules pertaining to student conduct and discipline, fields or areas of concentration, and other rules and regulations applicable to students.

Id. at 8 (emphasis added). The School of Public Health Student Handbook [#35-2] states that

> [a]t times, a mid-year review of academic, financial or other considerations may lead to a change in policies, rules, and regulations. The Harvard T.H. Chan School of Public Health reserves the right at any time to make changes to the Student Handbook that may affect such matters as tuition and other fees, degrees and programs offered (including modification or possible elimination of degrees and programs), degree and other academic requirements, academic policies, rules pertaining to student conduct and discipline, fields or areas of concentration, and other rules and regulations applicable to students.

Id. at 1 (emphasis added).[5]

---

[5] As of March 2020, Harvard Law School's handbook did not include a reservation of rights. Mem. in Support of Mot. Dismiss 14 n.11 [#34].

13

As set forth above, the court has not found sufficient allegations of the terms of the alleged contract. The reservation of rights language underscores, however, that Plaintiffs would need fulsome allegations of contractual terms in order to proceed.

C. Breach of Implied Contract

"'A contract implied in fact may be found to exist from the conduct and relations of the parties.'" Jackson v. Action for Bos. Cmty. Dev., Inc., 403 Mass. 8, 9, 525 N.E.2d 411 (1988) (quoting LiDonni, Inc. v. Hart, 355 Mass 580, 583, 246 N.E.2d 446 (1969)).

Plaintiffs allege that "through the payment of tuition and fees for the prior year(s) at Defendant's institution, Plaintiffs and Class Members who are current students at Harvard (distinguished from incomings students) entered into an additional implied agreement with Defendant to complete their education at Harvard in the traditional in-person format." Am. Compl. ¶ 88 [#26].

Other courts addressing similar breach of implied contract arguments in COVID-19 university cases have held that a university's "usual or customary practice" of providing in-person instruction cannot replace express, written contract terms to form an implied contract which includes an obligation to provide in-person instruction in a global pandemic. See Lindner v. Occidental Coll., No. 20-8481, 2020 WL 7350212, at *9 (C.D. Cal. Dec. 11, 2020) ("[T]he fact that Occidental provides in-person instruction 'under ordinary circumstances' . . . does not prevent Occidental from exercising its rights under the 2019-2020 Catalog to modify its programs, including during a national emergency, such as the Covid-19 global pandemic."); see also Zagoria v. New York Univ., No. 20-3610, 2021 WL 1026511, at *5 (S.D.N.Y. Mar. 17, 2021) ("Breach of contract actions between a student and a university 'must be grounded in a text' and may not be inferred from the conduct of the parties.") (citations omitted). The court agrees with the reasoning of these courts.

In Massachusetts, "[a]bsent ambiguous contractual language in the policy, custom and practice evidence cannot be used to vary the provisions of the policy." Somerset Sav. Bank v. Chicago Title Ins. Co., 420 Mass. 422, 427, 649 N.E.2d 1123 (1995) (citing Newell-Blais Post # 443, Veterans of Foreign Wars of the U.S., Inc. v. Shelby Mut. Ins. Co., 396 Mass. 633, 638, 487 N.E.2d 1371 (1986)). "[P]ertinent custom and usage are, by implication, incorporated into a policy and are admissible to aid in policy interpretation, not as tending to contradict or vary a contract, but on the theory that usage forms part of the contract." Id. at 428 (citing Affiliated FM Ins. Co. v. Constitution Reinsurance Corp., 416 Mass. 839, 845, 626 N.E.2d 878 (1994)).

Harvard's customary conduct in ordinary circumstances does not create an implied-in-fact contract requiring the same conduct during extraordinary circumstances. See Rodriguez v. Mass. Bay Transp. Authority, 92 Mass. App. Ct. 26, 30-31, 80 N.E.3d 365 (2017) (finding no breach of implied contract where the Massachusetts Bay Transportation Authority changed its customary train schedule because of severe winter storms). Accordingly, the implied contract claim is also dismissed.

  D. Unjust Enrichment

    1. Legal Standard

"To assert a claim for unjust enrichment, a plaintiff must show (1) 'she conferred a benefit upon the defendant,' (2) 'the defendant accepted the benefit,' and (3) 'the defendant's retention of the benefit would be inequitable without payment for its value.'" Chong, 494 F. Supp. 3d at 30 (quoting Reed v. Zipcar, Inc., 883 F. Supp. 2d 329, 334 (D. Mass. 2012), aff'd, 527 F. App'x 20 (1st Cir. 2013)). "Massachusetts law does not allow litigants to override an express contract by arguing unjust enrichment.'" Id. (quoting Platten v. HG Bermuda Exempted Ltd., 437 F.3d 118, 130 (1st Cir. 2006)). However, unjust enrichment may be pleaded in the alternative where "ambiguity in [a] contract casts doubt on whether a breach of contract claim

15

was indeed available as a legal remedy for the plaintiff." Tomasella v. Nestlé USA, Inc., 962 F.3d 60, 84 (1st Cir. 2020).

2. Analysis

Plaintiffs' unjust enrichment claim is pleaded in the alternative to their contract claims. Am. Compl. ¶ 109 [#26]. Plaintiffs argue that if Harvard can "unilaterally" change terms of the contract, Plaintiffs assert that they should be able to recover in tort, id. at ¶ 110, because it would be "unjust and inequitable for Defendant to retain the benefits of student commitment and tuition and fees when it has not fulfilled its end of the bargain." Id. at ¶ 116.

Defendant argues Plaintiffs are barred from bringing an unjust enrichment claim where the relationship between the parties is governed by contract. Mem. in Support of Mot. Dismiss 17 [#34]. Defendant contends further that the unjust enrichment claim should be dismissed because Plaintiffs have not pleaded that Defendant's decision to transition to remote instruction "contravened any duty it owed to its students." Id. at 18.

The court finds both arguments persuasive. The parties agree that their relationship is of a contractual nature; the dispute is only whether Harvard breached that contract. Therefore, even if Plaintiffs conferred a benefit on Harvard (on-campus tuition and fees) and Harvard accepted that benefit without providing an on-campus experience, Plaintiffs cannot override the express contract, and the unjust enrichment claim fails. That the court has found Plaintiffs may not prevail on their claims for breach of contract does not change the result because "'[i]t is the availability of a remedy at law, not the viability of that remedy, that prohibits a claim for unjust enrichment.'" Chong, 494 F. Supp. 3d at 30 (quoting Shaulis v. Nordstrom, Inc., 865 F.3d 1, 16 (1st Cir. 2017)) (alteration in original).

E. <u>Conversion</u>

1. Legal Standard

"Conversion is the intentional or wrongful exercise of ownership or control by defendant over the personal property of another to which it has no right of possession." <u>Omori</u>, 2021 WL 1408115, at *4 (citing <u>Third Nat'l Bank v. Continental Ins. Co.</u>, 338 Mass 240, 446 N.E.2d 380, 383 (1983)). "Whether or not Massachusetts limits conversion claims to tangible property is debatable, but even if it does not . . . [c]onversion implies appropriation." <u>In re TJX Companies Retail Sec. Breach Litig.</u>, 564 F.3d 489, 499-500 (1st Cir. 2009) (footnote omitted). "Money may be the subject of conversion," <u>In re Hilson</u>, 448 Mass. 603, 611, 863 N.E.2d 483 (Mass. 2007); however, if money is the subject of a conversion claim, "the plaintiff must identify a specific pool or fund in which he or she has a possessory interest." <u>Omori</u>, 2021 WL 1408115, at *4 (citing <u>Wollaston Indus., LLC v. Ciccone</u>, No. 19-cv-10678, 2019 WL 6841897, at *2 (D. Mass. Dec. 16, 2019)).

2. Analysis

Defendant argues Plaintiffs' conversion claim should be dismissed because it is premised on an alleged breach of contract and because the decision to transition to remote instruction did not violate a duty Harvard owed Plaintiffs. Mem. in Support of Mot. Dismiss 18-19 [#34]. Defendant also argues the conversion claim should be dismissed because Plaintiffs do not seek the return of tangible property. <u>Id.</u> at 18.

Plaintiffs allege they entrusted specific sums of money to Harvard, i.e., tuition and fees, to receive in-person instruction and because Harvard accepted their money but did not provide them with in-person instruction, Harvard converted their funds. Am. Compl. ¶ 118 [#26].

As discussed above, the court finds the relationship between the parties is governed by contract and, for the reasons applicable to Plaintiffs' unjust enrichment claim, Plaintiffs'

17

conversion claim fails. Also, because Plaintiffs seek an unspecified, prorated portion of the money paid for tuition and fees, as opposed to a specific fund in which they have a possessory interest, regardless of whether a contract exists, Plaintiffs cannot state a plausible claim for conversion. See Salerno, 448 F. Supp. 3d at 1218-19.

Finally, to the extent Plaintiffs argue Harvard converted their right to in-person education, these allegations cannot support a conversion claim because the right to in-person education is not "personal property." Omori, 2021 WL 1408115, at *5 (citing Karter v. Pleasant View Gardens, 248 F. Supp. 3d 299, 315 (D. Mass. 2017) (concluding that the theft of intangible property generally cannot support a claim for conversion)).

F. Plaintiff Barkhordar's Claims for Fall 2020

Plaintiff Barkhordar alone alleges he is also entitled to partial reimbursement for the tuition and fees he paid for the Fall 2020 semester at Harvard Law School because he was given a "coercive choice" to either "interrupt" his education or "pay the outrageous tuition and fees" for a remote semester. Am. Compl. ¶ 73 [#26].

Plaintiffs included the text of a letter Harvard Law School students received advising them of Harvard Law School's decision that the Fall 2020 semester would be remote-only in the Amended Complaint [#26] at ¶ 60. This letter also stated that

> [w]e realize that, for a variety of reasons, an online learning experience may not be optimal for all of you . . . Accordingly, we will offer an additional deferral period for our newly admitted JD and L.L.M, students [and] [w]e will also extend from June 15 to June 19 the deadline for returning students to opt for a fall-semester or full-year leave during Academic Year 2020-2021.

Id. Plaintiff Barkhordar did not take a fall semester or full-year leave and, instead, re-enrolled for the Fall 2020 semester aware tuition would not be reduced, and that instruction would be online. Id. at ¶ 62. By enrolling, Barkhordar accepted the terms of the contract for the Fall 2020 semester, including the terms that instruction would be online only and that costs would be the

18

same as the 2019-2020 school year; he has no reasonable expectation otherwise. As a result, he is not entitled to reimbursement of the tuition and fees paid for Fall 2020 as he has not plausibly stated a claim for breach of contract, unjust enrichment, or conversion and his claims for Fall 2020 are dismissed.

IV. Conclusion

For the foregoing reasons, Plaintiffs' Amended Complaint [#26] fails to state a claim upon which relief may be granted. Accordingly, Defendant's Motion to Dismiss [#33] is ALLOWED.[6]

IT IS SO ORDERED.

Date: June 21, 2021                                     /s/ Indira Talwani
                                                        United States District Judge

---

[6] During the hearing on Defendant's Motion to Dismiss [#33], Plaintiffs' counsel requested leave to amend the Amended Complaint [#26] if the court allowed Defendant's Motion [#33]. Plaintiffs did not, however, formally move for leave to amend, or submit a proposed amended complaint, and accordingly, that oral motion is denied. If Plaintiffs seek to file a formal motion for leave to amend, they shall do so within two weeks of this order and shall include a copy of the proposed amended complaint, limited to causes of action for breach of contract for the Spring 2020 term. A proposed amended complaint seeking relief on a University-wide basis shall detail the provisions of the alleged University-wide contract; if the proposed amended complaint seeks relief for students of a particular school, it shall detail the provisions of the school-specific contract and, as applicable, the explicit reservation of rights in the handbooks Defendant attached to its counsel's Affidavit [#35]. If no motion for leave to amend is filed, the court will enter judgment in accordance with this order granting Defendants' Motion to Dismiss [#33].