**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MASSACHUSETTS**

| | |
|---|---|
| ABRAHAM BARKHORDAR, SARAH ZELASKY, ELLA WECHSLER-MATTHAEI, individually and on behalf of all others similarly situated,<br><br>              Plaintiffs,<br><br>    v.<br><br>PRESIDENT AND FELLOWS OF HARVARD COLLEGE,<br><br>              Defendant. | Civil Action No. 1:20-cv-10968-IT |

**DEFENDANT'S OPPOSITION TO PLAINTIFFS' MOTION FOR LEAVE TO FILE THE SECOND AMENDED CONSOLIDATED CLASS ACTION COMPLAINT**

# TABLE OF CONTENTS

**Page**

INTRODUCTION ................................................................................................................. 1

BACKGROUND ................................................................................................................. 3

ARGUMENT ...................................................................................................................... 6

I.      PLAINTIFFS' PROPOSED AMENDMENTS TO THEIR SPRING 2020 BREACH OF CONTRACT CLAIM ARE FUTILE. ......................................... 7

      A.      The Proposed Amended Complaints Do Not Allege Specific Contractual Promises That Entitled Plaintiffs To In-Person, On-Campus Instruction No Matter The Circumstances, Even During A Global Pandemic. ............................ 8

            1.      The New Materials Cited In The Complaints Do Not Establish A Contractual Promise Of In-Person Education. .......................................... 9

            2.      Even If Any Of The New Materials Represented A Contractual Promise Of In-Person Education In Ordinary Times, They Do Not Create A Contractual Obligation To Provide In-Person Education Even During A Global Pandemic. .......................................................... 13

      B.      The Proposed Amended Complaints Do Not Address The Reservation of Rights Provisions, Which Independently Preclude Plaintiffs' Claims. ............... 15

II.     PLAINTIFFS' PROPOSED FALL 2020 and SPRING 2021 CLAIMS WERE ALREADY DISMISSED WITH PREJUDICE AND ARE MERITLESS. .................... 19

CONCLUSION.................................................................................................................... 20

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Amable v. The New Sch.*,
   2021 WL 3173739 (S.D.N.Y. July 27, 2021) ........................................................ 9, 11

*Bauza v. Morales Carrion*,
   578 F.2d 447 (1st Cir. 1978) ........................................................................ 19

*Beck v. Manhattan Coll.*,
   2021 WL 1840864 (S.D.N.Y. May 7, 2021) .................................................... 10

*Bose Corp. v. Ejaz*,
   732 F.3d 17 (1st Cir. 2013) .......................................................................... 15

*Brooks v. AIG SunAmerica Life Assur. Co.*,
   480 F.3d 579 (1st Cir. 2007) ........................................................................ 15

*Burt v. Bd. of Trs. of Univ. of R.I.*,
   2021 WL 825398 (D.R.I. Mar. 4, 2021) ................................................ 9, 11, 13, 17

*Buschauer v. Columbia Coll. Chi.*,
   2021 WL 1293829 (N.D. Ill. Apr. 6, 2021) .............................................. 10, 11, 13

*Chong v. Ne. Univ.*,
   2021 WL 1857341 (D. Mass. May 10, 2021) ................................................ 18

*Correa-Martinez v. Arrillaga-Belendez*,
   903 F.2d 49 (1st Cir. 1990) ........................................................................... 6

*Crawford v. Pres. & Dirs. of Georgetown Coll.*,
   2021 WL 1840410 (D.D.C. May 7, 2021) .................................................. 14, 17

*Crowl v. M. Chin Realty Tr.*,
   607 F. Supp. 2d 245 (D. Mass. 2009) ............................................................. 7

*Cuesnongle v. Ramos*,
   713 F.2d 881 (1st Cir. 1983) ............................................................ 11, 17, 18, 19

*Demers Bros. Trucking, Inc. v. Certain Underwriters at Lloyd's*,
   600 F. Supp. 2d 265 (D. Mass. 2009) ............................................................ 10

*Dougherty v. Drew Univ.*,
   2021 WL 1422935 (D.N.J. Apr. 14, 2021) ...................................................... 17

*Durbeck v. Suffolk Univ.*,
   2021 WL 2582621 (D. Mass. June 23, 2021) ................................................. 18

**TABLE OF AUTHORITIES**
(continued)

Page(s)

*G. v. Fay Sch.*,
  931 F.3d 1 (1st Cir. 2019) .......................................................................................... 9

*Gociman v. Loyola Univ. of Chi.*,
  2021 WL 243573 (N.D. Ill. Jan. 25, 2021) ................................................. 10, 11, 17

*Hassan v. Fordham Univ.*,
  2021 WL 293255 (S.D.N.Y. Jan. 28, 2021) ......................................... 10, 11, 12, 13

*Hatch v. Dep't for Children, Youth & Their Families*,
  274 F.3d 12 (1st Cir. 2001) ........................................................................................ 7

*Hewitt v. Pratt Inst.*,
  2021 WL 2779286 (E.D.N.Y. July 2, 2021) ......................................................... 9, 17

*I&R Mech., Inc. v. Hazelton Mfg. Co.*,
  62 Mass. App. Ct. 452 (2004) .................................................................................... 9

*In re Columbia Tuition Refund Action*,
  __ F. Supp. 3d __, 2021 WL 790638 (S.D.N.Y. Feb. 26, 2021) ................... 10, 11, 13

*Lambert v. Fleet Nat'l Bank*,
  449 Mass. 119 (2007) ................................................................................................. 9

*Lindner v. Occidental Coll.*,
  2020 WL 7350212 (C.D. Cal. Dec. 11, 2020) ............................................. 10, 11, 17

*McAdams v. Mass. Mut. Life Ins. Co.*,
  391 F.3d 287 (1st Cir. 2004) .................................................................................... 16

*Michel v. Yale Univ.*,
  2021 WL 2827358 (D. Conn. July 7, 2021) .............................................................. 17

*Miller v. Lewis Univ.*,
  2021 WL 1379488 (N.D. Ill. Apr. 11, 2021) ............................................... 10, 11, 17

*Oyoque v. DePaul Univ.*,
  2021 WL 679231 (N.D. Ill. Feb. 21, 2021) ........................................................ 10, 11

*Palmer v. Champion Mortg.*,
  465 F.3d 24 (1st Cir. 2006) ........................................................................................ 6

*Rodriguez v. Mass. Bay Transp. Auth.*,
  92 Mass. App. Ct. 26 (2017) .............................................................................. 13, 14

**TABLE OF AUTHORITIES**
(continued)

Page(s)

*Romankow v. NYU*,
   2021 WL 1565616 (S.D.N.Y. Apr. 21, 2021) ..................................................... 17, 19

*Shaffer v. George Washington Univ.*,
   2021 WL 1124607 (D.D.C. Mar. 24, 2021) ..................................................... 10, 17

*Shak v. Adelphi Univ.*,
   2021 WL 3030069 (E.D.N.Y. July 15, 2021) ........................................................ 11

*Shin v. MIT*,
   2005 WL 1869101 (Mass. Super. Ct. June 27, 2005) ............................................ 10

*Smith v. Univ. of Pa.*,
   2021 WL 1539493 (E.D. Pa. Apr. 20, 2021) ............................................. 10, 11, 17

*Squeri v. Mount Ida Coll.*,
   954 F.3d 56 (1st Cir. 2020) ................................................................................ 20

*Sullivan v. Bos. Architectural Ctr., Inc.*,
   57 Mass. App. Ct. 771 (2003) ............................................................................ 19

*United States ex rel. Gagne v. City of Worcester*,
   565 F.3d 40 (1st Cir. 2009) .................................................................................. 6

*Zagoria v. NYU*,
   2021 WL 1026511 (S.D.N.Y. Mar. 17, 2021) ..................................... 10, 11, 13, 19

**Rules**

Fed. R. Civ. P. 12 ..................................................................................... 7, 18

Fed. R. Civ. P. 15 ....................................................................................... 1, 6

Fed. R. Civ. P. 56 ......................................................................................... 18

Pursuant to Federal Rule of Civil Procedure 15 and Local Rule 7.1(b), Defendant President and Fellows of Harvard College ("Harvard" or the "University") submits this Memorandum in Opposition to Plaintiffs' Motion for Leave to File the Second Amended Consolidated Class Action Complaint ("Motion for Leave to Amend").

## INTRODUCTION

Plaintiffs' Motion for Leave to Amend should be denied because Plaintiffs have come nowhere close to curing the deficiencies this Court identified in its Order granting Harvard's Motion to Dismiss Plaintiffs' First Amended Consolidated Class Action Complaint ("First Amended Complaint"). *See* ECF No. 94 ("Order"). In the First Amended Complaint (ECF No. 26), Plaintiffs' main claim was that Harvard breached a contractual promise to provide in-person instruction when—in response to the unprecedented COVID-19 global pandemic—it transitioned to remote instruction during the Spring 2020 semester. That claim was purportedly based on materials, including from Harvard's website, that described the importance of Harvard's campus and in-person instruction more generally. First Am. Compl. ¶ 34. This Court correctly held that Plaintiffs' contract claim could not survive for at least three reasons.

First, as the Court explained, the advertising materials on which Plaintiffs relied did not contain specific contractual terms—that fact alone required dismissal of the complaint.

Second, the Court explained that it was insufficient for Plaintiffs to cite materials that reflected the general expectation prior to Spring 2020 that instruction would be in person, or even to allege a binding contractual promise to provide in-person instruction "during normal times." Order at 12. Rather, Plaintiffs could only prevail on their claims if they could show that Harvard promised to provide in-person instruction *no matter what*—*i.e.*, that Harvard "promised to provide in-person instruction, even where, during a global pandemic, the Governor and public health officials dictated otherwise." *Id.*

- 1 -

Third, the Court recognized that the handbooks of two of the three Harvard schools that the named Plaintiffs attended included express reservation of rights provisions that reserved Harvard's "discretion . . . to alter the format of its academic offerings." *Id.* at 13.  The Court explained that to be actionable, any alleged promise identified by Plaintiffs would have to overcome those reservations.  *Id.* at 14.

Plaintiffs brought several other claims—a contract claim relating to the Fall 2020 semester and future semesters offered remotely, an unjust enrichment claim, and a conversion claim—which the Court dismissed with prejudice.  And although the Court allowed Plaintiffs the opportunity to attempt to amend their complaint as to their Spring 2020 contract claim, the Court specifically made clear that it would not allow amendment if Plaintiffs could not cure the deficiencies just described.  *See id.* at 19 n.6.

Plaintiffs have failed to do so.  While the proposed amended complaints include new allegations citing Harvard websites, course catalogs, and other similar documents, they are in substance not materially different from the allegations contained in the prior complaint.  The materials on which Plaintiffs now rely, like the previously cited ones, do not include any specific contractual promise.  Indeed, while these new materials certainly confirm the assumption, shared by Harvard and its students alike, that instruction would be in person in ordinary circumstances, they do not even remotely suggest a binding contractual promise to provide in-person instruction *no matter what*, even in the midst of a global pandemic.  Moreover, even if Plaintiffs could show that they formed a reasonable expectation of in-person instruction during a global pandemic (they have not), they do not explain how they could have formed such an expectation in light of Harvard's express reservation of rights provisions.  As this Court recognized, *id.* at 13, those provisions expressly afford Harvard discretion, already granted to colleges and universities under

Massachusetts law, to alter academic offerings in a reasonable manner under the circumstances. And it is undisputed that remote instruction during a global pandemic was reasonable. In short, Plaintiffs' proposed amendments as to their Spring 2020 claims are futile.

Plaintiffs' motion for leave to amend also attempts to resuscitate Plaintiff Abraham Barkhordar's claim that Harvard breached a contract by providing remote instruction in the Fall 2020 and Spring 2021 semesters, even though Barkhordar decided to pay tuition and sign up for classes *after* Harvard informed Barkhordar that instruction for those semesters would be remote. As an initial matter, Plaintiffs' attempt to revive claims for Fall 2020 and Spring 2021 should be summarily denied because it flatly contradicts this Court's order granting Harvard's motion to dismiss, which rejected Barkhordar's Fall-2020-and-later claims with prejudice, and left open the possibility of amendment only as to the Spring 2020 claim. *Id.* at 19 n.6. The claims fail in any event for the reason this Court already explained: Barkhordar could not possibly have had a reasonable expectation that he would receive in-person instruction in exchange for his Fall 2020 or Spring 2021 tuition payments, since Harvard expressly alerted him and his classmates beforehand that instruction would be remote, and yet he still decided to enroll, pay tuition, and earn credits. *Id.* at 18-19.

For these reasons, and as explained more fully below, Plaintiffs' Motion for Leave to Amend should be denied.

## BACKGROUND

In the Spring of 2020, Plaintiffs Abraham Barkhordar, Sarah Zelasky, and Ella Wechsler-Matthaei commenced this putative class action against Harvard, alleging claims for breach of contract, unjust enrichment, and conversion based on Harvard's failure to refund or discount its tuition and fees after it transitioned to remote instruction in response to the COVID-19 pandemic. *See* ECF No. 1. Harvard moved to dismiss the complaint. ECF No. 34. It

acknowledged the general expectation before Spring 2020 that instruction would be in person but explained that the relevant question was whether Harvard had made a contractually binding promise to provide in-person education *in all circumstances*, including during a global pandemic. *Id.* at 11-16.  The breach of contract claim should be dismissed, Harvard argued, because Plaintiffs had failed to identify any such promise.  *Id.* at 11-13.  And if there were any doubt about that point, Harvard explained, dismissal was still warranted because Harvard's handbooks and Massachusetts law afford Harvard vast discretion over academic affairs, including discretion to alter academic offerings in response to a global pandemic.  *Id.* at 13-16.

On June 21, 2021, this Court granted Harvard's motion to dismiss.  Order at 1.  The Court first addressed Plaintiffs' main breach of contract claim.  The Court recognized that "the student-college relationship is contractual in nature" and that courts interpreting the terms of that contract apply a "reasonable expectation standard"—*i.e.*, "what meaning the party making the manifestation, the university, should reasonably expect the student to give it."  *Id.* at 7-8 (quotation omitted).  Applying that standard, the Court agreed with Harvard that Plaintiffs "ha[d] not identified the specific terms that their university should have reasonably expected students to understand to be an offer of in-person instruction and access to on-campus facilities."  *Id.* at 12. The Court acknowledged that (i) the complaint cited a promotional webpage referencing "Harvard's libraries, laboratories, museums, and research centers" and describing "Harvard's campus" as "a stunning background," First Am. Compl. ¶ 34, and (ii) Plaintiffs' opposition cited handbook provisions detailing Harvard's on-campus registration procedures, childcare options, and transportation services, ECF No. 47 at 11-12.  *See* Order at 9-10.  But the Court concluded that those promotional websites and materials did not help Plaintiffs because they "include[d] no specific contractual terms."  Order at 10 (quotations omitted).

That was not the only reason to dismiss the contract claims. The Court emphasized that because "Spring 2020 was not a normal time," Plaintiffs' claims could not survive dismissal by simply adding citations to materials describing "in-person instruction and on-campus access" or customary practice "during normal times." *Id.* at 12; *see also id.* at 15 ("Harvard's customary conduct in ordinary circumstances does not create an implied-in-fact contract requiring the same conduct during extraordinary circumstances."). Instead, Plaintiffs would need to identify materials establishing that Harvard "promised to provide in-person instruction, even where, during a global pandemic, the Governor and public health officials dictated otherwise." *Id.* at 12. Plaintiffs would also need to address, with "fulsome allegations of contractual terms," the reservation of rights provisions in several of Harvard's handbooks, which reserved Harvard's "discretion . . . to alter the format of its academic offerings." *Id.* at 13, 14; *see also id.* at 19 n.6 (instructing Plaintiffs to address reservation of rights provisions on motion for leave to amend).

The Court also dismissed Barkhordar's contract claim for Fall 2020 and any future remote-instruction semesters[1] for an additional reason: Harvard had advised its students over the summer that the Fall 2020 semester would be remote-only and offered them the opportunity to take a leave of absence or defer. *Id.* at 18. But Barkhordar "did not take a fall semester or full-year leave and, instead, re-enrolled for the Fall 2020 semester aware tuition would not be reduced, and that instruction would be online." *Id.* He thus "accepted the terms of the contract for the Fall 2020 semester, including the terms that instruction would be online only and that costs would be the same as the 2019-2020 school year; he has no reasonable expectation otherwise." *Id.* at 18-19. Finally, the Court dismissed the unjust enrichment and conversion

---

[1] Barkhordar was the only named plaintiff who did not graduate in Spring 2020 and thus was the only plaintiff who could seek relief for future terms.

claims as legally inadequate.  *Id.* at 14-19.

After dismissing Plaintiffs' claims, the Court instructed Plaintiffs that if they wished to formally move for leave to amend, they would need to submit a proposed amended complaint that was "limited to causes of action for breach of contract for the Spring 2020 term" and that cured the deficiencies the Court had identified with respect to that claim.  *Id.* at 19 n.6.

On July 6, 2021, Plaintiffs moved for leave to amend under Federal Rule of Civil Procedure 15, attaching two versions of their proposed Second Amended Consolidated Class Action Complaint.  ECF No. 95 ("Mot.").  The first asserts a breach of contract claim for only the Spring 2020 term.  ECF No. 95-1 ("Spring Am. Compl.").  The second also includes breach of contract claims for the Fall 2020 and future terms.  ECF No. 95-2 ("Fall Am. Compl.").  The proposed amended complaints repeat many of the allegations from the original complaint, adding citations to other Harvard websites, admissions materials, course catalogs, and syllabi.[2]

## ARGUMENT

"[A] request to amend" under Federal Rule of Civil Procedure 15(a) "requires the court to examine the totality of the circumstances and to exercise its informed discretion in constructing a balance of pertinent considerations."  *Palmer v. Champion Mortg.*, 465 F.3d 24, 30-31 (1st Cir. 2006).  "Reasons for denying leave include . . . futility of amendment."  *United States ex rel. Gagne v. City of Worcester*, 565 F.3d 40, 48 (1st Cir. 2009); *see Correa-Martinez v. Arrillaga-Belendez*, 903 F.2d 49, 59 (1st Cir. 1990) ("Where an amendment would be futile or would serve no legitimate purpose, the district court should not needlessly prolong matters.").  "[A]mendment

---

[2] Because both proposed amended complaints are identical through paragraph 163, this Opposition cites only to the Spring Amended Complaint except where the Opposition discusses the Fall 2020 and future semesters claims.

is deemed futile when the proposed amended complaint would fail to withstand a motion to

dismiss" under Federal Rule of Civil Procedure 12(b)(6).  *Crowl v. M. Chin Realty Tr.*, 607 F.

Supp. 2d 245, 246 (D. Mass. 2009) (citing *Hatch v. Dep't for Children, Youth & Their Families*,

274 F.3d 12, 19 (1st Cir. 2001)).

     Under that standard, the Court should deny Plaintiffs' Motion for Leave to Amend.  The

proposed amendments to the Spring 2020 breach of contract claim fail to cure the deficiencies

the Court identified in its prior order and would not survive a renewed motion to dismiss.

Barkhordar's Fall 2020 and Spring 2021 claims, meanwhile, flatly contradict both this Court's

previous order—dismissing those claims with prejudice—and clear First Circuit precedent.[3]

## I.     PLAINTIFFS' PROPOSED AMENDMENTS TO THEIR SPRING 2020 BREACH OF CONTRACT CLAIM ARE FUTILE.

     This Court's prior order made clear that any amended complaint would be limited to

Spring 2020 and would need to cure two basic deficiencies.  First, the Court instructed Plaintiffs

to identify specific provisions in Harvard's materials that go beyond merely restating the general

expectation that instruction would be in person, and instead create a contractually binding

promise that Harvard would retain in-person education no matter what, even during a global

pandemic.  *See* Order at 12.  Second, the Court required Plaintiffs to explain how their

allegations of a contractual promise of in-person education could be consistent with the

---

[3] For the reasons stated in Harvard's original motion to dismiss, Plaintiffs' claims are
independently barred as impermissible challenges to the quality and value of Plaintiffs'
education.  *See* ECF No. 34 at 8-10.  In its Order granting Harvard's motion, the Court held that
this argument is premature at this stage but could preclude Plaintiffs' ability to prove damages to
the extent their theory rests on a difference in quality between in-person and remote instruction.
Order at 6-7.  Harvard maintains and preserves its argument that Plaintiffs' claims are precluded
by the educational malpractice doctrine because they inherently require proving such a difference
in quality.

- 7 -

reservation of rights provisions contained in Harvard's handbooks.  *See id.* at 14, 19 n.6.

Plaintiffs' proposed amended complaints are futile because they fail to cure either deficiency.

> A.   **The Proposed Amended Complaints Do Not Allege Specific Contractual Promises That Entitled Plaintiffs To In-Person, On-Campus Instruction No Matter The Circumstances, Even During A Global Pandemic.**

Plaintiffs' core theory is that students contracted for an in-person education and that Harvard breached that contract when it transitioned to remote instruction in response to the COVID-19 pandemic.  As this Court recognized, it is not enough to support that theory with allegations that students "contracted for in-person instruction and on-campus access during normal times."  Order at 12.  Obviously, "Spring 2020 was not a normal time."  *Id.*  Instead, to state a plausible breach of contract claim, Plaintiffs need to identify specific provisions in Harvard's materials "suggesting that Harvard would reasonably expect students to understand . . . that Harvard had promised to provide in-person instruction, even where, during a global pandemic, the Governor and public health officials dictated otherwise."  *Id.*

Plaintiffs have failed to identify any such provisions in their proposed amended complaints.  Rather, as with their previous allegations, Plaintiffs merely identify provisions that reflected the general pre-Spring 2020 expectation that instruction would be in person—not any contractual promise to remain in person even during a global pandemic.

Specifically, the complaints add citations to: (i) general statements from Harvard's websites and admissions materials describing in-person opportunities and campus facilities; (ii) Harvard's Mission and Vision Statements; (iii) references to physical locations and hands-on experiences in Harvard's course catalogs and syllabi; and (iv) purportedly in-person classroom policies and graduation requirements.  *See e.g.*, Spring Am. Compl. ¶¶ 58-96.  None of these new provisions constitutes any contractual promise of in-person education, let alone a contractual promise of in-person education no matter the circumstances.

      1.      *The New Materials Cited In The Complaints Do Not Establish A Contractual Promise Of In-Person Education.*

None of Plaintiffs' newly alleged materials forming the basis of their contract claim establish any kind of binding contractual promise of in-person education.  For example, many of the materials Plaintiffs now cite simply contain general references to campus life and hands-on experiences in Harvard's websites and other admissions materials.  *See, e.g.*, Spring Am. Compl. ¶¶ 58, 64-72.  Those materials do not amount to contractual promises of in-person education— instead, as Plaintiffs appear to recognize, these promotional materials are advertisements.  *See, e.g., id.* ¶ 64 ("Harvard advertises plaintiff Zelasky's program . . . as an in-person experience"). Under Massachusetts law, advertisements are "requests for offers or invitations to negotiate," "not . . . offers" that create an enforceable contract.  *I&R Mech., Inc. v. Hazelton Mfg. Co.*, 62 Mass. App. Ct. 452, 455 (2004).  In any event, the language Harvard uses in these materials— describing Harvard's "supportive atmosphere," "unmatched array of course and academic offerings," and "bustling campus"—is too "vague and general . . . [to] rise to the level of an enforceable [contract]."  *Lambert v. Fleet Nat'l Bank*, 449 Mass. 119, 124 (2007); *see also G. v. Fay Sch.*, 931 F.3d 1, 12 (1st Cir. 2019).  Moreover, as this Court recognized in dismissing the prior complaint, general references to Harvard's "libraries," "laboratories," "museums," and "research centers" or descriptions of Harvard's campus as a "stunning background" do not constitute "specific contractual terms" or promises.  Order at 10 (quotation omitted).[4]

Nor do Harvard College's Mission and Vision statements (Spring Am. Compl. ¶¶ 59-62) help Plaintiffs.  For one thing, Plaintiffs fail to explain why the mission of Harvard College,

---

[4] *See Burt v. Bd. of Trs. of Univ. of R.I.*, 2021 WL 825398, at *4 (D.R.I. Mar. 4, 2021) (university websites are "general advertisements" that "do not create obligations on the part of the university—they are vague and more akin to puffery"); *accord Amable v. The New Sch.*, 2021 WL 3173739, at *9 (S.D.N.Y. July 27, 2021); *Hewitt v. Pratt Inst.*, 2021 WL 2779286, at

Harvard's undergraduate school, would give Plaintiffs—all of whom are graduate students—a reasonable expectation of anything at all, let alone in-person education in their graduate programs.  For another, the Mission and Vision statements use vague and general terms to describe how students will "embark on a journey of intellectual transformation," *id.* ¶ 60 (quotation omitted), and "experience an unparalleled educational journey that is intellectually, socially, and personally transformative," *id.* ¶ 62 (quotation omitted).  That language, like the language in Harvard's promotional materials, is far "too indefinite to create an enforceable contract."  *Shin v. MIT*, 2005 WL 1869101, at *7 (Mass. Super. Ct. June 27, 2005) (brochure stating that students would get "access to a full range of physicians" to "care for your physical and psychological needs" did not form an enforceable contract); *see supra* at 9 and n.4.

Plaintiffs' citations to the class schedules and locations listed in Harvard's course catalogs and syllabi (Spring Am. Compl. ¶¶ 63, 76, 79-88, 94-96) similarly provide no more support for Plaintiffs' claims.  Again, those statements clearly reflect the general pre-pandemic expectation that classes would take place on campus.  But they do not constitute enforceable contractual promises of any kind, much less that instruction will be held in those on-campus locations under all possible circumstances.  Courts must interpret "contract language so as to avoid absurd results."  *Demers Bros. Trucking, Inc. v. Certain Underwriters at Lloyd's*, 600 F.

---

*3 (E.D.N.Y. July 2, 2021); *Beck v. Manhattan Coll.*, 2021 WL 1840864, at *2 (S.D.N.Y. May 7, 2021); *Smith v. Univ. of Pa.*, 2021 WL 1539493, at *5-6 (E.D. Pa. Apr. 20, 2021); *Miller v. Lewis Univ.*, 2021 WL 1379488, at *3-4 (N.D. Ill. Apr. 11, 2021); *Buschauer v. Columbia Coll. Chi.*, 2021 WL 1293829, at *5 (N.D. Ill. Apr. 6, 2021); *Shaffer v. George Washington Univ.*, 2021 WL 1124607, at *2 (D.D.C. Mar. 24, 2021); *Zagoria v. NYU*, 2021 WL 1026511, at *4 (S.D.N.Y. Mar. 17, 2021); *In re Columbia Tuition Refund Action*, __ F. Supp. 3d __, 2021 WL 790638, at *4 (S.D.N.Y. Feb. 26, 2021); *Oyoque v. DePaul Univ.*, 2021 WL 679231, at *4-5 (N.D. Ill. Feb. 21, 2021); *Hassan v. Fordham Univ.*, 2021 WL 293255, at *5-6 (S.D.N.Y. Jan. 28, 2021); *Gociman v. Loyola Univ. of Chi.*, 2021 WL 243573, at *3-4 (N.D. Ill. Jan. 25, 2021); *Lindner v. Occidental Coll.*, 2020 WL 7350212, at *8 n.1 (C.D. Cal. Dec. 11, 2020).

Supp. 2d 265, 278 (D. Mass. 2009).  But the implications of Plaintiffs' theory (that class schedules are contractual promises) are plainly absurd, causing even minor changes (*e.g.*, moving the time or location of a class, or changing the instructor) to become "breaches" upon which students could sue.  Thus, Barkhordar would have a breach of contract claim if his Constitutional Law class was offered in Austin Hall instead of Wasserstein Hall, as "promised" in his syllabus, Spring Am. Compl. ¶ 80; Zelasky would have a breach of contract claim if her Building for Health course was offered from 2 PM-4:15 PM instead of 8:00 AM-11:15 AM, *id.* ¶ 84; and Wechsler-Matthaei would have a breach of contract claim if her Managing Financial Resources in Nonprofit Organizations professor held office hours outside instead of in Gutman Library room 448, *id.* ¶ 94.  Massachusetts law gives schools discretion to determine and alter their educational programs to avoid precisely this result, because allowing students to sue over each adjustment would effectively prevent universities from functioning.  *See Cuesnongle v. Ramos*, 713 F.2d 881, 885-86 (1st Cir. 1983) (it "should startle anyone at all familiar with university life" "to think that a university could be found to have broken its contract when it changed the dates of classes, or the curriculum, for reasons beyond its control").  That is why numerous courts have rejected student-plaintiffs' attempts to rely on similar information in course catalogs and syllabi in support of breach of contract claims.[5]

Finally, Plaintiffs cite various in-person attendance and presentation requirements and classroom policies prohibiting laptops, Spring Am. Compl. ¶¶ 77, 81, 84, 87-88, 96, and Zelasky

---

[5] *See Burt*, 2021 WL 825398, at *5; *accord Amable*, 2021 WL 3173739, at *6-8; *Shak v. Adelphi Univ.*, 2021 WL 3030069, at *3-4 (E.D.N.Y. July 15, 2021); *Smith*, 2021 WL 1539493, at *6; *Miller*, 2021 WL 1379488, at *4-5; *Buschauer*, 2021 WL 1293829, at *5; *Zagoria*, 2021 WL 1026511, at *4; *In re Columbia Tuition Refund Action*, 2021 WL 790638, at *4; *Oyoque*, 2021 WL 679231, at *3; *Hassan*, 2021 WL 293255, at *5-6; *Gociman*, 2021 WL 243573, at *4 & n.3; *Lindner*, 2020 WL 7350212, at *8.

also cites two purportedly in-person graduation requirements for her Master of Public Health program. *Id.* ¶¶ 89-92.  But those provisions have no effect on Plaintiffs' claims because the requirements and policies Plaintiffs cite are not contractual promises Harvard makes to its students.  To the contrary, they are general policies and requirements applicable to Harvard's academic offerings, not discrete contractual obligations.  *Hassan*, 2021 WL 293255, at *6 (describing similar classroom requirements as "general statements of policy" rather than "specifically designated and discrete promises" regarding "the incidents of the forthcoming education" (quotation omitted)).  In any event, even if these policies imposed contractual obligations on Harvard, the sum and substance of those obligations could only amount to an obligation to grant credits and a degree if the requirements are satisfied.  Plaintiffs do not allege that Harvard breached any such obligation—all three Plaintiffs successfully earned credits for the Spring 2020 semester and Zelasky and Wechsler-Matthaei graduated at the end of that semester.

Moreover, neither of the graduation requirements for Zelasky's program mandates exclusively in-person instruction.  The Integrative Learning Experience involves "critical reflection on students' professional growth" and "demonstration of MPH competencies" through "successful coursework," "field practice," and "extracurricular activities."  Spring Am. Compl. ¶ 92 (quotation omitted).   And the Applied Practice Experience requires students to work with an outside organization on a "real-world public health problem or issue." *Id.* ¶ 91.  Nothing in those descriptions plausibly suggests that they cannot be satisfied by participating in an online course or working remotely with an outside organization—indeed, Zelasky apparently satisfied them, having graduated in 2020.  In any event, they do not constitute a binding promise to

provide in-person education and cannot support Plaintiffs' efforts to revive their claims.[6]

        2.      *Even If Any Of The New Materials Represented A Contractual Promise Of In-Person Education In Ordinary Times, They Do Not Create A Contractual Obligation To Provide In-Person Education Even During A Global Pandemic.*

For the reasons just explained, Plaintiffs' newly cited materials in support of their claims do not create a binding contractual obligation to provide in-person education in any circumstance.  But establishing such a binding promise is only the first hurdle Plaintiffs must clear.  As this Court made expressly clear in its Order (at 12), Plaintiffs must also show that the binding promise required remaining in person in *all* circumstances, including during a pandemic.

Plaintiffs come nowhere close to satisfying that additional obligation.  At most, the materials on which they rely "memorialize the pre-pandemic practice" of offering in-person courses and experiences; they do not purport to guarantee that the usual "pre-pandemic practice . . . would continue indefinitely."  *In re Columbia Tuition Refund Action*, 2021 WL 790638, at *4.  But no material cited alludes to—let alone explicitly promises—in-person instruction during an emergency when it is undisputed that a shift to remote instruction was necessary.  No reasonable student could possibly have expected that the routine advertisements, course materials, and the like on which Plaintiffs rely would create a binding obligation to keep

---

[6] To the extent Plaintiffs continue to rely on allegations concerning Harvard's "usual and customary practice of providing on-campus courses," Spring Am. Compl. ¶ 156, this Court has already rejected that argument.  In dismissing Plaintiffs' previous complaint, this Court explained that "a university's 'usual or customary practice' of providing in-person instruction cannot replace express, written contract terms to form an implied contract which includes an obligation to provide in-person instruction in a global pandemic."  Order at 14.  Put differently, "Harvard's customary conduct in ordinary circumstances does not create an implied-in-fact contract requiring the same conduct during extraordinary circumstances."  *Id.* at 15 (citing *Rodriguez v. Mass. Bay Transp. Auth.*, 92 Mass. App. Ct. 26, 30-31 (2017)); *see Burt*, 2021 WL 825398, at *5; *Buschauer*, 2021 WL 1293829, at *6; *Zagoria*, 2021 WL 1026511, at *4; *In re Columbia Tuition Refund Action*, 2021 WL 790638, at *4; *Hassan*, 2021 WL 293255, at *7.

them on campus while a highly contagious disease raged across the globe, and there is no plausible basis to impose that sort of absurd obligation on Harvard or any other college or university under a contract theory, absent expressly clear language that is lacking here.  *See Crawford v. Pres. & Dirs. of Georgetown Coll*., 2021 WL 1840410, at *8 (D.D.C. May 7, 2021) ("Whatever else the universities may have impliedly promised, it is not objectively plausible that they intended to surrender their discretion to take such undisputedly reasonable steps to adapt to sudden changes in the public health environment."); *Rodriguez*, 92 Mass. App. Ct. at 30-31 (affirming dismissal of breach of contract claim because "it [wa]s not reasonable to . . . infer[]" that the MBTA "agreed to be bound by [its] regular schedule" during "extraordinary circumstances").

Indeed, at oral argument on Harvard's motion to dismiss, Plaintiffs seemed to recognize the implausibility of the theory that Harvard's website and policies obligated Harvard to keep its students on campus during the COVID-19 pandemic.  Instead, while conceding that Harvard was not obligated to keep them on campus, Plaintiff argued that Harvard *was* required to refund a portion of their tuition based on the shift to remote instruction.  *See* Metlitsky Decl. Ex. A ("Tr.") at 24:15-25.  If that is Plaintiffs' theory, it fails as a matter of law.  Plaintiffs could only be entitled to a refund under the contract if a contractual provision required a refund under the circumstances.  But Plaintiffs do not cite any contract provision that even comes close to requiring such a refund.  Nor could they, as the relevant student handbooks specify that students will receive a tuition refund only if they take a leave of absence and forego earning further credits toward graduation during the relevant semester.[7]  As this Court recognized (Tr. at 28:23-

---

[7] ECF No. 35-1 at 19 (Graduate School of Education offering partial tuition refund for leave before April 10, 2020); ECF No. 35-2 at 24 (School of Public Health offering partial tuition

29:14), Plaintiffs took no such leave of absence, and continued earning credits toward graduation

(and two of the three Plaintiffs in fact graduated at the end of the Spring 2020 semester).  Thus,

Plaintiffs cannot claim the right to a tuition refund under the contract itself.

The only other possible theory of recovery is that Plaintiffs are entitled to a full or partial

"refund" as damages for a contract breach.  *See Bose Corp. v. Ejaz,* 732 F.3d 17, 21 (1st Cir.

2013) (breach of contract claim requires plaintiff to show damages sustained "as a result" of

contract breach).  But there is no contract breach unless Plaintiffs identify a binding contractual

promise that Harvard made and broke.  *See Brooks v. AIG SunAmerica Life Assur. Co*., 480 F.3d

579, 586 (1st Cir. 2007) (plaintiffs asserting breach of contract claims must describe "with

substantial certainty the specific contractual promise the defendant failed to keep" (quotation

omitted)).  And the only promise possibly implicated here—the promise that Plaintiffs allege that

Harvard made and broke—is the alleged promise to keep its students on campus and provide in-

person instruction in all circumstances, including during the pandemic.  This Court gave

Plaintiffs the opportunity to identify contract materials plausibly showing the existence of such a

promise.  Since they have failed to do so, the Motion for Leave to Amend should be denied.

**B.      The Proposed Amended Complaints Do Not Address The Reservation of
         Rights Provisions, Which Independently Preclude Plaintiffs' Claims.**

Plaintiffs' proposed amendments are also futile because, despite this Court's explicit

admonition, Plaintiffs have failed to explain how their contract claims are consistent with the

reservation of rights language that is indisputably part of the contract here.  Plaintiffs do not

explain—because there is no plausible way to explain—how students could have reasonably

---

refund for leave before March 30, 2020); ECF No. 35-3 at 91 (Law School offering partial
tuition refund for leave before April 30, 2020).

expected to receive an in-person education in all circumstances, even during a global pandemic, when Harvard expressly reserves for itself the discretion to make reasonable alterations to its academic offerings when warranted under the circumstances.

As this Court explained in its dismissal order, "[t]here is no dispute that [Harvard's] student handbooks . . . provide at least some of the terms of Plaintiffs' contracts with Harvard." Order at 13.  The handbooks for the Graduate School of Education (applicable to Wechsler-Matthaei) and the Graduate School Public Health (applicable to Zelasky) include provisions that explicitly "reserve[] the right" "at any time" "to make changes" that "may affect" matters including "tuition," "other fees," "degrees and programs offered (including the modification or possible elimination of degrees and programs)," "degree and other academic requirements," "academic policies," and "other rules and regulations applicable to students."  *Id.* (quotation omitted).  These provisions cannot be reconciled with Plaintiffs' contention that Harvard promised to provide in-person education in all circumstances, including during a global pandemic.  If Harvard can at "any time" "make changes" to degrees, programs, or courses, it certainly can transition those courses to remote instruction in response to a public health crisis.  That is not to say that Harvard can make whatever changes it wants for any reason—contractual discretion can be abused if it is exercised "unreasonabl[y] under all the circumstances," *McAdams v. Mass. Mut. Life Ins. Co.*, 391 F.3d 287, 301 (1st Cir. 2004) (quotation omitted)—but Plaintiffs do not dispute that Harvard's move to remote instruction was reasonable here in light of the pandemic.  That should end the matter—when a university expressly reserves discretion to alter course offerings in any way it reasonably deems necessary, no student could reasonably expect that the university would be contractually precluded from temporarily moving to remote instruction, as required by the Governor, in the midst of a global pandemic.  *See*

*Cuesnongle*, 713 F.2d at 885 (in light of reservation of rights provision, no student "could possibly have had a 'reasonable expectation' that the students had a contract right or any right to have classes start on time or any of their other claims").[8]

Plaintiffs' Motion is completely silent on this issue, and their proposed complaints simply assert in conclusory fashion that the reservation of rights provisions "do not apply as Plaintiffs are alleging a contract beyond just academic requirements . . . field and areas of concentration, and include the entirety of the in-person educational experience from in-person classes to interactions with faculty, peers, academic and athletic facilities, affinity and extracurricular groups, and hands-on experiential opportunities."  Spring Am. Compl. ¶ 74 (quotation omitted).  Plaintiffs' new allegation makes no sense.  Even if Harvard's materials promised Plaintiffs an in-person experience beyond coursework (and they do not), those same materials still provided Harvard the discretion to alter "policies, rules, and regulations applicable to students" and make changes to "tuition," "fees," "courses," degrees, "programs offered," "academic requirements," and "academic policies."  ECF No. 35-1 at 8; ECF No. 35-2 at 1.  There is no carveout for exercises of discretion that would affect non-course aspects of students' lives.  Order at 13.  Again, students could not have had a reasonable expectation that they would be in person no matter the circumstances based on (for example) their class schedules, when the very materials on which they rely explicitly provide that the class schedules can be changed.

---

[8] *Crawford*, 2021 WL 1840410, at *7 (reservation "put students on notice that their expectations regarding the format of instruction—even *reasonable* expectations—might go unfulfilled"); *accord Michel v. Yale Univ.*, 2021 WL 2827358, at *7 (D. Conn. July 7, 2021); *Hewitt*, 2021 WL 2779286, at *3; *Romankow v. NYU*, 2021 WL 1565616, at *4 (S.D.N.Y. Apr. 21, 2021); *Smith*, 2021 WL 1539493, at *7; *Dougherty v. Drew Univ.*, 2021 WL 1422935, at *8 (D.N.J. Apr. 14, 2021); *Miller*, 2021 WL 1379488, at *4-5; *Shaffer*, 2021 WL 1124607, at *3; *Burt*, 2021 WL 825398, at *5; *Gociman*, 2021 WL 243573, at *4; *Lindner*, 2020 WL 7350212, at *8.

Plaintiffs cite *Durbeck v. Suffolk University*, 2021 WL 2582621 (D. Mass. June 23, 2021), for the proposition that reservation of rights provisions do not apply where a student alleges a contract for in-person experiences beyond "academic requirements."  Spring. Am. Compl. ¶ 74 (quotation omitted).  But the provision in that case was far more limited than Harvard's, reserving only Suffolk's "right to change, discontinue, or add academic requirements, courses or programs of study at any time." *Durbeck*, 2021 WL 2582621, at *10 (quotation omitted).  *Durbeck* also distinguished reservation of rights provisions, like Harvard's, that contain "precise language authorizing the modification of costs of attendance and 'any other regulations affecting students . . . .'" *Id.* at *11 (quoting *Cuesnongle*, 713 F.2d at 885).

Judge Stearns, moreover, recently granted summary judgment to Northeastern University on similar claims, citing a reservation of rights provision materially indistinguishable from Harvard's. *Chong v. Ne. Univ.*, 2021 WL 1857341, at *5 (D. Mass. May 10, 2021).  After analyzing the plain language of the provision, the court concluded that no reasonable student reviewing that language "could have expected" that she would have "a contractual right to receive in-person instruction and/or unrestricted access to on-campus facilities and resources." *Id.*  That case, of course, was evaluated under Rule 56, not Rule 12(b)(6), but Plaintiffs here do not dispute that this Court may properly consider the terms in Harvard's handbooks at this stage, and the language in Harvard's reservation of rights provision, like the Northeastern provision, unambiguously and "unequivocally reserves the right of the University" to make changes to Harvard's courses and academic programming when necessary. *Id.*

Plaintiffs also point out that Harvard Law School's Handbook (applicable to Barkhordar) did not have an express reservation of rights provision in Spring 2020.  Spring Am. Compl. ¶ 73 n.29.  That is true, but in the end it does not matter.  Not only was there no binding promise of

in-person instruction in all circumstances in the first place, *see supra* Part I.A, but the reservation

of rights provisions in the other two handbooks simply reiterate what Massachusetts law already

makes clear—namely, that colleges and universities are afforded "the widest range of

discretion," not only to adapt their programs in response to new pedagogical theories, the world's

evolving economics and cultures, and advances in technological and scientific knowledge, but

also to address other contingencies beyond the university's control.  *See Sullivan v. Bos.*

*Architectural Ctr., Inc.*, 57 Mass. App. Ct. 771, 774-75 & n.5 (2003) (quotation omitted).

Indeed, that discretion is at its zenith where, as here, a university is "dealing with uncertain

contingencies." *Bauza v. Morales Carrion*, 578 F.2d 447, 451-53 (1st Cir. 1978).  "[A]

university could not be run any other way."  *Cuesnongle*, 713 F.2d at 885.  The lack of an

express reservation of rights provision in the Law School's handbook is not determinative, in

other words, because the Law School also "did not explicitly deny itself," *Bauza*, 578 F.2d at

453, the discretion Massachusetts law affords.  *See Zagoria*, 2021 WL 1026511, at *4

(dismissing similar claims in part because "Plaintiff has not pointed to any express language that

demonstrates NYU relinquished its authority to alter the method of academic instruction

(quotation omitted)); *Romankow*, 2021 WL 1565615, at *4 (same).

## II.    PLAINTIFFS' PROPOSED FALL 2020 AND SPRING 2021 CLAIMS WERE ALREADY DISMISSED WITH PREJUDICE AND ARE MERITLESS.

In the previous complaint, Barkhordar, the only named plaintiff who did not graduate in

Spring 2020, also alleged breach of contract claims for the Fall 2020 semester and any future

terms offered remotely.  This Court unequivocally rejected those claims, explaining that

Barkhordar "re-enrolled for the Fall 2020 semester aware tuition would not be reduced, and that

instruction would be online."  Order at 18.  "By enrolling, Barkhordar accepted the terms of the

contract for the Fall 2020 semester, including the terms that instruction would be online only and

- 19 -

that costs would be the same as the 2019-2020 school year; he has no reasonable expectation otherwise." *Id.* at 18-19.  When the Court gave Plaintiffs the opportunity to move for leave to amend, the Court instructed Plaintiffs to "limit[]" any proposed amended complaint "to causes of action for breach of contract for the Spring 2020 term." *Id.* at 19 n.6.  By its plain terms, then, this Court's Order dismissed the Fall 2020-and-future-terms claims with prejudice.

Barkhordar nevertheless seeks in the Fall Amended Complaint to reassert breach of contract claims for the Fall 2020 and future terms.  Plaintiff does not dispute that he knew that instruction would be remote prior to re-enrolling for those terms.  *Id.* at 4, 18-19.  And he does not explain how given that knowledge, he could have possibly expected to receive an in-person education.  Instead, he simply asserts that "the contract for in-person courses began at matriculation, not just separately at the start of each semester."  Mot. 4.  But that unsupported assertion is squarely contradicted by recent First Circuit authority.  Specifically, in *Squeri v. Mount Ida College*, 954 F.3d 56, 71 (1st Cir. 2020), students alleged that they entered into a contract with their college when they were admitted and that the college breached that contract by closing down unexpectedly before they graduated.  The First Circuit rejected the argument that, because the students were admitted, enrolled, and paid "one semester of tuition," the school owed them "four years of education in exchange."  *Id.* at 72.  That holding precludes Barkhordar's theory here: if Mount Ida College did not breach a contractual promise to its currently enrolled students by shutting down altogether, then Harvard cannot have "breached" any obligation by transitioning to remote instruction during a global pandemic—particularly where Harvard informed students of that transition before they were required to pay tuition.

## CONCLUSION

For the foregoing reasons, Plaintiffs' Motion for Leave to Amend should be denied.

Dated:  August 3, 2021                       Respectfully submitted,

/s/ Anton Metlitsky
Anton Metlitsky (*pro hac vice*)
ametlitsky@omm.com
O'MELVENY & MYERS LLP
7 Times Square
New York, NY 10036
Telephone:    (212) 326-2000
Facsimile:    (212) 326-2061

Matthew Powers (*pro hac vice*)
mpowers@omm.com
O'MELVENY & MYERS LLP
Two Embarcadero Center
San Francisco, CA 94111
Telephone:    (415) 984-8700
Facsimile:    (415) 984-8701

Victoria L. Steinberg, BBO #666482
Rebecca M. O'Brien, BBO #693592
TODD & WELD LLP
One Federal Street
Boston, MA  02110
Telephone:    (617) 624-4714
Facsimile:    (617) 624-4814
vsteinberg@toddweld.com
robrien@toddweld.com

*Attorneys for Defendant*
*President and Fellows of Harvard College*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that this document filed through the ECF system will be sent

electronically to the registered participants as identified on the Notice of Electronic Filing (NEF)

and paper copies will be sent to those indicated as non-registered participants on August 3, 2021.

<u>/s/ Anton Metlitsky</u>
Anton Metlitsky (*pro hac vice*)
