UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| ABRAHAM BARKHORDAR, SARAH ZELASKY, and ELLA WECHSLER-MATTHAEI, individually and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>PRESIDENT AND FELLOWS OF HARVARD COLLEGE,<br><br>Defendant. | No. 1:20-cv-10968-AK<br><br>Hon. Angel Kelley |

ORDER REGARDING THE
PRODUCTION OF DISCOVERY MATERIAL

This Order sets forth the protocol for the production of discovery material in this action, including electronically stored information (ESI).

**1. SCOPE**

1.1  The procedures and protocols set forth in this Order shall govern the format of discovery material produced for use in this litigation, including material produced by nonparties pursuant to third-party subpoenas.

1.2  The parties shall meet and confer to try to resolve any disputes that may arise under this Order prior to seeking intervention from the Court. Any requesting or producing party may seek to deviate from this Order, provided, however, that no requesting or producing party may seek relief from the Court concerning compliance with this Order without first describing the deviation in writing and then engaging in good faith meet-and-confer discussion on the proposed deviation.

**2. DEFINITIONS**

2.1 "Document" is defined to be synonymous in meaning and equal in scope to the usage of the term in the Federal Rules of Civil Procedure. For avoidance of doubt, the term "document" shall include hard copy documents and ESI (electronically stored information).

2.2 "Hard copy document" means a document that is maintained in paper or other tangible form.

2.3 "Document family" means a collection of pages or files maintained together constituting a logical single communication of information but consisting of more than a single stand-alone record. Examples include a fax cover, the faxed letter, and an attachment to the letter—the fax cover being the "parent," and the letter and attachment being a "child." Other examples would include an email and associated attachments or a presentation with embedded files.

2.4 "Custodian" shall mean any individual of a producing party, as identified and agreed by the parties, as likely having possession, custody, or control of potentially relevant documents.

2.5 "Custodial data source" means any data source used for business purposes in or on which a custodian routinely stores potentially relevant documents including, but not limited to, workstations, email (whether stored locally or centrally), mobile devices, shared or individual network folders, and cloud storage systems.

2.6 "Non-custodial data source" means any data source that is not kept or maintained by a custodian but which may contain relevant documents, including data sources used by any department, business unit, function, or division of a producing party, and shared storage systems that may contain relevant documents.

-3-

3. **PRODUCTION FORMAT**

3.1 Productions will consist of the following format. Black and white image files should be provided as Group IV single page TIFF named after the Bates number on each page. Color image files should be provided in JPEG format and must be provided if necessary to facilitating understanding of the document, i.e., charts, graphs, photos, documents with tracked or redlined changes. These files will be produced in a separate folder titled IMAGES.

3.2 Associated metadata for produced records will be produced in load file format (.DAT) and include the following fields (when available and reasonably collectable):

| BegBates | EndBates | BegBatesAttach | EndBatesAttach |
|---|---|---|---|
| Email To | Email From | Email CC | Email BCC |
| Email Subject | MsgID | AttachCount | Date/Time Sent |
| Date/Time Created | Date/Time Last Modified | FileType | DocExt |
| File Name | Author | MD5Hash | Custodian |
| Duplicate Custodian | Time Zone | PageCount | ProdVolume |
| Folder Path | NativeLink | TextLink | Redacted |
| InReplyTo | File Size | Track Changes | Has Comments |
| SpeakerNotes | Hidden Content | Confidentially Designation | |

3.3 A properly formatted Concordance .opt of image load file will be produced with the TIFF images, which links the TIFF images and any native files and metadata in the review tool records. There should be a BEGDOC number in each Concordance .DAT load file that

corresponds with the name of each production TIFF image in the .opt file in order to provide proper image and document breaks.

      3.4   Extracted or OCR text to be provided as separate .txt files per record and each file should be named after the beginning Bates number of the associated record. The link for these files will be provided in the .DAT metadata load file as the field TextLink and populated with a relative path to the associated text file for each record. These files should be stored in a separate folder titled TEXT.

      3.5   Certain file types (Excel, database, audio or visual media) should be, unless redacted, provided natively with a placeholder image associated with it that contains the Bates and any confidentiality stamping. The link for these files will be provided in the .DAT metadata load file as the field NativeLink and populated with a relative path to the associated text file for each record. These files will be named after their Bates number and stored in a separate folder titled NATIVES.

      3.6   Each page of an imaged document will reflect a Bates number that: (1) is unique across the Party's document production; (2) has a constant length (0-padded) across the production with thought and care as not to "roll over" the Bates number into a new prefix; and (3) is sequential within each given document. Files produced in native format should contain a Bates number on the corresponding production slip-sheet and in the file name of the produced native.

      3.7   Each production shall be assigned a volume name, production number, or other unique identifying label corresponding to the identity of the producing party and the Bates ranges of the documents in that production *(e.g.,* "ABC Production, ABC 0000123 – ABC 0000456"). Productions shall include text referencing the case name and number. Further, any replacement

production shall cross-reference the original production, clearly identifying that it is a replacement and cross-referencing the Bates range that is being replaced.

3.8   The Parties will apply industry-accepted global hash-value deduplication to their respective productions.

3.9   Redacted Documents: Documents may be redacted to protect privileged material, confidential or non-responsive information, or information protected by the Family Education Rights and Privacy Act, 20 U.S.C. §§ 1232g, 34 CFR Part 99 ("FERPA"). In the event a document is redacted, the full text should be replaced with OCR text that excludes the redacted material and identifies the basis for the redaction.

3.10  Password-Protected Files: The producing party shall make reasonable efforts to ensure that all encrypted or password-protected documents are successfully processed for review and production under the requirements of this Order.  If successful in unlocking a document, and the document is otherwise appropriate for production, the decrypted document should be produced.

4.  ASSERTIONS OF PRIVILEGE

4.1   Pursuant to Fed. R. Civ. P. 26(b)(5) and any applicable Local Rule, a producing party may redact or, to the extent necessary, withhold a document if it is protected by attorney-client privilege, the work-product doctrine, or any other applicable privilege.

4.2   Production of Privileged Document. Under the Federal Rules of Evidence 502(d), if a Party produces any document that contains material subject to a claim of privilege, immunity, or other protection from disclosure, including but not limited to FERPA, such disclosure shall not waive any claim that such material is protected by any such privilege or protection in this action or any other action.  In the event any privileged material has been disclosed, the following

procedure governing the return, destruction, or sequester of such material ("Claw Back") shall apply:

    a)    The Party seeking the Claw Back will promptly notify each receiving Party in writing of the production;

    b)    When a Party receives notice of such production, it shall return, destroy, or sequester all copies of the produced material within five business days;

    c)    Any notes or summaries referring or relating to any such produced privileged material shall be destroyed or sequestered immediately;

    d)    Once notified, a Receiving Party may not use the produced privileged material for any purpose;

    e)    Within 10 days of notification or at the time otherwise agreed-to for the service of privilege logs, the Producing Party shall serve a privilege entry for the Claw Back;

    f)    If there is a dispute as to the assertion of privilege, the parties will meet and confer and sequester the at issue document(s) during the meet and confer process.

5.  **MODIFICATION**

5.1 To promote efficient and timely discovery the non-material terms of this Order (e.g., time periods, metadata fields) may be modified by written agreement of the parties and without further order of the Court.

**IT IS SO ORDERED.**

DATED: 8/9/22

/s/ Angel Kelley, D.J.
Hon. Angel Kelley
UNITED STATES DISTRICT JUDGE